UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

United States of America, *ex. rel.*

Debora Paradies
115 Cleveland Ave.
Hartford, WI 53027,

Filed *In Camera* pursuant to
31 U.S.C. § 3730(b)(2).

London Lewis
7005 W. Center St.
Wauwatosa, WI 53210,

and

Roberta Manley
3236 South 45 Street
Greenfield, WI 53219,

      Plaintiffs,

  v.

AseraCare, Inc.
6737 W. Washington St. Suite 3200
West Allis, WI 53214,

      and

GGNSC Administrative Services
d/b/a/ Golden Living
(formerly known as Beverly Enterprises, Inc.)
1000 Fienna Way
Fort Smith, AR 72919,

      Defendants.

Civil Action, File No. ____
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
UNDER FALSE CLAIMS ACT

**Complaint for Damages and Injunctive Relief Under False Claims Act**

  Plaintiffs, United States of America *ex rel.* Debra Paradies, London Lewis, and Roberta Manley, through their attorneys the Cross Law Firm, S.C., by Nola J. Hitchcock Cross, complain and allege the following:

## I. Parties

1. Relator, Debra Paradies, is a citizen of the United States of America and a resident of the state of Wisconsin, residing at 115 Cleveland Avenue, Hartford, Wisconsin 53027.

2. Relator, London Lewis, is a citizen of the United States of America and a resident of the state of Wisconsin, residing at 7005 W. Center Street, Wauwatosa, Wisconsin 53210.

3. Relator, Roberta Manley, is a citizen of the United States of America and a resident of the state of Wisconsin, residing at 3236 South 45 Street, Greenfield, WI 53219..

4. Relators, bring this action on behalf of the United States of America pursuant to 31 U.S.C. § 3730(b)(1). The United States of America is a sovereign country whose Department of Health and Human Services purchases hospice care services from Defendants through Medicare programs.

5. Defendant AseraCare Inc. is a domestic corporation which has a principal place of business at 6737 W. Washington St. Suite 3200, West Allis, Wisconsin 53214. AseraCare was, at all times material to this complaint, authorized to collect Medicare payments for the services it offers to clients regulated by 42 C.F.R. § 418, generally. Authorization and eligibility to receive compensation from the federal government for its services required requires compliance with 42 C.F.R. § 418. Defendant AseraCare is one of several subsidiaries of GGNSC Administrative Services, which does business as Golden Living,

6. Defendant GGNSC Administrative Services, a domestic corporation, does business as Golden Living (hereinafter "Golden Living"), and has its corporate headquarters at 1000 Fienna Way, Fort Smith, Arizona 72919. GGNSC and its subsidiaries provide hospice care, home health services and temporary staffing services, and it operates three AseraCare centers and twenty four Golden Living Centers in Wisconsin. There are three hundred twenty nine (329) Golden Living Centers (skilled nursing facilities) and seventeen (17) Golden Living Communities (assisted living

facilities) in twenty two (22) states. Collectively, the Golden Living family of companies has nearly 40,000 employees.

## II. Jurisdiction and Venue

7. Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331, 1345 and 31 U.S.C. § 3732(a).

8. Venue is proper, among other reasons, pursuant to 28 U.S.C. § 1391(a) because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## III. Statement of the Action

9. This action is brought on behalf of the United States of America to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C. § 3729-3733, and Debra Paradies, London Lewis, and Roberta Manley claim entitlement to a portion of any recovery obtained by the United States as *qui tam* plaintiffs authorized by 31 U.S.C. § 3730.

10. Relators bring this action to impose liability upon Defendants for violations of 31 U.S.C. § 3729 and non-compliance with various federal regulations by submission of false claims for monetary reimbursement to the United States and arising from AseraCare's non-compliance with agreements made with the United States governed by 42 C.F.R. 418, generally.

## IV. General Facts

11. Debora Paradies commenced employment with AseraCare on April 30, 2007 where she worked as an Admissions Nurse until February 20, 2008.

12. Relator, Debora Paradies is a Registered Nurse, Wisconsin license number 132064-30, as Admissions Nurse for AseraCare at its facility located at 6737 W. Washington Street, Suite 3200 in the city of West Allis, county of Milwaukee, state of Wisconsin. In that capacity, Relator's duties included screening patients and verifying compliance with the various federal

regulations governing eligibility, admission, discharge, and conditions of participation for hospice care, promulgated under 42 C.F.R. § 418. Relator also substituted as an executive backup for one week monthly and performed the duties of Patient Care Coordinator, which entailed triage calls, referrals and scheduling, and patient chart audits.

13. Within three or four months after commencing employment with Defendant, AseraCare, Relator, Debora Paradies learned of various violations and acts of non-compliance with federal statutes and regulations, as described below.

14. Relator, Roberta Manley, began working for AseraCare on April 2, 2007 and worked as a Patient Care Coordinator.

15. Immediately on taking over as a Patient Care Coordinator at AseraCare, Roberta Manley learned of various violations and acts of non-compliance with federal statutes and regulations, as described below.

16. Relator, London Lewis, is currently working for AseraCare as a Registered Nurse.

17. During her employment, London Lewis learned of various violations and acts of non-compliance with federal statutes and regulations, as described below.

18. Relators, Debora Paradies and Roberta Manley, with knowledge that it was a violation of Federal law to knowingly or willfully make or cause to be made any false statement, misrepresentation of material fact or otherwise act in non-compliance with statutes and regulations governing Medicare and/or Medicaid, informed their superiors and co-workers, Gale Hurt (Director of Clinical Services), Mary Reynolds, and Executive Director Linda Kriticos on many occasions that AseraCare was in violation of and noncompliant with various federal statutes and regulations.

19. On numerous occasions subsequent thereto, GGNSC and AseraCare knowingly, intentionally and willfully submitted false claims, records and statements to officials of the United

States for the purpose of obtaining compensation for the services to which GGNSC and AseraCare were not legally entitled due to violation of or failure to comply with legal conditions for payment.

## V. Count I. Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq.* Presenting Claims for Payment to the U.S. Government for Unqualified Patients Admitted and Re-certified

20. Relators re-allege and incorporate by reference paragraphs 1 to 19 above.

21. Pursuant to 42 C.F.R § 418 generally and specifically sections 418.1; 418.20; 418.22; 418.25; 418.50; 418.54; 418.74; 418.200; 418.202; 418.301-311 AseraCare must meet requirements for certification of clients for hospice care to qualify for payment from the federal government. Specifically, § 418.22 requires a medical certification of terminal illness by a physician and that the certification be accompanied by documentation to support the prognosis. Relators have direct knowledge that AseraCare submitted falsified information to the federal government in order to falsely obtain payments from the federal government.

22. Relator Debora Paradies has reviewed and recommended against the admissibility and eligibility of a long list of ineligible patients. Hurt had ultimate authority in these matters and repeatedly chose to retain or admit patients despite the fact that the patients did not meet the criteria described in this paragraph.

23. Relators have direct and personal knowledge that the mechanism employed by Hurt for admission under these circumstances was to direct personnel who were not cognizant or properly trained, usually the employee was a Licensed Practical Nurse as opposed to a Registered Nurse, in the rules and regulations governing hospice care to sign the necessary documents for admission or retention.

24. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet

undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC and AseraCare knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

### VI. Count II. Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq.* Presenting Claims for Payment to the U.S. Government for Unqualified Patients

25. Relators re-allege and incorporate by reference paragraphs 1 to 24 above.

26. During the months of November and December of 2007, Relator Debora Paradies reviewed many patients' records as part of a comprehensive review of the AseraCare operations. Relator recommended the discharge of a large number of patients who did not meet the criteria. Hurt and Reynolds admonished Debora Paradies and Roberta Manley for recommending that patients be terminated or not admitted because the patient roster was increasingly thin.

27. Relators have personal knowledge of numerous instances of AseraCare retaining clients on hospice care who did not meet the certification requirements and for whom AseraCare continued to submit false claims to the United States for payment.

28. Relators have personal and direct knowledge that patients were often admitted to hospice care despite the facts that the patients did not qualify. For example, patient C. M. was re-admitted to hospice care in or around February 20, 2008, despite recommendations from nurse "Ellen," London Lewis and Debora Paradies that the patient was inadmissible because he had an extended prognosis (longer than 6 months). The re-admitting nurse was Corrinne Kroening acting at the direction of Mary Reynolds. Debora Paradies told Angelina Connery in the presence of Lewis that C. M. was inadmissible because of the extended prognosis Drs. Raul Mateo and Ali Malik attached to patient C.M.

29. In or about December 2007, Relator Debora Paradies screened patient B.L. for hospice admissibility following a stroke. Under Medicare's Cerebral Vascular Accident Criteria

for admissibility, which are developed to comply with Chapter 418, only end-stage patients are admissible. B.L. had not reached the end-stage and was not eligible for hospice care. AseraCare admitted B.L. on March 7, 2008, despite the fact that B.L.'s condition had not, changed and submitted a claim for hospice services for B.L. to the United States for payment. Mary Reynolds directed this admission. All pertinent documents were signed by Scott Hatfield. This patient was admitted without a proper prognosis and accompanying documentation as required by section 418.22.

30. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC, AseraCare and Golden Living knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

## VII. Count III. Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq*. Presenting Claims for Payment to the U.S. Government Using Falsified Forms

31. Relators re-allege and incorporate by reference paragraphs 1 to 30 above.

32. Relator Roberta Manley has personal knowledge of AseraCare's practice of generating pre-signed blank Certifications of Terminal Illness for patients. Section 42 C.F.R. 418.22 requires that admitted patients be certified in writing as terminally ill by a physician.

33. Relator has direct knowledge that Hurt and Reynolds had one Doctor Raul Mateo sign multiple Certifications of Terminal Illness forms in blank and then used the pre-signed forms in furtherance of billing Medicare for inadmissible patients. To the best of knowledge and belief, the blank form is still being used to admit or retain patients without the required physician certification following Relator's termination on February 20, 2008.

34. Relators have direct and personal knowledge that Interdisciplinary Plans of Care ("IPOC"), which are billings to the United States, are also pre-signed by physicians and submitted by or at the direction of Hurt in support of claims for payment. This practice preceded the commencement of Relator Debora Paradies' employment and, on information and belief continues to this day. Dr. Mateo's signature appears on admission forms, the dates of which correspond to periods when Dr. Mateo was on vacation. These admissions are in non compliance with section 418.22, which requires that before submitting a claim to payment, the hospice must provide a proper certification of a 6 months or less prognosis and accompanying documentation to support the prognosis.

35. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC and AseraCare knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

## VIII. Count IV. Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq.* Presenting Claims for Payment to the U.S. Government for Recycled Medications From "Comfort Pacs"

36. Relators re-allege and incorporate by reference paragraphs 1 to 35 above.

37. "Comfort Pacs" are drug packages designed for the needs of each patient.

38. Relators have personal and direct knowledge that the request forms to the U.S. Government and the prescriptions are pre-signed by Dr. Mateo and used without the doctor's true approval.

39. Relators have personal and direct knowledge that Mary Reynolds also signed Doctor Mateo's name on these forms in Dr. Mateo's place. Manley also has personal knowledge

8

of such forgeries. Relator Paradies has personally witnessed Dr. Mateo pre-sign blank forms prior to his vacations.

40.     Relators have personal and direct knowledge that the forged forms are maintained in Hurt's lower left hand desk drawer and Mary Reynolds' folders situated on her desk. AseraCare generates forms that purport to document the destruction of drugs from a comfort pack left unused at the patient's death.

41.     Relator, Debora Paradies has direct and personal knowledge that AseraCare did not destroy the drugs.

42.     Relators, Debora Paradies and London Lewis have direct and personal knowledge that AseraCare re-labeled the drug containers with a new patient's name in order to use medication prescribed for a deceased patient. For example, patient E. M.'s prescription of Lorazepam was relabeled for use with patient J. P.

43.     On information and belief, Claims were submitted to the United States for payment for such Comfort Pacs medication twice; first for the patient who subsequently died and then for the patient whose name was substituted on the label. The US Government pays for the entire Comfort Pac and the Pacs are not fungible as each package must be approved for a given patient by a physician.

44.     The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC and AseraCare knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

### IX.  Count V: Wrongful Discharge pursuant to 31 U.S.C. § 3730(b)(h)

45.     Relator, Debora Paradies, re-alleges and incorporates by reference paragraphs 1 to 44 above.

46.     Relator, Debora Paradies, with knowledge that it was a violation of Federal law to knowingly or willfully make or cause to be made any false statement, misrepresentation of material fact or otherwise act in non-compliance with statutes and regulations governing Medicare and/or Medicaid, informed her superiors and co-workers, Gale Hurt (Director of Clinical Services), Roberta Manley (Patient Care Coordinator), Mary Reynolds, and the Executive Director Linda Kriticos on many occasions that AseraCare was in violation of and noncompliant with various federal statutes and regulations. During the last two months of employment, Relator complained weekly to Reynolds and Hurt about the violations described herein.

47.     As a result of Debora Paradies' complaints about ineligible admissions, re-certifications, and drug re-labeling AseraCare abruptly terminated her employment on February 20, 2008.

## X.  Count VI: Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq*. False Claims Submitted to the U.S. Government with the Intent to Skew the Computation of Medicare Caps

48.     Relators re-allege and incorporate by reference paragraphs 1 to 47 above.

49.     Section 418.309 of the Code of Federal Regulations describes the calculation of hospice care caps. The total amount allowed for each hospice is calculated based on the number of patients the hospices census reflects. Patients already used to calculate a cap during a given year cannot be used for the next year's calculation.

50.     If a patient survives the cap, Medicare continues to make payments above the cap. However, Medicare will then request the hospice to refund the amounts paid that exceed the cap.

51.     Relators have personal and direct knowledge that GGNSC ordered its facilities to increase the number of patients on the census at "all costs." Relators have personal and direct knowledge that JoAnne Klinko, the Regional Director of Operations at GGNSC, ordered Kriticos at AseraCare to increase the census of patients "at all costs" because Klinko believed that if the census was increased with new patients, then GGNSC would not have to disgorge funds incurred in excess of Medicare caps. On information and belief, Klinko's immediate superior at GGNSC is Cindy "Sussinka" and Klinko took her orders from Sussinka.

52.     On information and belief, GGNSC directed the AseraCare centers to admit new patients that did not fit the pertinent standards for hospice care to avoid paying back all the funds in excess of the Medicare caps incurred from the U.S. Government.

53.     Shortly before Manley's resignation on January 16, 2008, Linda Kriticos told Relator Roberta Manley to "make the patients meet the criteria" in order to increase the census.

54.     Around the same date, Klinko told Manley that if the patients did not fit the Chapter 418 criteria, then the patients must be put on a 90 day probationary period to "see how they do." The patients would then be re-certified for another 90 day period and then unlimited periods of 60 days.

55.     According to Section 418.22, the 90 day probationary period is not appropriate without a physician's certification that the patient is terminally ill and that the prognosis is 6 months or less.

56.     Around January 15, 2008, Manley told Hurt that the probationary period practice is a fraud on the U.S. Government for Medicare funds. Hurt responded that she knew it was fraud and that she would continue in the practice. Relators have personal and direct knowledge that following this discussion, Hurt and Reynolds informed AseraCare staff to bypass Relators Manley and Paradies and all patient screens were to go through Hurt and Reynolds.

57. Relators have personal and direct knowledge that in the Summer of 2007, GGNSC's Medical Director, Dr. James Avery, ran a training session for AseraCare and Golden Living centers personnel, where Roberta Manley attended.

58. Relators have personal and direct knowledge that Avery told the attendees that a mere suspicion that the patient had cancer or a lung disorder was sufficient to admit the patient for a trial 90 day period. Avery then told staff to change the diagnosis if at the end of the 90 days the initial suspicion had proven groundless. For example, a patient admitted on a suspicion of cancer would then be admitted on a suspicion of lung disorder. GGNSC's representation that patients that were not diagnosed with a terminal disease with a 6 month life expectancy resulted in potentially all AseraCare and Golden Living Centers submitting fraudulent claims to the U.S. Government for inadmissible patients.

59. Relators have personal and direct knowledge that, to further the practice of bypassing the nurses' recommendation not to admit the patients, GGNSC employed dietitians who would often alter the admissions and re-certification forms to justify the improper admission. For example, for patient RK, Relator London filled a plan of care update on March 6, 2008 stating that the patient had not change in condition. As this implied a stable condition that would make the patient ineligible for certification, an unidentified person believed to be Mary Reynolds, added additional information to the form after both London and Dr. Mateo had signed it.

60. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC and AseraCare knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

## XI.  Count VII: Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729 *et seq.* - False Claims Submitted to the U.S. Government by Double Billing for Erroneously Entered Certification Dates

61.  Relators re-allege and incorporate by reference paragraphs 1 to 60 above.

62.  Relator Roberta Manley has direct and personal knowledge that when she began working for AseraCare on April 2, 2007, AseraCare had a patient census of more than 150 patients. By September of 2007, the census had dropped to 120.

63.  Relator Roberta Manley has direct and personal knowledge that, because of the ongoing drop in the census, GGNSC performed a "Level 3" census on the AseraCare facility on August 2007.

64.  Relator Roberta Manley has direct and personal knowledge that GGNSC had found that the 90 and 60 day certifications periods were not respected by AseraCare and patients were often kept on hospice care beyond the due date for re-certification.

65.  Relator Roberta Manley has personal knowledge that in August of 2007 Mary Reynolds at Hurt's direction would change or backdate AseraCare records to reflect that the re-certifications were indeed performed on time. On information and belief, Dr. Mateo signed the untimely certifications knowing they were late.

66.  Relator Roberta Manley has personal knowledge that for the gap period when the patient was not certified, GGNSC and AseraCare continued to receive payments from Medicare. For example, a plan of care form dated February 21, 2008, for patient CM was not timely filed and filled by Mary Reynolds.

67.  Relator Roberta Manley has knowledge that upon backdating the data and starting a new certification period, GGNSC billed the U.S. Government a second time for the gap period.

68. Relator Roberta Manley has direct and personal knowledge that all the billing to the U.S. Government is done by GGNSC. The person in charge of billing is Debra "Suffic. Suffic examines the dates of the certification periods and submits the bills to the U.S. government.

69. Because of the ongoing double billing, following the August 2007 audit, GGNSC attempted to send Joe Polina to investigate the matter further. However, on information and belief, GGNSC's Regional Director, Ms. Klinko cancelled that to enable the fraudulent backdating and billing to continue.

70. The cancellation of Polina's investigation was prompted by Relator Manley's threat to hire an attorney following an accusation from either Reynolds or Hurt that Manley was the one backdating the data. In Manley's presence, Reynolds then admitted that she was backdating the forms all along.

71. Relators have direct and personal knowledge that following this incident, Klinko, Reynolds and Hurt created an order form that purported to correct the certification dates.

72. Relator Roberta Manley has direct and personal knowledge that this form was then sent to Debra Suffic at GGNSC's billing department. On information and belief, the forms were too late because the billing had already been submitted to the U.S. Government. On information and belief the double billing was not brought to the government's attention and GGNSC never restituted the double billed funds.

73. Relators have direct and personal knowledge that on or around March 2008, a Medicare intermediary company named Palmetto GBA, L.L.C. ("Palmetto"), audited GGNSC's billing. Relator London Lewis has direct and personal knowledge that Palmetto found at least 75 patients for whom GGNSC should not have billed Medicare because they did not meet the pertinent standards for hospice care.

74. Relators have direct and personal knowledge that following Palmetto's findings, in March 2008, Hurt and Reynolds used a dietician called "Diane," employed by GGNSC as Diane did not work at AseraCare, to write supporting documents for continued hospice care. Billing to the U.S. Governments for patients admitted based on dietitian opinions is fraudulent because hospice care must be based on a physician's certification that the patient has a life expectancy of 6 months or less.

75. Relator London Lewis has direct and personal knowledge that for patient B.S. Reynolds used four pages from Diane to justify continued billing for B.S. On information and belief, Dianne was also backdating certification data.

76. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount. With respect to the aforementioned misrepresentations and failures to comply, GGNSC and AseraCare knowingly made false claims to officials of the United States for the purpose of obtaining compensation.

## PRAYER FOR RELIEF

WHEREFORE, the United States is entitled to damages from AseraCare, Inc. and Golden Living in accordance with the provisions of 31 U.S.C. §§ 3729-3733, and Plaintiffs/Relators request that judgment be entered against Defendants, ordering that:

a. Defendans cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.;*

b. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of defendant's actions, plus a civil penalty against defendant of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d. Plaintiff/Relator Debra Paradies be awarded reinstatement with the same seniority status, two-times the amount of back pay and interest. 31 U.S.C. § 3730(h);

e. Plaintiffs/Relators be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

f. The United States and Plaintiffs/Relators be granted all such other relief as the Court deems just and proper.

PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS THE ABOVE ENTITLED ACTION TO BE TRIED TO A 12 PERSON JURY.

Respectfully submitted and dated this 1st day of May 2008.

Cross Law Firm, S.C.
Attorneys for Debra Paradies, London Lewis, and Roberta Manley

By: _____
Nola J. Hitchcock Cross
Wisconsin State Bar Number: 1015817
Lawyer's Building
845 North 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055