Search - 6 Results - Stadtmueller & "Motion to Compel" w/l2 sanction! Page 1 of 12

Case 2:12-cv-00245-ROB Document 65-6 Filed 12/21/11 Page 1 of 17



*2008 U.S. Dist. LEXIS 89584, ***

METAVANTE CORPORATION, Plaintiff, v. EMIGRANT SAVINGS BANK, Defendant.

Case No. 05-CV-1221

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

2008 U.S. Dist. LEXIS 89584

October 24, 2008, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Motions ruled upon by Metavante Corp. v. Emigrant Sav. Bank, 2008 U.S. Dist. LEXIS 100156 (E.D. Wis., Nov. 26, 2008)

**PRIOR HISTORY:** Metavante Corp. v. Emigrant Sav. Bank, 2008 U.S. Dist. LEXIS 106539 (E.D. Wis., May 5, 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation sued defendant bank for breach of contract. The bank counterclaimed for fraud and breach of contract. The parties filed multiple motions to compel Fed. R. Civ. P. 26 discovery pursuant to Fed. R. Civ. P. 37. The bank also moved for leave to file under seal and for leave to file an oversized brief. The parties' jointly moved to amend the scheduling order.

**OVERVIEW:** The bank's first motion to compel sought disclosure of the source code from the product the corporation delivered to the bank under the parties' technology outsourcing agreement. Under the agreement, the corporation was to provide an online direct banking product for the bank. The corporation principally argued that it would be unduly burdened by production of its source code. The corporation claimed that isolating its source code would cost over $ 300,000 and take over 5,000 hours. The court found that the source code the corporation utilized in its performance under the outsourcing agreement was relevant, or may reasonably lead to admissible evidence. In balancing the value of the source code against the burden of producing it, the court finds that the potential value outweighed the burden. As to the corporation's motion, the material the corporation sought related to the performance of the online banking system that the bank used to replace the corporation's product. While access to the documents requested may have provided the corporation with information to compare with its own products, the corporation failed to demonstrate why such a comparison was relevant.

**OUTCOME:** The bank's motion to compel disclosure of the corporation's source code was granted, the bank's motion to compel a deposition was granted, and the bank's motion to compel discovery was granted in part and denied in part. The bank's motions for leave to file under seal was granted in part and denied in part. The corporation's motion for leave to file under seal was granted in part and denied in part.

**CORE TERMS:** customer, discovery, ticket, seal, responsive, deposition, logs, online, leave to file, successor, discovery requests, software, counterclaim, outsourcing, banking, documents relating, modifications, compel discovery, protective order, operational, producing, banking system, relevant information, supervision, outweigh, documents produced, confidential information, subcontractor, commercially, depose

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Discovery > Relevance

HN1 ⬇ A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things. Fed. R. Civ. P. 26(b)(1). For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. The scope of relevancy under Rule 26 is broad. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Civil Procedure > Discovery > Disclosures > Motions to Compel
Civil Procedure > Discovery > Motions to Compel

HN2 ⬇ A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1) - (4). The party objecting to a discovery request bears the burden in showing why the request is improper. In ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court.

Civil Procedure > Discovery > Disclosures > General Overview

HN3 ⬇ Under Fed. R. Civ. P. 26(b)(2), the court may limit the scope of discovery if it would be unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The court may also limit discovery where the party seeking discovery has had ample opportunity to obtain the information or where the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

Civil Procedure > Discovery > Methods > Oral Depositions

HN4 ⬇ Depositions of top executives may not be warranted where they possess no superior knowledge to other lower-level employees.

Civil Procedure > Discovery > Disclosures > General Overview

HN5 ⬇ Discovery requests must describe with reasonable particularity each item or category of items to be inspected. Fed. R. Civ. P. 34(b)(1)(A).

Civil Procedure > Discovery > General Overview

HN6 ⬇ Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.

Civil Procedure > Discovery > Motions to Compel
Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards

HN7 ⬇ Pursuant to Fed. R. Civ. P. 37(a)(5), the court may award reasonable expenses, including attorneys fees, to the prevailing party of a motion to compel.

**COUNSEL:** [*1] For Metavante Corporation, a Wisconsin corporation, Plaintiff: Janice A Rhodes, John F Hovel, Michael D Fischer, Sarah J Friday, Stephen E Kravit, LEAD ATTORNEYS, Kravit Hovel & Krawczyk SC, Milwaukee, WI; Andrew B Bloomer, Andrew Phillip Young, James RP Hileman, Jane S Park, Paul R Garcia, Kirkland & Ellis LLP, Chicago, IL.

For Emigrant Savings Bank, a New York corporation, Defendant: Adam Owen Glist, Chen Yang, Gary J Malone, Michael C Rakower, Robert L Begleiter, Robert Jeffrey Powell, LEAD ATTORNEYS,

Constantine Cannon PC, New York, NY; Robert F Johnson, Robin S Jacobs, Colleen M Fleming, LEAD ATTORNEYS, Milwaukee, WI.

**JUDGES:** J.P. **Stadtmueller**, U.S. District Judge.

**OPINION BY:** J.P. **Stadtmueller**

**OPINION**

**ORDER**

Plaintiff Metavante Corporation ("Metavante") and defendant and counterclaim plaintiff Emigrant Savings Bank ("Emigrant") filed multiple motions to compel discovery. Emigrant filed three motions seeking orders to compel Metavante to produce information and documents responsive to Emigrant's discovery requests. On July 8, 2008, Emigrant filed a motion seeking an order directing Metavante to produce source codes used by Metavante in its performance of the technology outsourcing agreement between the parties. **[*2]** On July 16, 2008, Emigrant filed another motion seeking an order to depose Metavante's chairman. On August 5, 2008, Emigrant filed a motion to compel the production of documents and information relating to communications with third-party contractors, as well as information concerning Metavante's relationships with other customers. In the same motion, Emigrant seeks either an explanation of why certain documents were destroyed or a court-supervised search for responsive materials. Also on August 5, 2008, Metavante filed a motion seeking an order compelling Emigrant to produce documents relating to the online banking system Emigrant used to replace Metavante's system.

*HN1* A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . ." Fed.R.Civ.P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The scope of relevancy under Rule 26 is broad. "Relevant information need not be admissible at the trial if the discovery appears reasonably **[*3]** calculated to lead to the discovery of admissible evidence." *Id.; see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-51, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case").

*HN2* A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1)-(4). The party objecting to a discovery request bears the burden in showing why the request is improper. *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Sherman Park Community Ass'n v. Wauwatosa Realty Co.,* 486 F. Supp. 838, 845 (E.D. Wis. 1980). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation **[*4]** omitted).

**EMIGRANT'S JULY 8, 2008 MOTION**

Emigrant's first motion to compel seeks disclosure of the source code from the product Metavante delivered to Emigrant under the parties' technology outsourcing agreement. Under the agreement, Metavante was to provide an online direct banking product for Emigrant called EmigrantDirect. In its eighth set of requests for production of documents, Emigrant sought "[d]ocuments identifying and/or reflecting any and all source codes used in connection with the

operation of EmigrantDirect at any point since and including January 1, 2003 . . ." (Begleiter Decl. Ex. C, Docket # 210).

Emigrant argues that it must have access to this information in order to adequately defend itself against Metavante's breach of contract claim as well as to prosecute its counterclaims of fraud and breach of contract. Specifically, Emigrant contends that Metavante's source code may provide information about the quality of the product Metavante delivered under the agreement, and is, therefore, relevant to both Emigrant's defenses and counterclaims. Emigrant also argues that since Metavante gained access to Emigrant's source code, Emigrant must be allowed access to Metavante's **[*5]** source code in order to compare the two codes. [1]

**FOOTNOTES**

[1] On a motion from Metavante, the court ordered Emigrant to produce the source code of Emigrant's online banking system. (Order, May 5, 2008, Docket # 203).

Metavante principally argues that it would be unduly burdened by production of its source code. Metavante claims that isolating its source code would cost over $ 300,000 and take over 5,000 hours. Metavante argues that its source code would provide little relevant information because many of Emigrant's allegations of poor quality are traceable to third-party source codes. Metavante further claims that its earlier request for Emigrant's source code was directed only at determining whether Emigrant utilized third parties in modifying its online banking system rather than analyzing the quality of the code. [2] Metavante also contends that Emigrant acted too late in the discovery process, which was scheduled to conclude on September 1, 2008.

**FOOTNOTES**

[2] As the court noted in its May 5, 2008 order, the technology outsourcing agreement between the parties provides for a termination fee, the amount of which is based in part on whether Emigrant replaced Metavante's system with an in-house product or a product **[*6]** from another vendor.

In reply, Emigrant directs the court to Metavante's earlier motion to compel disclosure of Emigrant's source code, in which Metavante argued that the source code was "the definitive way to ascertain how a computer actually performs its functions." (Metavante's Mot. to Compel 10, Docket # 176). Emigrant also alleges that Metavante's estimates of cost and time to produce its source code are excessive because they assume that Metavante would need to sort and compile all of the information before disclosing it to Emigrant. Emigrant suggests that it could mitigate the cost on Metavante by providing outside consultants to inspect Metavante's code and determine its relevance.

The court finds that the source code Metavante utilized in its performance under the outsourcing agreement is relevant, or may reasonably lead to admissible evidence. See Fed.R.Civ.P. 26(b)(1). Metavante's source code may reveal the quality of the online banking product that Metavante delivered, and whether Metavante fully performed under the agreement. In balancing the value of the source code against the burden of producing it, the court finds that the potential value outweighs the burden. While **[*7]** Metavante asserts that the cost of producing its source code will be great, Emigrant has offered to mitigate the cost by using Emigrant's outside consultants to review the code and parse out any relevant information. Moreover, the parties have experience in exchanging the source code in this case. The court also recognizes that any confidentiality concerns that Metavante may have are addressed by the court's May 14, 2008 protective order. (Docket # 125).

**EMIGRANT'S JULY 18, 2008 MOTION**

In its second motion to compel, Emigrant seeks to depose Metavante's chairman Dennis J. Kuester ("Kuester"). Emigrant argues that Kuester has knowledge of information relevant to Emigrant's counterclaims of breach of contract and intentional misrepresentation. Specifically, Emigrant asserts that Kuester met and communicated directly with Emigrant's CEO regarding the EmigrantDirect product. Emigrant has produced correspondence that tends to show Kuester was informed of the problems associated with the EmigrantDirect and that he was in direct communication with Emigrant's CEO. (Begleiter Decl., Docket # 235). In one letter to Emigrant's CEO, dated July 28, 2005, Kuester stated that "we [Metavante] neither **[*8]** lived up to your expectations or our own during the start up phase of this project." (Begleiter Decl. Ex. P, Docket # 235).

Metavante has refused to make Kuester available despite Emigrant's request to depose him. 3 Metavante argues that Kuester's work on the EmigrantDirect project was very limited, and that Kuester was only involved "at a high level." (Metavante's Br. in Opp'n 2, Docket # 238). Metavante further asserts that deposing Kuester would be cumulative because Emigrant is already taking depositions of two other Metavante executives, including Metavante's CEO. Metavante also claims that Emigrant has conceded that Kuester's deposition would be unnecessary because Emigrant's counsel offered to forego a deposition for a ninety minute meeting with Kuester.

**FOOTNOTES**

3 Emigrant first requested to depose Kuester on June 6, 2008. (Begleiter Decl. Ex. A, Docket # 235).

HN3 Under Rule 26(b)(2) of the Federal Rules of Civil Procedure, the court may limit the scope of discovery if it would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C)(I); see Patterson, 281 F.3d at 681. The court **[*9]** may also limit discovery where "the party seeking discovery has had ample opportunity to obtain the information . . ." or where "the burden or expense of the proposed discovery outweighs its likely benefit . . ." Fed.R.Civ.P. 26(b)(2)(C).

The court finds that Kuester may have unique knowledge of relevant information in this case. The court recognizes that HN4 depositions of top executives may not be warranted where they possess no superior knowledge to other lower-level employees. See generally Baine v. General Motors Corp., 141 F.R.D. 332, 334-35 (M.D.Ala. 1991) (refusing to compel deposition of the top executive of the Buick division in a defective seatbelt case where plaintiff had not yet taken depositions of other employees or other discovery); Block v. Abbott Laboratories, No. 99-C-7457, 2001 U.S. Dist. LEXIS 19884, 2001 WL 1539159, at *2-4 (N.D.Ill. 2001) (refusing to compel depositions of CEO and two managers where each had already been deposed in a related and consolidated case). However, in this case the executive in question seems to have made direct representations to Emigrant during the performance of the outsourcing agreement. It also appears that Kuester was involved in some capacity with Metavante's decision-making **[*10]** process in creating and implementing the EmigrantDirect product. Moreover, Kuester's personal knowledge is relevant to Emigrant's counterclaim of intentional misrepresentation, which requires a showing of scienter. See Malzewski v. Rapkin, 723 N.W.2d 156, 162 (Wis.App.Ct. 2006) (holding that intentional misrepresentation requires a showing of a knowingly false or reckless representation with intent to deceive).

In viewing the totality of the circumstances, including the amount in controversy in this case, the parties resources, and the issues at stake, the court concludes that the burden on Metavante does not outweigh the value of the material sought. Nor does the court find it necessary to limit Kuester's deposition to three hours as requested by Metavante. Unless the

Search - 6 Results - Stadnick "Motion to Compel" w/526 sanction!
Case 2:12-cv-00245-RCB   Document 65-6   Filed 12/21/11   Page 6 of 17
Page 6 of 12

parties agree otherwise, a deposition is already limited to one day of seven hours. Fed.R.Civ.P. 30(d)(1). Therefore, the court grants Emigrant's motion to compel, (Docket # 220), and directs Metavante to make Kuester available for deposition.

## EMIGRANT'S AUGUST 5, 2008 MOTION

In its third motion to compel, Emigrant seeks court supervision in the production by Metavante of the following: (1) all material responsive to several **[*11]** document production requests; (2) all material concerning two Metavante subcontractors and an outside consultancy study; (3) information on custodians, including a list of custodians and action taken to comply with Emigrant's earlier discovery requests; and (4) an explanation why documents that are known to exist cannot be produced. Emigrant further requests that the court order that Metavante provide all electronic documents in their native format, leaving all electronically stored information ("ESI") intact, and that the court order Metavante to pay Emigrant's attorneys' fees and expenses in preparing the motion.

Emigrant seeks documents regarding Metavante's work with other banks prior to the EmigrantDirect project. Specifically, Emigrant requested the following:

> First Set of Document Requests No. 12: All documents concerning any prior work done by Metavante for any bank other than Emigrant to design, implement, maintain or operate an internet bank, a direct bank or an on-line bank.
>
> Second Set of Document Requests No. 7: All communications between Metavante and other clients concerning problems or performance and/or operational issues related to Metavante's server and platform services, **[*12]** including (but not limited to) complaints, dissatisfaction, and problems with capacity, double postings, delays, slow-downs or outages.

Emigrant argues that the documents provided are insufficient because they do not include communications made on a managerial level, or information on product development or problems with subcontractors. Metavante claims that such information is relevant to its counterclaim alleging Metavante misrepresented its experience and success in online banking projects.

Metavante argues that it has fully responded to this request. Metavante notes that it has produced somewhere around 70,000 electronically generated documents known as "SupportTrack" tickets. These tickets were generated in response to technical support complaints and issues that arose from Metavante's customers, including Emigrant. (Groth Aff. P 3, Docket # 152). The tickets recorded the progression of customer complaints through Metavante's three levels of customer support, and included "defect tickets" for problems that could not be resolved by customer support, as well as "change tickets" recording modifications made to a customer's product. (Groth Aff. PP 4-6, Docket # 152). Metavante argues **[*13]** that Emigrant has never requested further information concerning any topic covered in these tickets. Metavante also claims to have produced documents relating to Metavante's other direct banking customers, including service documents, contracts with other customers and customer proposals. (Opp'n Br. 7-8, Docket # 326). Metavante also notes that Emigrant has received responsive materials directly from at least two other Metavante customers. (Opp'n Br. 9, Docket # 326).

The parties do not dispute that these requests seek information relevant to the case. Emigrant also concedes that Metavante has produced some responsive documents. The court considered these requests once before in its November 2, 2007 order. (Docket # 172). At that time, the court declined to compel a response because Metavante had agreed to produce, but had not yet delivered, its SupportTrack tickets. The only question now is whether Metavante has produced

Search - 6 Results - Stadtuno & "Motion to Compel" w/12 sanction! Page 7 of 12

Case 2:12-cv-00245-RCB Document 65-6 Filed 12/21/11 Page 7 of 17

sufficient responsive material. Emigrant contends that more detailed information should have been provided. Yet, according to Emigrant, it received responsive documents from Metavante in December of 2007. Since that time, Metavante claims that Emigrant has never requested [*14] further information regarding any specific SupportTrack ticket that was produced. Emigrant appears to have had ample opportunity to explore Metavante's responsive documents and follow-up with further requests where appropriate. See Fed.R.Civ.P. 26(b)(2)(C)(ii). Therefore, the court denies Emigrant's motion to compel additional responses to these requests.

Emigrant also seeks further discovery relating to any modifications made to Metavante's software system. Specifically, Emigrant requested the following:

> Second Set of Document Requests No. 2: All documents concerning software re-engineering or change-control documentation, modifications to source code, and other changes affecting the Metavante system, including (but not limited to), software release dates and the reasons for any such changes or modifications.

> Second Set of Document Requests No. 3: All documents concerning possible, proposed, requested or actual enhancements, upgrades, or modifications made to the Metavante system, including (but not limited to) the reasons for any such enhancements, upgrades, or modifications.

> Third Set of Document Requests No. 4: All logs for all systems that ran software supporting all applications described [*15] in Document Request 2, including but not limited to, error logs, event logs, application logs, database logs, web server logs, maintenance logs, system change logs, and middleware logs (e.g., the "master error list" as discussed in TEK000006; logs generated by SilkPerformer tool as discussed in TEK000539).

> Third Set of Document Requests No. 6: All documents related to operational problems concerning all other customers for whom Metavante and/or its agents or vendors (including without limitation Teknowledge and NCR) ran the same or similar software platforms as EmigrantDirect (including without limitation Capital One, Volkswagen/Audi, and EverBank, and the applications CeB, OLA or OAC), including e0mail, communication logs, service level reporting, trouble tickets (including "support track" tickets or "remedy" tickets), incident logs or reports, user error reports, system error reports, and system bug reports.

> Third Set of Document Requests No. 7: All documents related to enhancements, requests or customer changes concerning all other customers for whom Metavante and/or its agents or vendors (including without limitation, Teknowledge and NCR) ran the same or similar software platforms [*16] as EmigrantDirect (including without limitation Capital One, Volkswagen/Audi, and EverBank, and the applications CeB, OLA or OAC), including, but not limited to, the "requests opened by Scott Dryburgh" discussed in MVNT000411.

Emigrant again argues that the documents produced thus far have been inadequate to fully respond to these requests. Emigrant argues that the SupportTrack tickets and other documents produced do not disclose the detailed information that other types of logging devices might include. Emigrant also claims that the tickets provided relate only to changes made after Metavante's products became operational. Emigrant notes that Techknowledge, a subcontractor, has produced nearly 1,000 documents referencing communications with Metavante, yet Metavante has produced only about 150 emails between individuals at those firms. (Begleiter Decl. PP 11-12, Docket # 254). Emigrant also directs the court to documents produced relating to Scott Dryburgh. Dryburgh worked with Metavante's online banking

Search - 6 Results - Stadium & "Motion to Compel" w/l2 sanction! Page 8 of 12

Case 2:12-cv-00245-RCB Document 65-6 Filed 12/21/11 Page 8 of 17

customers until his employment was terminated in December of 2006. (Begleiter Decl., Ex. 14, Docket # 255). Emigrant claims that information on Dryburgh was incomplete and delayed. **[\*17]** Apparently, most of the documents produced came from backup discs Dryburgh created himself and kept at his home. (Begleiter Decl., Ex. 14, Docket # 255). These documents were disclosed a year after Emigrant made the request for documents relating to Dryburgh. However, Metavante produced these files months before Dryburgh's deposition. (Supp. Br. 10-11; Docket # 252).

Metavante asserts that the SupportTrack tickets, and specifically the change and defect tickets, provide a record of all changes made to customer products as well as the persons approving those changes. Metavante also notes that it informed Emigrant in December of 2007 that Metavante stored other "system infrastructure" logs only up to six months. Metavante, therefore, claims that it has fully responded to these requests. Metavante also claims its production is ongoing because Emigrant served an interrogatory on Metavante August 8, 2008, seeking the dates of each release of Metavante's Online Account Creation ("OAC") software applications. (Opp'n Br. 10, Docket # 326). With respect to Dryburgh, Metavante argues that it did not know that Dryburgh kept personal backup discs, and that the information contained on those discs **[\*18]** was not otherwise retained in the ordinary course of business. Metavante claims that it produced Dryburgh's personal backup files when it became aware of their existence. Metavante also states that it has produced every responsive document it could locate relating to subcontractors Teknowledge and NCR. (Begleiter Decl., Ex. 31 at 7).

Again, the parties do not appear to dispute the relevance of the materials sought in these requests. It should be noted that **HN5** discovery requests "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). The court finds Emigrant's argument unconvincing that Metavante has not provided information from before its products became operational. Metavante notes that it has produced SupportTrack tickets from its products dating back approximately two years prior to the launch of the EmigrantDirect project. (Opp'n Br. 7, Docket # 326). Again, Emigrant has had ample opportunity to seek documents relating to specific incidents reflected in SupportTrack tickets. Moreover, the court is ordering the production of Metavante's source code, which may contain more information responsive to these requests. Therefore, **[\*19]** the court denies Emigrant's motion with respect to these requests.

Emigrant also seeks documents from Metavante relating to study conducted by an outside consultancy firm known as Gartner. The court addressed this issue in its November 2, 2007 order. (Docket # 172). The court noted that Emigrant had not demonstrated that the documents sought were not obtainable directly from Gartner, a more convenient source under Rule 26(b)(2)(C)(I) of the Federal Rules of Civil Procedure. The court noted at that time that Emigrant was free to subpoena Gartner. Emigrant did subpoena documents from Gartner, and Gartner responded by producing over 32,000 pages of documents in February of 2008. (Begleiter Decl. P 10, Docket # 254). Emigrant claims that the Gartner production has revealed communications between Gartner and Emigrant, including one document that it claims ". . . goes to the root of Emigrant's allegations . . ." (Supp. Br. 25). Emigrant now argues that Metavante should be compelled to produce internal communications relating to the Gartner study. Metavante states that it has produced the documents it retained regarding the Gartner study, and that the issue is now moot. It now appears that **[\*20]** Gartner was in fact a more convenient source of information, and the court finds no reason at this time to compel Metavante to produce materials it either doesn't have or that Gartner has already produced. Therefore, the court denies Emigrants motion to compel as it relates to Gartner materials.

Emigrant also asks the court to supervise Metavante in producing a list of any custodians or records and action taken to comply with Emigrant's earlier discovery requests. Emigrant also seeks an explanation why documents that are known to exist cannot be produced. Emigrant further requests the court order that Metavante provide all electronic documents in their native format, leaving all ESI intact. As the Supreme Court has said, **HN6** "[j]udicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper

uses of discovery requests." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522, 546, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987) (referring to the need for courts to be vigilant in protecting foreign litigants in American courts). Emigrant's request for supervision would pervert these goals and unnecessarily increase costs and [*21] delay resolution of this case. Both parties in this case are sophisticated, and have shown their ability to conduct extensive discovery without constant court supervision. Moreover, the court has neither the time nor the resources to micro-manage discovery in this case. With respect to Emigrant's request that all documents be in their native form, Emigrant has provided the court with no basis on which the court make such an order.

Finally, throughout much of its supporting brief, Emigrant often argues that Metavante should have retained more documents in anticipation of this litigation. While Metavante's actions with respect to document retention may be relevant in seeking sanctions for spoliation, the court finds no reason to compel further production of documents that Metavante claims it no longer has. *See generally Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212 (S.D.N.Y. 2003). Nor has Emigrant alleged sufficient facts for the court to impose any **sanctions** for spoliation. Therefore, the court denies Emigrant's August 5, 2008 **motion to compel** in its entirety. (Docket # 251).

## METAVANTE'S AUGUST 5, 2008 MOTION

On August 5, 2008, Metavante moved for an order compelling Emigrant to produce [*22] documents responsive to twenty four separate requests made as part of Metavante's Sixteenth Set of Requests for Production of Documents. The material Metavante seeks relates to the performance of the online banking system that Emigrant used to replace Metavante's product. Metavante asserts that these materials are relevant to defend itself against Emigrant's counterclaims, in which Emigrant alleges it suffered significant damages from Metavante's commercially unreasonable performance under the outsourcing agreement. Specifically, Metavante argues that reports from two Emigrant experts on liability and damages brought Emigrant's successor online banking system into issue in the case. Both parties have filed selective pages of these reports.

In the first report, a consultant named Roger Nebel opines on the reliability and overall quality of the product produced by Metavante for the EmigrantDirect project. Nebel concludes that the Metavante product was inadequate, and that Metavante's overall performance was commercially unreasonable. However, Nebel does not appear to base his opinion on a comparison between Metavante's EmigrantDirect product and Emigrant's successor system. Rather, Nebel [*23] compares Metavante's product with his own understanding of a commercially reasonable online banking product.

Metavante's discovery requests seek documents relating to Emigrant's successor system, including customer satisfaction, performance, as well as any outages, failures and errors that have occurred. Metavante argues that this information would allow Metavante to test Nebel's opinions and assumptions. Emigrant argues that the requested documents are irrelevant because Nebel's opinion was based solely on his own experience in the software industry.

While access to the documents requested may provide Metavante with information to compare with its own products, Metavante has failed to demonstrate why such a comparison is relevant to this case. From the limited materials presented, the court cannot discern how the functionality of Emigrant's successor system tends to prove or disprove the functionality of Metavante's EmigrantDirect product. Nebel's report discusses whether Metavante's product and services were provided in a commercially reasonable manner, not whether Emigrant's successor product was superior or inferior to Metavante's product. Therefore, the court finds that the burden [*24] of producing this material at this point in discovery outweighs any benefit it may hold in resolving the issues in this case. Accordingly, the court denies Metavante's motion to compel production of documents responsive to Metavante's requests relating to performance issues, failures and errors of Emigrant's successor system. Specifically, Metavante has identified

Search - 6 Results - Stadtmal! & "Motion to Compel" w/12 sanction!    Page 10 of 17

Case 2:12-cv-00245-KOB   Document 65-6   Filed 12/21/11   Page 10 of 17

these requests as numbers 13, 21-23, 35 and 36 of its Sixteenth Set of Requests For Production of Documents. (Fischer Decl. Ex. D, Docket # 258).

In the second report, an accountant named Paul Pocalyko opines on Emigrant's loss in value and loss of earnings from decreased deposits allegedly caused by Metavante's EmigrantDirect product. At least one portion of Pocalyko's analysis references Emigrant's efforts to recover customers allegedly lost during the period Metavante's product was operational. Pocalyko reports that these efforts were fruitful and resulted in recovered accounts. Pocalyko then used the recovered accounts data in calculating the net loss in deposit customers.

Metavante argues that Emigrant cannot use information gathered from its successor system to establish damages, and attempt to bar Metavante's discovery **[*25]** of similar information. Emigrant argues that it has agreed not to use Pocalyko's loss of earnings analysis, and that the loss of value analysis was based only on data collected prior to Emigrant's conversion to its successor system.

It appears that Pocalyko's conclusions partially rely on the number of customer accounts lost due to Metavante's product performance, as well as Emigrant's efforts to regain customers. Emigrant's efforts to regain customers after converting to its successor online banking system and the results of those efforts are relevant on the issue of whether Metavante's alleged breach of the outsourcing agreement caused any loss of customer accounts. Therefore, the court grants Metavante's motion to compel with respect to its requests for documents relating to customer satisfaction with and financial performance of Emigrant's successor system. Metavante has identified the requests relevant to these issues as request numbers 10-12, 14-20, 24-29, and 33 of its Sixteenth Set of Requests For Production of Documents. (Fischer Decl. Ex. D, Docket # 258).

**MOTIONS FOR LEAVE TO FILE UNDER SEAL**

Both parties seek leave to file multiple exhibits under seal. Emigrant moves to seal **[*26]** the sixty-two page report from Roger Nebel dated June 10, 2008, as well as selected pages from the report by Paul Pocalyko. (Docket # 213, # 281). The reports assess the performance of Metavante's products, as well as the damages allegedly caused by Metavante's failure to provide an adequate product. Emigrant claims that the reports contain trade secrets and nonpublic financial and business information covered under the court's protective order governing confidential information. (Order May 14, 2007, Docket # 125). After reviewing the reports, it appears that the exhibits contain trade secrets, including specific methods, techniques and processes used by Metavante and Emigrant, as well as nonpublic financial information relating to account balances. Therefore, the court concludes that good cause exists to warrant the sealing of these documents, and grants Emigrant's motion to seal Exhibit G to the Declaration of Robert L. Begleiter dated July 7, 2008, (Docket # 213), as well as its motion to seal Exhibits 1 and 2 to the Declaration of Robert L. Begleiter dated August 12, 2008 (Docket # 281).

Emigrant also moves to seal thirty other exhibits filed as attachments to the Declaration of **[*27]** Robert L. Begleiter dated August 5, 2008. After reviewing the exhibits, the court concludes that most of the exhibits contain nonpublic financial and business information, including pricing, business plans and strategies. However, the court concludes that three exhibits do not appear to qualify as confidential information. Exhibits 70 and 71 are identical documents titled "Gartner Direct Bank Individual Stakeholder Interviews." They contain names of individuals, their phone numbers, and the time and location of their interviews. Exhibit 81 appears to be a list of twelve Metavante employees that worked on a specific project, and includes employees' names, their titles, as well as their phone numbers and company emails. The court finds no basis to consider the information contained in these documents confidential under the protective order or any other precedent. The names, emails and phone numbers of Metavante employees have been disclosed in other exhibits and documents filed with the court. Emigrant has failed to demonstrate that this information falls within the court's protective

order, and has otherwise failed to show good cause for sealing it from the public. Therefore, the court **[*28]** grants Emigrant's motion to seal (Docket # 297), with respect to all exhibits listed in its motion except for Exhibits 70, 71 and 81 of the Declaration of Robert L. Begleiter dated August 5, 2008.

Metavante moves to seal the Declaration of Michael Fischer, as well as portions of the Nebel and Pocalyko reports filed as exhibits. For the reasons stated above, the court grants Metavante's motion with respect to Exhibit B containing portions of the Pocalyko report. However, after reviewing the Declaration of Michael Fischer, and the attached Exhibit A (Docket # 260), the court is unable to conclude that the information contained in these documents qualifies as confidential information under the court's protective order or any other precedent. The Fischer Declaration includes only general observations about the Nebel and Pocalyko reports, as well as a summary of communications between counsel. Exhibit A consists of Mr. Nebel's expert qualifications, a portion of the executive summary section, and two other pages citing internal Metavante communications discussing technical problems in general terms. While the court has concluded that portions of the Nebel report contain confidential information, **[*29]** the pages of the report in Exhibit A of the Fischer Declaration do not include such information. (*See generally* court orders dated June 2, 2006 (Docket # 34), March 13, 2007 (Docket # 114) and October 19, 2007 (Docket # 161)). Therefore, the court grants Metavante's motion for leave to file under seal (Docket # 260), with respect to Exhibit B of the Declaration of Michael Fischer dated August 5, 2008, and denies the motion with respect to the actual Declaration of Michael Fischer and Exhibit A attached thereto. The court notes that any party or interested member of the public can challenge the sealing of any of the documents sealed pursuant to this order under paragraph 12 of the court's protective order. (Order May 14, 2007, Docket # 125).

*HN7* Pursuant to Fed.R.Civ.P. 37(a)(5), the court may award reasonable expenses, including attorneys fees, to the prevailing party of a motion to compel. However, because both parties filed motions to compel and neither party has been granted all the relief that it sought, the court declines to award expenses or attorneys fees to either party. Finally, the parties moved jointly to amend the scheduling order on August 5, 2008. (Docket # 273). On August **[*30]** 28, 2008, Metavante filed a notice of withdrawal of the motion. (Docket # 328). The court did not address the motion before the date on which discovery was due. The court extends discovery to the extent necessary for the parties to comply with this order.

Accordingly,

**IT IS ORDERED** that Emigrant's motion to compel disclosure of Metavante's source code (Docket # 217) be and the same is hereby **GRANTED;** within 30 days from the date of this order, Metavante shall produce all documents responsive to Emigrant's Eighth Set of Requests for Documents Nos. 1 and 2;

**IT IS FURTHER ORDERED** that Emigrant's motion to compel the deposition of Dennis J. Kuester (Docket # 220) be and the same is hereby **GRANTED;** the parties shall confer within 10 days to schedule a date for the deposition of Mr. Kuester;

**IT IS FURTHER ORDERED** that Emigrant's motion to compel discovery (Docket # 251) be and the same is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Metavante's motion to compel discovery (Docket # 257) be and the same is hereby **GRANTED** in part and **DENIED** in part; within 30 days of the date of this order, Emigrant shall produce all documents responsive to Metavante's Sixteenth Set of Requests for Documents Nos. 10-12, **[*31]** 14-20, 24-29, and 33.

**IT IS FURTHER ORDERED** that Emigrant's motions for leave to file under seal (Docket # 213 and # 281) be and the same are hereby **GRANTED;** Emigrant is hereby granted leave to file under seal Exhibit G to the Declaration of Robert L. Begleiter dated July 7, 2008, and Exhibits 1

Search - 6 Results - Stadtm! & "Motion to Compel" w/12 sanction! Page 12 of 17

Case 2:12-cv-00245-KOB Document 65-6 Filed 12/21/11 Page 12 of 12

and 2 to the Declaration of Robert L. Begleiter dated August 12, 2008, filed in support of its motions to compel discovery.

**IT IS FURTHER ORDERED** that Emigrant's motion for leave to file under seal (Docket # 297) be and the same is hereby **GRANTED** in part and **DENIED** in part; Emigrant is hereby granted leave to file under seal Exhibits 37, 39-43, 45, 49, 51, 56, 59, 79, 80, 82-89, 99, 100, 104, 105, 108 and 110 of the Declaration of Robert L. Begleiter dated August 5, 2008; the clerk of the court shall place in an open file Exhibits 70, 71 and 81 of the Declaration of Robert L. Begleiter dated August 5, 2008.

**IT IS FURTHER ORDERED** that Metavante's motion for leave to file under seal (Docket # 260) be and the same is hereby **GRANTED** in part and **DENIED** in part; Metavante is hereby granted leave to file under seal Exhibit B of the Declaration of Michael Fischer dated August 5, 2008; the clerk of the [*32] court shall place in an open file the Declaration of Michael Fischer and Exhibit A attached thereto;

**IT IS FURTHER ORDERED** that Emigrant's motion for leave to file an oversized brief (Docket # 277) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the parties' joint motion to amend the scheduling order (Docket # 273) be and the same is hereby **DENIED** as moot.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2008.

BY THE COURT:

/s/ J.P. **Stadtmueller**

J.P. **Stadtmueller**

U.S. District Judge

Source: **My Sources > Federal Legal - U.S. > Find Cases > Federal District Courts by State > WI Federal District Courts** [i]
Terms: **Stadtm! & "Motion to Compel" w/12 sanction!** (Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Wednesday, December 21, 2011 - 6:08 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
[A] - Citing Refs. With Analysis Available
[I] - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

In     About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
       Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*2010 U.S. Dist. LEXIS 134079, **

CAROLINA CASUALTY INSURANCE COMPANY, Plaintiff, v. PETER T. ELLIOTT, ASSOCIATED BANK NATIONAL ASSOCIATION, PHIL ELLIOTT, JR., ANTHONY J. STASKUNAS, ELLIOTT, ELLIOTT & STASKUNAS, BETHANY EVANGELICAL LUTHERAN CHURCH, and ERWIN WEHSE, Defendants.

Case No. 09-CV-66

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

2010 U.S. Dist. LEXIS 134079

December 7, 2010, Decided
December 7, 2010, Filed

**PRIOR HISTORY:** Carolina Cas. Ins. Co. v. Elliott, 2010 U.S. Dist. LEXIS 12785 (E.D. Wis., Jan. 21, 2010)

**CORE TERMS:** interrogatory, discovery, entity, counterclaim, partnership, federal rules, deposition, deponent, deposed, discovery requests, participating, designated, verified, interrogatory responses, entity known, government agency, subject to discovery, subject matter, legal entity, contemplate, cooperating, responding, collection, answering, withdrawn, compelled, subjected, disclaim, sharing, joined

**COUNSEL:** [*1] For Carolina Casualty Insurance Company, Plaintiff: Jeffrey A Goldwater, Robert A Chaney, LEAD ATTORNEYS, Lewis Brisbois Bisgaard & Smith LLP, Chicago, IL.

For Associated Bank National Association, Defendant: Christopher E Ware, LEAD ATTORNEY, David O Krier, Reinhart Boerner Van Deuren SC, Milwaukee, WI.

For Phil Elliott, Jr, Elliott Elliott & Staskunas, Anthony J Staskunas, Defendants: Ahndrea R Van Den Elzen, LEAD ATTORNEY, Terry E Johnson, Peterson Johnson & Murray SC, Milwaukee, WI; William P Croke, von Briesen & Roper SC, Milwaukee, WI.

For Bethany Evangelical Luthern Church, Defendant: Brent A Simerson, W Wayne Siesennop, Siesennop & Sullivan, Milwaukee, WI.

For Erwin Wehse, Defendant: Brian H Mahany, Christopher J Ertl, LEAD ATTORNEYS, Mahany & Ertl LLC, Milwaukee, WI.

For Erwin Wehse, Cross Claimant: Brian H Mahany, Christopher J Ertl, LEAD ATTORNEYS, Mahany & Ertl LLC, Milwaukee, WI.

For Phil Elliott, Jr, Anthony J Staskunas, Elliott Elliott & Staskunas, Cross Defendants: Ahndrea R Van Den Elzen, LEAD ATTORNEY, Terry E Johnson, Peterson Johnson & Murray SC, Milwaukee, WI.

**JUDGES:** J.P. **Stadtmueller**, U.S. District Judge.

**OPINION BY:** J.P. **Stadtmueller**

**OPINION**

## ORDER

On November 30, 2010, Associated Bank National Association **[*2]** ("Associated Bank") filed a motion pursuant to Civil L.R. 7(h) to compel co-defendant Elliott, Elliott & Staskunas ("EE&S") to answer interrogatories and appear for depositions with regard to the above-entitled action. (Docket #86). Associated Bank states in its motion to the court that on September 2, 2010, the bank served EE&S with interrogatories and document requests. (Associated Bank's Mot. at 2). Moreover, the bank avers that EE&S's responses "were not verified by an officer or agent of EE&S," and, despite Associated Bank's demands, EE&S refused to verify its responses because of its contention that EE&S as an entity "does not exist." *Id.* Associated Bank's attempt to depose a representative of EE&S were similarly unsuccessful, as the counsel for EE&S similarly asserted that "EE&S would not produce a 30(b)(6) witness . . . because EE&S 'does not exist.'" *Id.* Ultimately, Associated Bank argues that EE&S, a party who is represented by counsel and was, at the time of the filing of the motion to compel, seeking affirmative relief in this court, cannot disclaim its own existence to avoid discovery. *Id.* at 3. On December 3, 2010, EE&S filed a response to the motion to compel (Docket **[*3]** #88) and, with the benefit of the parties' briefs, the court is prepared to address the matter.

The court first looks to the question of whether EE&S was required to respond to Associated Bank's written interrogatories. The federal rules allow a party "to serve on any other party no more than 25 written interrogatories." Fed. R. Civ. P. 33(a)(1). Moreover, if an interrogatory is served on a party, and that party is a "public or private corporation, a partnership, an association, or a government agency," the interrogatories "must be answered" by an officer or agent of that organization. Fed. R. Civ. P. 33(b)(1)(B). The resolution of the dispute over responding to interrogatories is quite simple. EE&S is a party to this litigation. "It is undisputed that a party has a duty to provide all information available to" it in answering interrogatories. *Trane Co. v. Klutznick,* 87 F.R.D. 473, 476 (W.D. Wis. 1980) (Warren, J.). Accordingly, an officer or an agent of EE&S must provide all information a given agent has available to him or her in answering Associated Bank's interrogatories.

EE&S argues that because a Wisconsin state court has ruled that EE&S as an entity is not a partnership under **[*4]** the laws of the state of Wisconsin, the issue of whether the entity has to answer an interrogatory is "resolved." (EE&S's Resp. Br. at 1). Whether or not EE&S is a partnership, is almost wholly irrelevant to the issue before the court. Partnerships are not the only organization that must answer interrogatories in the course of federal litigation. Indeed, the federal rules contemplate that interrogatories can be served on an unincorporated "association" that is a party to the case. Fed. R. Civ. P. 33(b)(1)(B). An association is a broad term, referring to "mere collections of individuals" who have joined together for a common purpose. *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 461, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980); see also 6 Am Jur 2d Associations and Clubs § 1 ("An 'association' is a collection of persons who have joined together for a certain object."). While there may be doubt that EE&S is a partnership, there is no doubt that EE&S is an association, as EE&S readily admits that it was the vehicle for a "contractual office expense relationship." (EE&S's Resp. Br. at 1). Accordingly, as an association who is a party in this matter, EE&S "is subject to discovery through interrogatories," 7-33 Moore's Federal Practice - Civil § 33.20, **[*5]** and the service of the interrogatories obliged EE&S to appoint "an agent who could . . . furnish such requested information" as was available to the entity.[1] *United States v. Kordel,* 397 U.S. 1, 8, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970). As such, the court will grant the motion to compel with respect to requiring EE&S to provide verified interrogatory responses.[2]

## FOOTNOTES

1 EE&S claims that it was forced to respond to Carolina Casualty's complaint or risk default. The court is unclear of the problem of EE&S being held in default, if, as the defendant argues, it is not a legal entity being capable of being held liable. Moreover, EE&S had a clear

option besides ignoring the complaint or participating in this litigation as an answerer and cross-claimant: if EE&S is indeed not a suable entity and wanted to avoid participating in discovery, then EE&S should have moved to dismiss this action for failure to state a claim before filing an answer in this matter. At this late stage of the litigation, however, EE&S is now subject to discovery, as parties prepare dispositive motions.

2 The court notes that its order is unaffected by the stipulation of dismissal of EE&S's counterclaim. While Associated Bank's interrogatories **[\*6]** directly ask questions related to EE&S's counterclaims against Carolina Casualty, the subject matter of the withdrawn counterclaims is appropriate for discovery regarding Carolina Casualty's claims against the various defendants, which pray for declaratory relief regarding the same contract that was at the heart of EE&S's counterclaims. See Fed. R. Civ. P. 26(b) ("*Parties* may obtain discovery regarding any nonprivileged matter that is relevant to *any party's* claim or defense") (emphasis added).

The court proceeds to evaluate the second issue, whether EE&S should be compelled by this court to provide a Fed. R. Civ. P. 30(b)(6) deponent. Fed. R. Civ. P. 30(b)(6) permits a party to name as a deponent "a public or private corporation, a partnership, an association, a government agency or other entity." The rule further requires the named organization to designated an agent to testify on the organization's behalf. Fed. R. Civ. P. 30(b)(6). Moreover, the "persons designated [by the given organization] must testify about information known or reasonably available to the organization." *Id.* EE&S asserts, again, that it cannot produce a 30(b)(6) witness because "EE&S does not and has never existed **[\*7]** as a legal entity," but merely is a "shorthand name for an office sharing agreement." (EE&S's Resp. Br. at 2). The court has addressed this issue above, in that the Federal Rules provide broad authority for associations to be subjected to discovery. Moreover, the court notes that in 2007, Fed. R. Civ. P. 30(b)(6) was amended to include the words "or other entity," to "ensure that the deposition process could be used with *any* organization 'no matter what abstract fictive concept' describes it." 7-30 Moore's Federal Practice - Civil § 30.25 (quoting Fed. R. Civ. P. 30(b)(6) advisory committee's note (2007)). In short, not withstanding EE&S's attempts to disclaim its legal existence, the Federal Rules clearly envision entities like EE&S being subjected to discovery via a deposition.

EE&S argues that "even if there was an entity known as EE&S . . . there are only three people who could possibly provide information," three parties who have already been deposed. (EE&S's Resp. Br. at 2). However, it is legally insignificant that the members who formed EE&S have already been deposed in this matter, just as it would be irrelevant for a corporation attempting to avoid producing a 30(b)(6) witness **[\*8]** to claim that an agent of the corporation had already been deposed. Fed. R. Civ. P. 30(b)(6) allows business entities to be deposed through a designated agent, a means of discovery that EE&S is currently obstructing. While Mr. Elliott and Mr. Staskunas may be cooperating with this litigation in their individual capacities, the record is clear that they are not cooperating with regard to allowing discovery with regard to the entity that is known as EE&S. Moreover, the fact that there are members who are attached to EE&S that are willing to provide deposition testimony in this matter only indicates to the court that EE&S is just playing games with discovery. More broadly, it appears to the court the EE&S and the individuals who formed the entity known as EE&S want to have their proverbial cake and eat it, too: for EE&S, the entity "existed" for purposes of the office sharing arrangement and for purposes of asserting a counterclaim in this court, but does not "exist" for purposes of participating in discovery. As such, the court will grant the motion to compel EE&S to produce a 30(b)(6) deponent.³

**FOOTNOTES**

3 Again, the court notes that this ruling is made in light of the stipulation to dismiss EE&S's **[\*9]** counterclaim, as the court has the discretion to order "discovery of matter . . .

Search - 6 Results - Stadtm! & "Motion to Compel" w/12 sanction!  Page 4 of 5

Case 2:12-cv-00245-KOB   Document 65-6   Filed 12/21/11   Page 16 of 17

relevant to the subject matter involved in [this] action," Fed. R. Civ. P. 26(b)(1), which includes discovery related to EE&S's withdrawn counterclaim. However, while Associated Bank is entitled to EE&S's responses to its discovery requests, Associated Bank's discovery requests still must be "neither unreasonable nor unduly burdensome . . . considering . . . prior discovery in the case." Fed. R. Civ. P. 26(g)(1)(B)(iii). As such, Associated Bank should contemplate whether it should continue insisting on EE&S responding to the discovery requests even in light of this order.

Fed. R. Civ. P. 37(a)(5)(A) provides that, if a party's motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Court may not order payment if the movant did not meet and confer before filing the motion, if the opposing party's response was substantially justified, or if other circumstances **[*10]** make an award unjust. *Id.* As such, Associated Bank should file a fee petition for the motion to compel within **fourteen days** of this order, allowing EE&S to respond within **seven days** thereafter.

Accordingly,

**IT IS ORDERED** that defendant Associated Bank National Association's "Rule 7(h) Expedited Non-Dispositive **Motion to Compel** and for **Sanctions**" (Docket #86) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendant Elliott, Elliott & Staskunas be and the same is hereby **COMPELLED** to provide verified interrogatory responses and produce a 30(b)(6) deponent; and

**IT IS FURTHER ORDERED** that, unless the parties have already agreed upon the amount of fees by then, defendant Associated Bank shall file its fee petition for its motion to compel within **fourteen days** of the date of this order and defendant Elliott, Elliott & Staskunas may respond within **seven days** thereafter. No reply is necessary.

Dated at Milwaukee, Wisconsin, this 7th day of December, 2010.

BY THE COURT:

/s/ J.P. **Stadtmueller**

J.P. **Stadtmueller**

U.S. District Judge

Source: **My Sources > Federal Legal - U.S. > Find Cases > Federal District Courts by State > WI Federal District Courts** [i]
Terms: **Stadtm! & "Motion to Compel" w/12 sanction!** (Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Wednesday, December 21, 2011 - 6:06 PM EST

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- [Q] - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- [A] - Citing Refs. With Analysis Available

Search - 6 Results - Stadtm! & "Motion to Compel" w/12 sanction! Page 5 of 5

Case 2:12-cv-00245-KOB Document 65-6 Filed 12/21/11 Page 17 of 17

🛈 - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.