Video Deposition of Roberta Manley  9/26/2011

Page 1

1    Witness

2    Roberta Manley

**Exhibit B**

3

4    Monday 09/26/2011 at 10:00 by: Jeff Joseph

5

6    Cross Law Firm, S.C.

7    845 N. 11th St.

8    Milwaukee, WI  53233

9

10   United States of America v. AseraCare, Inc

11   08-C-384

12   United States District Court

13   Eastern District of Wisconsin

14

15

16

17

18

19

20

21

22

23

24

25

Video Deposition of Roberta Manley  9/26/2011

```
 1                     A P P E A R A N C E S

 2      James F. Barger, Jr. and Elliott Walthal

 3      Frohsin & Barger, LLC

 4      2151 Highland Ave. #310

 5      Birmingham, AL   35205

 6      On behalf of the Plaintiffs

 7

 8      Jack W. Selden

 9      Bradley, Arant, Boult, Cummings, LLP

10      1819 Fifth Ave. North

11      Birmingham, AL   35203-2119

12      On behalf of the Defendants

13

14      Charles H. Bohl

15      Whyte Hirschboeck Dudek S.C.

16      555 E. Wells St. #1900

17      Milwaukee, WI   53202

18      On behalf of the Defendants

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 1 | A | I'm not aware. |
| 2 | Q | You didn't take them. |
| 3 | A | No, I did not take them. |
| 4 | Q | Do you have handwriting, your handwriting on those |
| 5 | | other two census documents? |
| 6 | A | I really can't recall unless I see them. |
| 7 | Q | Now, the deposition of London Lewis was many hours. |
| 8 | | And it would be unfair for me to ask you to recite all |
| 9 | | the things that were discussed, so I'm not going to do |
| 10 | | that.  But I am going to ask you a question. |
| 11 | A | Mm-hmm. |
| 12 | Q | Did you hear Mrs. Lewis say anything that you thought |
| 13 | | was wrong or in error or incomplete? |
| 14 | | MR. BARGER:  Object to the form. |
| 15 | A | It's kind of hard to say.  I don't really have -- that |
| 16 | | was many, many hours in that.  To the best of my |
| 17 | | knowledge, what she said was correct. |
| 18 | | BY MR. BOHL: |
| 19 | Q | Can you think of anything you heard that when you |
| 20 | | heard it, you thought that's not quite right? |
| 21 | A | I really don't recall. |
| 22 | Q | Now, how long have you known London Lewis? |
| 23 | A | Since I started at AseraCare in 2007, I believe. |
| 24 | Q | What month of 2007 did you start? |
| 25 | A | April. |

Video Deposition of Roberta Manley  9/26/2011

Page 13

```
 1    Q    And you left on January 30th, 2008?

 2    A    Yes.

 3    Q    And you knew London Lewis as a co-worker during that

 4         entire time.

 5    A    Yes.

 6    Q    Since January 30th, 2008, what contact have you had

 7         with London Lewis?

 8    A    Since then, I met with her face to face once, and then

 9         there's been phone contact.

10    Q    When did you meet with her face-to-face?

11    A    Probably sometime before she left for Arizona.  And

12         I'm not quite certain when that was.

13    Q    And she was still working for AseraCare at that time?

14    A    I believe so.

15    Q    What were the circumstances of your meeting with

16         London Lewis before she left for Arizona?

17    A    We met with her, myself, and Ms. Paradies.

18    Q    And where did you meet?

19    A    We met here at the law firm.

20    Q    And the purpose, I assume, was to confer with your

21         lawyers.

22    A    Yes.

23              MR. BARGER:  Object to the form.

24         BY MR. BOHL:

25    Q    You said you also have spoken with Ms. Lewis on the
```

Video Deposition of Roberta Manley  9/26/2011

Page 20

| | | |
|---|---|---|
| 1 | A | Including Ms. Paradies. |
| 2 | Q | Let's get back to that a little later.  Let me ask you |
| 3 | | some questions about yourself, if it's okay with you. |
| 4 | A | Mm-hmm.  Sure.  Yes. |
| 5 | Q | Do you have any professional licenses? |
| 6 | A | Yes. |
| 7 | Q | What licenses do you have? |
| 8 | A | I'm a registered nurse. |
| 9 | Q | And do you have any other licenses other than, of |
| 10 | | course, a driver's license? |
| 11 | A | No, I do not. |
| 12 | | MR. BOHL:  I didn't make enough copies, but |
| 13 | | there's one. |
| 14 | Q | Here. |
| 15 | A | Thank you. |
| 16 | | (Exhibit 49 identified) |
| 17 | Q | Ms. Paradies [Manley], I've just shown you a document |
| 18 | | that the court reporter has marked as Exhibit 49.  Can |
| 19 | | you tell me what that is? |
| 20 | A | It's a copy of my resume. |
| 21 | Q | And this is the resume that you gave to AseraCare when |
| 22 | | you applied for a job at AseraCare; is that correct? |
| 23 | A | Yes.  Correct. |
| 24 | Q | Now, by the way, have there ever been any complaints |
| 25 | | that you're aware of with the licensing authority |

Video Deposition of Roberta Manley  9/26/2011

Page 179

1   verbal orders must be signed.

2   Q   Do you know what patients these forged Mateo

3       signatures were used for?

4   A   I don't.

5   Q   Do you know of any way that we can go back in time and

6       figure out which patients these verbal -- these forged

7       Mateos were used for?

8   A   I don't know.

9   Q   Now, I don't want you to tell me anything that you've

10      told your lawyers.  But before hiring counsel, did you

11      and your fellow plaintiffs talk about any way at all

12      that would allow us to go back and identify which

13      patients relate to forged Mateo signatures?

14  A   I don't recall having a conversation with anyone.

15           MR. BOHL:  Why don't we take a break, if

16        that's okay with you.

17           WITNESS:  Sounds just fine.

18           REPORTER:  Off the record.

19           (Off the record 3:19 - 3:34)

20           REPORTER:  Okay.  We're back on the record.

21  BY MR. BOHL:

22  Q   Now, Mrs. Manley, we're back from our break, correct?

23  A   Yes.

24  Q   Now, I would like to ask you some very general

25      questions about general propositions that touch upon

Video Deposition of Roberta Manley 9/26/2011

Page 180

1           hospice care, if that's okay with you.

2    A    Okay.

3    Q    Is it true that terminal illness does not always have

4           a predictable course and can be extended beyond the

5           initial six-month certification?

6    A    Yes.

7    Q    Is it true that CMS recognizes that making medical

8           prognostication of life expectancy is not always an

9           exact science?

10   A    Yes.

11                MR. WALTHAL:  Object to the form.

12   A    Yes.

13        BY MR. BOHL:

14   Q    Is it true that the Medicare program recognizes that

15          terminal illnesses do not have entirely predictable

16          courses?  In recognition of a difficulty of making

17          exact predictions, physicians certifying Medicare

18          patients for hospice are expected only to use their

19          best clinical judgment regarding the normal course of

20          the patient's illness.

21   A    Yes.

22   Q    Is it true that as long as a physician continues to

23          properly and conscientiously recertify the six-month

24          prognosis, a beneficiary can continue to receive the

25          hospice benefit?

Video Deposition of Roberta Manley  9/26/2011

Page 185

```
 1    A    Yes.

 2    Q    And is that something you've observed?

 3    A    Yes.

 4    Q    Now, as a general proposition, is the hospice benefit

 5         likely to harm a patient?

 6    A    The hospice benefit is put into place to provide

 7         quality end-of-life care, compassionate care, death

 8         with dignity type of thing.

 9    Q    But my question was a little different.  Can the

10         hospice benefit harm a patient?

11                   MR. WALTHAL:  Object to the form.

12    A    No.

13    BY MR. BOHL:

14    Q    You're familiar with the physician's oath, "First, do

15         no harm"?

16    A    Yes.

17    Q    In your nursing opinion, providing the hospice benefit

18         isn't going to produce harm.

19                   MR. WALTHAL:  Same objection.

20    A    The hospice benefit is not producing any harm to the

21         patient.  But it can harm the taxpayers.

22    BY MR. BOHL:

23    Q    But not the patient.

24    A    But not the patient, physical care or spiritual,

25         emotional care of the patient.
```

Video Deposition of Roberta Manley  9/26/2011

Page 212

```
 1    Q    The population of your district, the northern district
 2         you were servicing --
 3    A    I ended up with both sides by this time.
 4    Q    The population of both the north and the south
 5         geographically was very large, right?
 6    A    Yes.  Yes.
 7    Q    You are aware of government studies that come to the
 8         conclusion that there are lots of people that qualify
 9         for the hospice benefit that never get it, right?
10    A    That's correct.
11              MR. BARGER:   Object to the form.
12    A    That's correct.
13         BY MR. BOHL:
14    Q    And those people that qualify for the hospice benefit
15         and are entitled to it but don't get it would be
16         better off if they got it, right?
17    A    Yes.
18    Q    Now, what is inherently wrong with Linda Kriticos
19         telling you she wants to provide the hospice service
20         to those people who qualify for it and aren't getting
21         it?
22    A    There's nothing wrong if they qualify for it.
23    Q    And she never said, "Go out and find me some patients
24         that don't qualify so we'll make them eligible," did
25         she?
```