FILED
2014 Feb-03 PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 6

## Page 1

```
 1    IN THE UNITED STATES DISTRICT COURT
 2    FOR THE NORTHERN DISTRICT OF ALABAMA,
 3              SOUTHERN DIVISION
 4
 5  CIVIL ACTION NO.:  2:12-cv-00245-KOB
 6
 7  United States of America, ex. rel.
 8  DEBORA PARADIES, LONDON LEWIS and ROBERTA
 9  MANLEY and UNITED STATES OF AMERICA,
10             Plaintiffs,
11  v.
12  GGNSC ADMINISTRATIVE SERVICES, LLC, et
13  al.,
14             Defendants.
15
16       VIDEOTAPE 30(b)(6) DEPOSITION
17                    OF
18             MARY JANE SCHULTZ
19          8TH DAY OF MAY, 2013
20
21  TAKEN BEFORE:   Sabrina Lewis
22                  Registered Diplomate
23                  Reporter and Notary Public
```

## Page 2

```
 1         S T I P U L A T I O N
 2         IT IS STIPULATED AND AGREED,
 3  by and between the parties, through their
 4  respective counsel, that the videotape
 5  deposition of MARY JANE SCHULTZ may be
 6  taken before Sabrina Lewis, Commissioner,
 7  Registered Diplomate Reporter and Notary
 8  Public, State at Large;
 9         That the signature to and
10  reading of the deposition by the witness
11  is waived, the deposition to have the same
12  force and effect as if full compliance had
13  been had with all laws and rules of Court
14  relating to the taking of depositions;
15         That it shall not be necessary
16  for any objections to be made by counsel
17  to any questions, except as to form or
18  leading questions, and that counsel for
19  the parties may make objections and assign
20  grounds at the time of trial, or at the
21  time said deposition is offered in
22  evidence, or prior thereto.
23
```

## Page 3

```
 1         A P P E A R A N C E S
 2
 3  FOR THE PLAINTIFF:
 4
 5      Ms. Holly Howell Snow
 6      Attorney at Law
 7      U.S. Department of Justice
 8      Civil Division
 9      P. O. Box 261 Ben Franklin Station
10      Washington, DC 20044
11      (202) 616-2879
12
13      Ms. Carolyn B. Tapie
14      Attorney at Law
15      U.S. Department of Justice
16      601 D Street NW
17      Patrick Henry Building
18      Room 9706
19      Washington, DC 20004
20      (202) 305-3669
21
22
23
```

## Page 4

```
 1     A P P E A R A N C E S (continued)
 2
 3  FOR THE DEFENDANTS:
 4      Messrs. James S. Christie and
 5           Jack W. Selden
 6      Attorneys at Law
 7      Bradley Arant Boult Cummings LLP
 8      One Federal Place
 9      1819 Fifth Avenue North
10      Birmingham, Alabama 35203
11      (205) 521-8000
```

```
                                                    105
 1  to ask her questions from the first half
 2  of this document because the appendices
 3  are longer than the text, and so I've just
 4  copied the first half for your review
 5  here.
 6          MR. SELDEN:  What number?
 7          MR. CHRISTIE:  Defendant's
 8  Exhibit 162.
 9      Q.  Is that right?
10      A.  Uh-huh.
11      Q.  We were earlier talking about
12  educational materials, and you mentioned
13  workshop materials?
14      A.  Correct.
15      Q.  This is workshop materials,
16  correct?
17      A.  Yes.
18      Q.  I've seen what looks like it
19  was a companion piece to this that was a
20  Power Point slide.  Have you seen that?
21      A.  I believe I would have seen it
22  at --
23      Q.  At some point?
```

```
                                                    106
 1      A.  At some point, yes.
 2      Q.  Is there anything else that
 3  you were referring to as workshop
 4  materials other than the 2007 Power Point
 5  and the document that's now Defendant's
 6  Exhibit 162?
 7      A.  Palmetto GBA does workshops on
 8  an annual basis.  So there would have been
 9  prior to and subsequent to this date,
10  there would have been other Medicare
11  workshops.
12      Q.  Hospice workshops?
13      A.  Hospice workshops, yes.
14      Q.  All right.  If you will, go to
15  page 4086 in Defendant's Exhibit 162.  Do
16  you see the title up at the top saying
17  "The CERT Program"?
18      A.  Yes.
19      Q.  And CERT stands for
20  Comprehensive Error Rate Test Program,
21  right?
22      A.  Yes.
23      Q.  And this is a program to
```

```
                                                    107
 1  monitor and improve the accuracy of
 2  Medicare payments?
 3      A.  Yes.
 4      Q.  Whose error rate is being
 5  tested under the CERT Program?  The
 6  hospice or Palmetto's?  Or both?
 7      A.  They are -- it is the hospice
 8  program.  It is not an error rate of
 9  Palmetto GBA.
10      Q.  Are there any requests for
11  documents related to the CERT Program for
12  AseraCare?
13          MS. TAPIE:  Object to the
14  form.
15      A.  If you're asking if the
16  CERT Program requested any claim medical
17  records from AseraCare, I would have no
18  way of knowing that.  They are requested
19  directly from the provider.
20      Q.  Did you do anything to gather
21  information about the CERT Program to be a
22  representative on today?
23      A.  I've reviewed the section of
```

```
                                                    108
 1  the CMS IOM on the CERT Program.
 2      Q.  You understand that one of the
 3  topics was specifically about the
 4  CERT Program?
 5      A.  Yes.
 6      Q.  And so you reviewed what was
 7  in the Program Integrity Manual about the
 8  CERT Program?
 9      A.  Yes.
10      Q.  Did you do anything to review
11  whether or not there had ever been any
12  document requests related to the
13  CERT Program?
14      A.  No, I did not.
15      Q.  So you don't know one way or
16  the other about whether or not there have
17  been any CERT document requests for
18  AseraCare?
19      A.  No.
20      Q.  All right.  Who is the
21  contractor that would run the CERT Program
22  for AseraCare?
23      A.  That would be Advance Med.
```

                                                                  109
1   Q.   Do you know why you were the
2   only person designated as a representative
3   to talk about the CERT Program in
4   correspondence related to the deposition
5   today?
6   A.   I'm not sure if this is
7   something I'm supposed to answer or not.
8   I just in looking at the question, the
9   question is how Palmetto used the
10  Comprehensive Error Rate Testing Program.
11  Q.   So how -- I mean, where are
12  the results of the CERT Program that
13  related to AseraCare and other hospices?
14  Can you answer those questions?
15  A.   Palmetto receives information
16  from the CERT contractor regarding the
17  error rates that they have found.  The
18  CERT contractor actually performs the
19  review and determines the error rates.
20  Palmetto would use those results in
21  performing data analysis and perhaps
22  identifying providers that might
23  potentially be placed on medical review.

                                                                  110
1   That would be one element of the data that
2   would be analyzed.
3   Q.   Where are those results for
4   AseraCare?
5   MS. TAPIE:  I just want to
6   insert an objection and instruction to the
7   extent this is calling for privileged
8   information, investigative files,
9   privileged and internal government
10  communications information, not to
11  disclose.
12  MR. CHRISTIE:  Is the
13  government taking the position that all
14  the results from the CERT Program are
15  privileged?
16  MS. TAPIE:  All the results
17  from the CERT Program?
18  MR. CHRISTIE:  Yes.
19  MS. TAPIE:  I don't know that
20  we're taking that position.
21  MR. CHRISTIE:  Just the
22  results related to AseraCare that can be
23  useful in this litigation?

                                                                  111
1   MS. TAPIE:  No, I mean, I'm
2   talking about the investigative files
3   privilege.  And to the extent that there
4   were internal government communications
5   about error rates identified to assist
6   government contractors in their
7   investigative work, that that would be
8   privileged.
9   MR. CHRISTIE:  Sounds like to
10  me every piece of information the
11  government has is privileged.
12  MS. SNOW:  That's not true.
13  MR. CHRISTIE:  It sounds that
14  way.
15  MS. SNOW:  Well, that's --
16  MR. CHRISTIE:  All right,
17  everything related to the CERT Program is
18  privileged.  Y'all haven't provided any
19  information showing any results from the
20  CERT Program.  And that would have been
21  requested back in July 2012, and it was
22  requested for this deposition.
23  MS. TAPIE:  We made clear to

                                                                  112
1   you in a letter and in an email just this
2   week again stating what this witness would
3   be testifying about.  You have not
4   responded to our efforts to agree on a
5   scope of the testimony that the government
6   would be offering.
7   I think for purposes of timing
8   in this deposition, we're happy to
9   continue to have that discussion with you,
10  and we want to reach an agreement.  We
11  have made efforts to reach an agreement.
12  MR. CHRISTIE:  All right.
13  There's no information being provided
14  about the CERT Program whatsoever other
15  than what's in the Program Integrity
16  Manual.  I mean, I can read the Program
17  Integrity Manual.  So I mean, look...
18  MS. TAPIE:  And that was made
19  clear to you more than a month ago that
20  that's the testimony that we were prepared
21  to offer.
22  MR. CHRISTIE:  I will tell
23  you.  It did not occur to me that y'all

```
                                                        113
1   were not going to provide the information
2   about the CERT results.  It's just there's
3   no way that the information that y'all
4   provided -- y'all give all this
5   boilerplate objection, and you can't tell
6   what you're saying because you have so
7   many objections it means nothing.
8            I'm just telling you.  Your
9   letters have so many objections in it you
10  can't tell where you're going with it.
11      Q.   All right.  The information
12  that you're talking about that Palmetto
13  would have from the CERT Program, is there
14  some file that would be kept, whether
15  electronic or paper, related to AseraCare?
16      A.   Palmetto keeps electronic
17  files of all claims.  So AseraCare would
18  be included in that.
19      Q.   All right.  What format does
20  Palmetto receive the information from
21  Advance Med related to the CERT Program?
22      A.   There is a CERT database that
23  Palmetto downloads information from the
```

```
                                                        114
1   CERT contractor.
2       Q.   So both Advance Med and
3   Palmetto would have AseraCare's
4   information showing the results from the
5   CERT reviews that have been done in the
6   past?
7       A.   If there were any done of any
8   AseraCare claims, yes.
9       Q.   And you don't know whether any
10  were done of AseraCare claims or not?
11      A.   I do not.
12      Q.   The second half of the same
13  page, 4086, of Defendant's Exhibit 162 has
14  to do with the medical review process.  Do
15  you see that?
16      A.   Uh-huh.
17      Q.   That would be the part that
18  Palmetto actually performed, right?
19      A.   Correct.
20      Q.   And the process called
21  Progressive Corrective Action -- PCA?
22      A.   Yes.
23      Q.   What is that?
```

```
                                                        115
1       A.   That is the process by which
2   Palmetto GBA and other Medicare
3   contractors would follow that is outlined
4   in the Program Integrity Manual as to
5   making those decisions about, you know,
6   the probe review results, the ongoing
7   medical review results, and what actions
8   would be appropriate.
9       Q.   All right.  So the Progressive
10  Corrective Action or PCA is a description
11  of how the decisions are made and what the
12  basis for the decisions moving from probe
13  edit to ongoing medical review to
14  corrective action plans?
15      A.   Correct.
16      Q.   And the alternatives that you
17  have along that way?
18      A.   Correct.
19      Q.   All right.  If you will go to
20  page 4087 of Defendant's Exhibit 162.  At
21  the very top, you see where it talks about
22  the CERT Requests and the "claims are
23  selected randomly"?
```

```
                                                        116
1       A.   Yes.
2       Q.   And so that would mean that
3   there might be some statistical validity
4   to the claims because there's arguably
5   random selection there, right?
6       A.   I can't address how the CERT
7   contractor pulls their claims other than
8   they are done.  It's a random selection
9   which is different than what Palmetto
10  does.
11      Q.   All right, let me ask this
12  just to be fair.  You have not had any
13  involvement in the CERT Program other than
14  seeing results that come from that program
15  that then would have been used for
16  Palmetto to do data analysis?
17      A.   Palmetto's also responsible
18  for processing the decisions that are made
19  by the CERT contractor.
20      Q.   All right.  So if the CERT
21  contractor finds that someone's
22  ineligible, that's a post-payment review
23  or a prepayment review?
```