FILED

2014 Dec-04  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA; ex rel., et al.,** | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO:** |
| | ) **2:12-CV-245-KOB** |
| | ) |
| **ASERACARE INC, et al.** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

Few decisions are more difficult for a family to make than decisions about the health of elderly relatives. This case raises questions about hospice care for terminally ill people. We rely on physicians to guide us through the complexity of our healthcare system, expecting them to make both objective and subjective determinations about our health. What happens, however, during a retrospective review when two physicians cannot agree whether a claim for the Medicare Hospice Benefit, based on a physician's certification that a patient is terminally ill, is supported by the patient's medical records? Is that claim false under 31 U.S.C. § 3729, the False Claims Act ("FCA")?

Plaintiff United States of America, in coordination with Relators Deborah Paradies, London Lewis, and Roberta Manley, sued defendants GGNSC Administrative Services, LLC; Hospice Preferred Choice, Inc.; and Hospice of Eastern Carolina, Inc. (collectively, "AseraCare") under the FCA. The Government alleges that AseraCare schemed to defraud Medicare by

1

coercing its employees to interpret medical records liberally so that AseraCare could submit hospice claims for borderline patients. The consequences of that dispute will not deprive patients of hospice care, but could deprive AseraCare of the money it received from the Government for providing hospice care to patients now deemed ineligible and could result in treble damages.

The Government points to information in patient medical records that it claims is objective evidence that AseraCare falsely certified certain patients as eligible for hospice care whose medical records did not support that they qualified. Further, the Government points to documents and testimony that AseraCare employees throughout the company knew about the false certifications. Finally, the Government points to statistical evidence to show that AseraCare had a widespread problem with falsely certified claims, entitling the Government to a large recovery. The court does not determine whether AseraCare falsely certified patients or submitted false claims, however, because questions about the facts of the case and the credibility of witnesses exist that must be determined by the jury.

The parties have filed the following motions:

- AseraCare's "Motion for Summary Judgment." (Doc. 225);
- AseraCare's "Motion for Partial Summary Judgment." (Doc. 229);
- AseraCare's "Motion to Exclude Testimony of Dr. Klaus Miescke." (Doc. 231);
- AseraCare's "Motion to Exclude Testimony of Dr. Solomon Liao." (Doc. 233);
- AseraCare's "Motion to Exclude Testimony of Dr. Matthew Perri." (Doc. 235);
- The Government's "Motion for Partial Summary Judgment." (Doc. 237);
- The Government's "Motion in Limine to Exclude at Trial Expert Opinions of Three of AseraCare's Seven Designated Expert Witnesses." (Doc. 239); and
- AseraCare's "Motion to Exclude Dr. Perri's Untimely Supplemental Report." (Doc. 262).

The court held a hearing on all the motions on November 17, 2014. For the reasons stated at the hearing and discussed below, the court **GRANTS** AseraCare's motion to exclude Dr. Perri, (Doc. 235); **GRANTS** AseraCare's motion to exclude Dr. Perri's supplemental report, (Doc.

2

262); **GRANTS** the Government's motion for partial summary judgment, (Doc. 237), only as to

AseraCare's statute of limitations and laches defenses; and **DENIES** all the other motions. (Doc.

225; Doc. 229; Doc. 231; Doc. 233; Doc. 237; Doc. 239).

## I.      Procedural Posture

This case began when the Relators filed a complaint against AseraCare on May 2, 2008,

in the Eastern District of Wisconsin, alleging that AseraCare engaged in improper practices in its

hospice business. (Doc. 1). The Relators moved to transfer the case to the Northern District of

Alabama on December 16, 2011, and the district court for the Eastern District of Wisconsin

agreed on January 23, 2012. (Doc. 62; Doc. 99; Doc. 100). This court consolidated the case with

other litigation originating in the Northern District of Georgia and the Northern District of

Alabama. (Doc. 131; Doc. 145). The Government then intervened and filed a new complaint,

which replaced the complaint filed by the Relators. (Doc. 156).

The court has subject matter jurisdiction over the Government's FCA claims pursuant to

28 U.S.C. § 1331 and 28 U.S.C. § 1345, and supplemental jurisdiction over the Government's

common law claims pursuant to 28 U.S.C. §1367(a). The court has personal jurisdiction over

AseraCare pursuant to 31 U.S.C. § 3732(a). No party disputes subject matter or personal

jurisdiction. (Doc. 156; Doc. 161). AseraCare disputed venue, but the Eastern District of

Wisconsin resolved venue in favor of the Northern District of Alabama when it transferred the

case. (Doc. 99).

In its complaint, "[t]he United States alleges that AseraCare, through its reckless business

practices, admitted and retained individuals across the United States who were not eligible to

receive Medicare hospice benefits, because it was financially lucrative." (Doc. 156, 3, ¶ 3). The

Government's complaint contains four counts: (1) Violation of the FCA by presenting a false claim for payment; (2) Violation of the FCA by using a false record or statement to obtain payment of a false claim; (3) Payment under a mistake of fact; and (4) Unjust enrichment. (Doc. 156, 25-9, ¶¶ 78-90).

> Specifically, the Government alleges:

> AseraCare falsely certified on electronic claim forms submitted to Medicare that hospice care provided to Medicare recipients across the United States was 'medically indicated and necessary for the health of the patient.' AseraCare created and/or submitted documentation that falsely represented that certain Medicare recipients were 'terminally ill,' meaning that the 'individual has a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal course.' Many of the Medicare recipients were not eligible for hospice care paid for by the Medicare Program because they did not have a prognosis of six months or less to live if the illness runs its normal course.

(Doc. 156, 10, ¶ 36). The Government argues that employees throughout the company knew that AseraCare submitted false claims.

The Government seeks damages for two universes of patients. The first universe consists of all AseraCare patients for whom AseraCare submitted claims to Medicare for at least 365 days of continuous hospice care between January 1, 2007 and December 31, 2008. The second universe consists of all AseraCare patients for whom AseraCare submitted claims to Medicare for at least 365 days of continuous hospice care between January 1, 2009 and February 28, 2011. The two universes total 2,181 patients. The Government's expert reviewed a sample of 233 patients from the 2,181 claims and found around half (124 out of 233) to be false. (Doc. 251, 23-4, ¶¶ 41-2). The Government seeks to extrapolate that finding to all 2,181 claims using statistical evidence. (Doc. 251, 37-38, ¶ 12).

AseraCare filed a motion for summary judgment on April 25, 2014 arguing that the

4

Government cannot show AseraCare knowingly submitted any false claim, and filed a motion for partial summary judgment on April 30, 2014, arguing that the Government failed to provide any proof at all for the allegedly false claims outside of the 233 claim sample. AseraCare also filed *Daubert* motions to exclude Government experts Dr. Klaus Miescke, Ph.D.; Dr. Solomon Liao, M.D.; and Dr. Matthew Perri, Ph.D. Finally, AseraCare filed a motion to exclude Dr. Perri's supplemental report. (Doc. 225; Doc. 229; Doc. 231; Doc. 233; Doc. 235; Doc. 262).

The Government filed a motion for summary judgment on AseraCare's affirmative defenses. The Government also filed *Daubert* motions to exclude AseraCare experts Dr. Bo Martin, Ph.D.; Dr. Chester Palmer, Ed.D.; and Ms. Leslie Norwalk. (Doc. 237; Doc. 239).

## II.    Facts

### A.    Hospice

Hospice care is a benefit under Medicare Part A, which is a 100 percent federally-subsidized health insurance program. The Medicare Hospice Benefit is administered by the Centers for Medicare and Medicaid Services ("CMS") on behalf of the Department of Health and Human Services. The Medicare Hospice Benefit pays a predetermined fee, based on the type of care provided by the hospice provider, for each day an eligible patient receives hospice care.

To be eligible for hospice care under Medicare, "an individual must be . . . (a) [e]ntitled to Part A of Medicare; and (b) [c]ertified as being terminally ill in accordance with § 418.22." 42 C.F.R. § 418.20.

Hospice care is designed to help terminally ill people continue life without disruption to normal activities while remaining in the home. Hospice facilities provide all the care needed by terminally ill patients. "A hospice uses an interdisciplinary approach to deliver medical, social,

psychological, emotional, and spiritual services through the use of a broad spectrum of professional and other care-givers with the goal of making the individual as physically and emotionally comfortable as possible." 48 Fed. Reg. 56008, 56008 (Dec. 16, 1983). In choosing hospice care, patients forgo curative options in exchange for palliative care and hope for a better quality to the end of their lives. AseraCare patients receive hospice care in outpatient settings, usually at home or in a skilled nursing facility.

### B.    AseraCare

AseraCare operates about 60 hospice facilities in 19 states, including Alabama, with around 10,000 patient admissions each year. Most AseraCare patients receiving hospice care do not have private insurance and are enrolled in the Medicare program. An Executive Director is the highest level employee at each AseraCare hospice facility. A Director of Clinical Services and a Medical Director report to the Executive Director.

AseraCare receives referrals for hospice patients from a variety of sources, such as hospitals, individual physicians, or skilled nursing facilities. AseraCare employs sales staff, called Provider Relations Managers, to generate patient referrals for hospice care. Provider Relations Managers are expected to generate a certain number of hospice referrals each month. AseraCare's medical personnel are also trained to "sell" hospice to generate referrals. (Doc. 251, 49, ¶ 12).

### C.    Physician Certification

Patients must be certified as terminally ill before CMS will pay AseraCare for the hospice care it provides. To qualify for the Medicare Hospice Benefit, "the individual's attending physician . . . and . . . the medical director . . . of the hospice program providing . . . the care,

6

each certify in writing at the beginning of the period, that the individual is terminally ill . . . based

on the physician's or medical director's clinical judgment regarding the normal course of the

individual's illness." 42 U.S.C. § 1395f(a)(7)(A)(I). A patient is considered to be 'terminally ill'

if the patient has a medical prognosis of life expectancy of six months or less. 42 U.S.C. § 1395x.

The physician certification must contain certain information. The CMS regulations

provide:

> (b) Content of certification. Certification will be based on the physician's or
> medical director's clinical judgment regarding the normal course of the
> individual's illness. The certification must conform to the following requirements:
>
>> (1) The certification must specify that the individual's prognosis is for a
>> life expectancy of 6 months or less if the terminal illness runs its normal
>> course.
>>
>> (2) **Clinical information and other documentation that support the
>> medical prognosis must accompany the certification and must be filed
>> in the medical record** with the written certification as set forth in
>> paragraph (d)(2) of this section. Initially, the clinical information may be
>> provided verbally, and must be documented in the medical record and
>> included as part of the hospice's eligibility assessment. . . .

42 C.F.R. § 418.22 (emphasis added). However, "no payment may be made . . . for any expenses

incurred for items or services . . . in the case of hospice care, which are not reasonable and

necessary for the palliation or management of terminal illness." 42 U.S.C. § 1395y(a)(1)(c).

Upon referral of patients who might be eligible for hospice care, AseraCare undertakes an

initial certification. The patients are initially evaluated and certified by their attending physician

and AseraCare's hospice medical director. 42 U.S.C. § 1395f(a)(7)(A)(i). The AseraCare medical

director often relies on nurses and other staff for initial eligibility determinations. Sometimes, the

medical director makes initial eligibility certifications by telephone, relying on patient

7

information verbally communicated by AseraCare nurses instead of the physical medical file. (Doc. 251, 73-4, ¶¶ 79-81).

To assist AseraCare's certifying physicians, AseraCare relies on guidance documents called Local Coverage Determinations ("LCDs") issued by Palmetto GBA. Palmetto GBA is a Medicare Administrative Contractor (formerly called a "fiscal intermediary") for CMS. Palmetto is the Medicare Administrative Contractor  for the southeast United States and is AseraCare's primary Medicare Administrative Contractor. (Doc. 226, 9, ¶¶ 17-8; Doc. 251, 12, ¶¶ 17-8).

Palmetto GBA's LCDs are not clinical benchmarks. Rather, they "are suggested guidelines to help the clinical staff understand the type of information that should be assessed and documented to paint a clear picture of the beneficiary's medical condition." (Doc. 226, 10-11, ¶ 23 (quoting Palmetto GBA Training Manual (2007) § 6.6, 6-12). Between January 2007 and February 2012, AseraCare used Palmetto GBA's LCDs for 11 conditions or diseases: ALS, HIV, Liver Disease, Renal Failure, Stroke and Coma, Adult Failure to Thrive, Alzheimer's and Related Disorders, Heart Disease, Pulmonary Disease, Cardiopulmonary Disease (the Cardiopulmonary LCD replaced the Heart Disease and Pulmonary Disease LCDs), and Neurological Disease. (Doc. 226, 10, ¶ 20; Doc. 251, 13, ¶ 20).

As required by Medicare regulations, AseraCare re-certifies patients as hospice eligible every 60 or 90 days. 42 C.F.R. § 418.21. Hospice physicians consult with an interdisciplinary group to make re-certification decisions. The interdisciplinary group includes the hospice physician and other professionals, such as chaplains, nurses, speech pathologists, and social workers who render services to the patient.

8

D.      **Claim for Payment**

After the patient is certified as eligible and has received hospice care, AseraCare submits a claim for the hospice services it provided the patient to CMS through Palmetto GBA. Palmetto GBA processes Medicare Hospice Benefit claims for CMS. (Doc. 226, 9, ¶ 16; Doc. 251, 12, ¶ 16).

Upon receipt of the claim, Palmetto GBA determines whether to pay or deny the claim for the Medicare Hospice Benefit. "Nurses at Palmetto [GBA] review the documents that the hospice chooses to submit to Palmetto [GBA] for the dates of service of the claim to evaluate whether there is adequate information." (Doc. 251, 14-5, ¶ 22).

CMS then pays AseraCare, through Palmetto GBA, for all approved hospice claims. AseraCare collects fees for one of four specific categories of hospice care: (1) routine home care day, (2) continuous home care day, (3) inpatient respite care day, or (4) general inpatient care day. 42 C.F.R. § 418.302.

However, AseraCare's aggregate payment from CMS for hospice claims is limited by the Medicare Cap. The Medicare Cap is a limit on the amount CMS will pay hospice providers to provide hospice care. The Medicare Cap is equal to roughly six months of hospice treatment per patient and is not determined on an individual basis, but by averaging the length of stay for all of AseraCare's hospice patients together. 42 C.F.R. § 418.309. Palmetto GBA sends AseraCare a Medicare Cap determination letter annually to help AseraCare determine its "cap liability," or the excess amount AseraCare must return to CMS as overpayment.

E.      **Audits**

AseraCare's claims are audited internally by AseraCare's Reimbursement and Outcomes

group. The Reimbursement and Outcomes group summarizes internal audits in quarterly reports

sent to AseraCare executives and regional directors. AseraCare also audits its hospice facilities

through its Professional Services Regional Managers, called "Level III" audits. (Doc. 251, 79, ¶

100). AseraCare also hired an outside auditor, the Corridor Group, to audit nine hospice facilities

between 2007 and 2008.

Palmetto GBA also audits some claims submitted by AseraCare before payment.

Palmetto GBA audits hospice providers in escalating levels of review called a Progressive Action

Plan. The first level review is called a "Non-Cancer Length of Stay" ("NCLOS") probe audit. In

this phase, Palmetto GBA asks for additional documents for certain claims to determine whether

the claims are appropriate for payment. Palmetto GBA has initiated around 30 NCLOS probe

audits for AseraCare hospice facilities over the past decade. The second level review is called a

"Targeted Medical Review." The third level review is called a "Corrective Action Plan."

Between 2007 and 2012, Palmetto GBA initiated 12 Corrective Action Plans for AseraCare

hospice facilities. As part of the audits, Palmetto GBA summarizes its audit findings and sends

the findings to hospice providers in Teaching and Instruction for Providers ("TIP") letters. (Doc.

251, 96-8, ¶¶ 146-52).

Palmetto GBA's audit of a claim could find different types of deficiencies, such as

"eligibility" problems (*e.g.* patient not terminally ill) or "documentation" problems (*e.g.* no

physician certification or no election form). To determine whether to pay a claim, Palmetto GBA

looks for supporting documentation in each claim file, including, for example, "interdisciplinary

team meetings, nurse's notes, social worker notes, aide notes, chaplain notes, [or] any medication

records." (Doc. 251-10, 69). Palmetto GBA does not review the patient's entire medical record

when performing the review; rather, Palmetto GBA only reviews the documents submitted by AseraCare to Palmetto GBA. (Doc. 251, 30-2, ¶ 57).

## III.     Standard of Review

### A.     Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving

party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano*, 707 F.3d at 1252.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### B.  *Daubert* Motions

Federal Rule of Evidence 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), controls determinations regarding the admissibility of expert testimony. "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

The court may admit expert testimony when "(1) the expert is qualified to testify

12

competently regarding the matters he intends to address; (2) the methodology by which the expert

reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in

*Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific,

technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

Mere "characterizations of documentary evidence," however, are not proper subjects for

expert testimony "because the trier of fact is entirely capable of determining whether or not to

draw such conclusions without any technical assistance from . . . experts." *City of Tuscaloosa*,

158 F.3d at 565.

## IV.    AseraCare's Motion for Summary Judgment and Partial Summary Judgment

### A.    The False Claims Act

The Government claims AseraCare submitted false Medicare Hospice Benefit claims to

CMS in violation of the FCA. The current version of the FCA states:

> [A]ny person who . . . knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval [or] knowingly makes, uses or causes to be
> made or used, a false record or statement material to a false or fraudulent claim . . .
> is liable to the United States Government for a civil penalty of not less than $5,000
> and not more than $10,000 . . . plus 3 times the amount of damages which the
> Government sustains because of the act of that person . . . .

31 U.S.C. § 3729(a).

The FCA is designed to prevent fraud against the Government. Private citizens, called *qui*

*tam* Relators, are authorized to bring FCA suits on behalf of the United States. 31 U.S.C. §

3730(b). "The purpose of the Act, then and now, is to encourage private individuals who are

aware of fraud being perpetrated against the Government to bring such information forward."

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1237 n.1 (11th Cir. 1999). However, the FCA is not "an all-purpose antifraud statute." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008).

In this case the Government has sued AseraCare under two provisions of the FCA: § 3729(a)(1) and § 3729(a)(2). To prevail on a FCA claim under § 3729(a)(1), the Government must prove "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *U.S. ex rel. Walker v. R&F Prop. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005).

To prevail on a FCA claim under § 3729(a)(2), the Government must prove that (1) a defendant made a false record or statement for the purpose of getting a false claim paid or approved by the Government; (2) a defendant's false record or statement caused the Government to pay a false claim; and (3) the Government actually paid the claim. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

### B.    Falsity

AseraCare, in its Motion for Summary Judgment, (Doc. 225), challenges the Government's evidence regarding the falsity element of its FCA claims under §§ 3729(a)(1) and (2). AseraCare argues that no dispute of material fact exists and that it is entitled to judgment as a matter of law because the Government has not provided any evidence that AseraCare submitted *false* claims to CMS. Dr. Solomon Liao's testimony is the Government's only evidence of the falsity element, and he testified that he could not say that any physicians were wrong when they certified patients as terminally ill. (Doc. 226, 14, ¶ 39; Doc. 251, 23, ¶ 39).

14

AseraCare's motion for summary judgment received thorough briefing, and the court held a hearing on the motion on November 17, 2014. Based on the reasons stated on the record at the hearing, the court finds that Dr. Liao's testimony creates issues of material fact regarding whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim. Granted, the FCA requires "proof of an objective falsehood" to show falsity. *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1339 (M.D. Ga. 2011) (quoting *U.S. ex rel. Roby v. Boeing*, 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000)). However, questions of fact exist, based on Dr. Liao's testimony, regarding whether clinical information and other documentation objectively did not support a certification of terminal illness. *See Feliciano*, 707 F.3d at 1252 ("Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'").

AseraCare urges the court to adopt the reasoning in *U.S. ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 695 (N.D. Ill. 2012), and grant summary judgment. In *Geschrey*, the district court for the Northern District of Illinois, when faced with similar facts, granted a motion to dismiss stating "relators have not alleged facts that the certifying physician *did not* or *could not* have believed, based on his clinical judgment, that the patient was eligible." *Id.* at 703. The court's inquiry focused on the physician's clinical judgment and whether the physician believed, based on the facts he had, that the patient should be certified for hospice. *Id.* The court found that a difference of opinion between physicians was insufficient to support a FCA violation. *Id.*

While this court finds the standard in *Geschrey* appealing and logical, the standard has

not yet been adopted by the Eleventh Circuit and the court is not persuaded it should apply the *Geschrey* standard.

Thus, the court **DENIES** AseraCare's Motion for Summary Judgment because a genuine issue of material fact exists regarding the falsity element.

### C.    Knowledge

AseraCare, in its Motion for Summary Judgment, (Doc. 225), also challenges the Government's evidence regarding the knowledge element of its FCA claims under §§ 3729(a)(1) and (2). AseraCare argues that no dispute of material fact exists and that it is entitled to judgment as a matter of law because the Government has not provided any evidence that AseraCare *knowingly* submitted false claims to CMS.

Based on the reasons stated on the record at the November 17, 2014 hearing, the court finds that questions of fact exist regarding whether AseraCare knowingly submitted false claims. The Government can use testimony of former employees and documentary evidence to give rise to an inference from which the jury could conclude that AseraCare's business practices resulted in knowing or reckless disregard that it billed CMS for patients whose medical records did not contain clinical information and other documentation to support a certification that the patient was terminally ill.

Thus, the court **DENIES** AseraCare's Motion for Summary Judgment because a genuine issue of material fact exists regarding the knowledge element.

### D.    Sampling

Finally, in its Motion for Partial Summary Judgment, (Doc. 229), AseraCare challenges the Government's evidence regarding all claims outside of the sample reviewed by Dr. Liao.

16

AseraCare argues it is entitled to partial summary judgment for four sets of claims: (1) claims Dr. Liao found as eligible; (2) claims that Dr. Liao did not review and that AseraCare's medical directors have attested were properly certified as terminally ill; (3) claims that Dr. Liao did not review and that Palmetto GBA or administrative law judges found payable; and (4) claims that Dr. Liao did review and that Palmetto GBA or administrative law judges found as payable. (Doc. 229).

Based on the reasons stated on the record at the November 17, 2014 hearing, and after further consideration by the court, the court finds that questions of fact exist regarding the falsity of these four sets of claims.

AseraCare mis-characterizes the Government's case when it argues that the Government has produced no evidence regarding these four sets of claims. The Government has statistical evidence regarding all of the Government's universe of 2,181 claims. Statistical evidence *is* evidence. *See Bazemore v. Friday*, 478 U.S. 385, 400 (U.S. 1986) (finding that statistical evidence has probative value). Questions of credibility and fact exist for the jury regarding the relative weight to be accorded AseraCare's direct evidence (*e.g.* medical director attestations, evidence that Palmetto GBA approved claims) and the Government's statistical evidence.

Thus, the court **DENIES** AseraCare's Motion for Partial Summary Judgment.

V.     **AseraCare's *Daubert* Motions**

A.     **Dr. Solomon Liao**

AseraCare moved to exclude the testimony of Government expert witness Dr. Solomon Liao. (Doc. 233). Dr. Liao is the Government's medical expert presenting testimony regarding the falsity of 124 of the 233 claims he examined. The Government presents Dr. Liao as its only

physician and hospice eligibility expert witness. (Doc. 226, 14, ¶ 39; Doc. 251, 23, ¶ 39).

Dr. Liao is a medical doctor, a former hospice medical director and physician, an academic, and a specialist in hospice and palliative medicine. (Doc. 251, 111). Dr. Liao reviewed 233 of the 2,181 patients in the two universes. "Dr. Liao concluded that the medical records do not support that over half of the patients (124 of the 233) in the samples were terminally ill for at least some portion of their hospice stay at AseraCare." (Doc. 251, 23-4, ¶¶ 41-2).

Based on the reasons stated on the record at the November 17, 2014 hearing, the court finds that the Government met its burden of establishing that the testimony of Dr. Liao meets the basic requirements of qualification, reliability, and helpfulness and is admissible pursuant to Federal Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same). AseraCare's challenges go more to the weight to be given Dr. Liao's testimony; such challenges can best be handled by "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof. . . ." *Daubert*, 509 U.S. at 596.

Thus, the court, in its discretion, **DENIES** AseraCare's Motion to Exclude Testimony of Dr. Solomon Liao.

### B.    Dr. Matthew Perri

AseraCare has moved to exclude the testimony of Government expert witness Dr. Matthew Perri and to exclude Dr. Perri's supplemental report dated October 17, 2013. (Doc. 235; Doc. 262). Dr. Matthew Perri is the Government's "marketing expert" and has a doctorate of philosophy in marketing and pharmacy. (Doc. 236, 11;  Doc. 251, 127). Dr. Perri "performed an exhaustive review of AseraCare internal documents and deposition testimony" and concluded

18

that "AseraCare's marketing plans and goal setting were strategic, purposeful, and aggressive." (Doc. 235-2, 75, ¶ 169; Doc. 251, 128). The Government offers Dr. Perri's testimony to summarize and explain to the jury the purpose of AseraCare's marketing and business practices and to show AseraCare knew it submitted false claims.

As discussed on the record at the November 17, 2014 hearing, the court finds that the Government has not met its burden of establishing that the testimony of Dr. Perri meets the basic requirements of qualification, reliability, and helpfulness and, thus, the testimony is not admissible pursuant Federal Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same).

Specifically, the Government failed to show that "(1) [Dr. Perri] is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which [Dr. Perri] reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony [of Dr. Perri] assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa*, 158 F.3d at 562.

While Dr. Perri is highly qualified in the fields of pharmacy and general healthcare marketing, Dr. Perri's credentials and methodology do not support his expert opinions regarding AseraCare's business practices and marketing *in the hospice industry*. Dr. Perri has no experience in the hospice industry, did not study any other hospice companies, and did not review any of the guidance from CMS regarding many of the topics on which he opined

19

including the Medicare Cap.[1] Instead, Dr. Perri merely recites the documentary evidence and

testimony of former AseraCare employees regarding AseraCare's marketing and business

practices, then makes conclusory statements about what AseraCare *knew* including "the

purposefulness of AseraCare's marketing [and t]he purposes of AseraCare's employee training

and compensation programs." (Doc. 262-3). These opinions are not proper subjects of expert

testimony. *See City of Tuscaloosa*, 158 F.3d at 565 (holding that "characterizations of

documentary evidence" are not proper subjects for expert testimony "because the trier of fact is

entirely capable of determining whether or not to draw such conclusions without any technical

assistance from . . . experts").

Also, Dr. Perri's opinions about AseraCare's "business practices" are outside his area of

expertise because Dr. Perri makes no attempt to explain how his "universal principles of

marketing" methodology has any bearing on AseraCare's hospice business objectives.

Further, instead of helping the jury understand "scientific, technical, or specialized"

evidence, Dr. Perri's testimony without any basis in hospice practices, could be *more* confusing

to the jury and more prejudicial than probative. *See* Fed. R. Evid. 403.

Additionally, based on the reasons stated on the record at the hearing, the court finds that

Dr. Perri's supplemental report is an untimely attempt to bolster Dr. Perri's expert opinions

shortly before the *Daubert* hearing. As set out on the record, Dr. Perri's supplemental report

included documents available to him before the close of discovery and long before his

---

[1]On a related topic, after questioned at his deposition regarding his failure to review
guidance from the Office of Inspector General about hospice industry marketing practices, Dr.
Perri admitted he did not know about or review any guidance from OIG. (Doc. 239-12). In his
untimely, supplemental report, Dr. Perri added citations to and discussions of OIG guidance
documents, including 64 C.F.R. § 54031. (Doc. 262-3).

supplemental report was served on AseraCare, and also included deposition testimony available at least by March 2014. Now, Dr. Perri's supplemental report is *20 percent longer* than the original report. Additionally, unlike the parties' prior practice in this case of requesting permission to supplement, the Government unilaterally submitted Dr. Perri's supplemental report seven months after the close of discovery on the eve of the original hearing date for Dr. Perri's *Daubert* motion.

Thus, the court, in its discretion, **GRANTS** AseraCare's Motion to Exclude Testimony of Dr. Matthew Perri. Further, the court, **GRANTS** AseraCare's Motion to Exclude Dr. Perri's Untimely Supplemental Report.

### C.     Dr. Klaus Miescke

AseraCare moved to exclude the testimony of Government expert witness Dr. Klaus Miescke. (Doc. 231). Dr. Miescke, a statistician, is the Government's expert presenting testimony about the statistical evidence extrapolating Dr. Liao's findings to all of the Government's universe of 2,181 claims.

As explained on the record at the November 17, 2014 hearing, the court finds that the Government met its burden of establishing that the testimony of Dr. Miescke meets the basic requirements of qualification, reliability, and helpfulness and is admissible pursuant to Federal Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same). Further, the Eleventh Circuit has accepted Dr. Miescke's methods in criminal fraud cases. *See U.S. v. Rosin*, 263 F. App'x 16, 29 (11th Cir. 2008) (upholding Dr. Miescke's testimony at trial in criminal health care fraud case and observing "[t]he purpose of statistical sampling is to provide a means

of determining the likelihood that a large sample shares characteristics of a smaller sample.").

AseraCare's challenges can best be handled by "[v]igorous cross examination, presentation of

contrary evidence, and careful instruction on the burden of proof. . . ." *Daubert*, 509 U.S. at 596.

Thus, the court, in its discretion, **DENIES** AseraCare's Motion to Exclude Testimony of

Dr. Klaus Miescke.

## VI.    The Government's Motion for Partial Summary Judgement

The Government, in an attempt to limit the number of issues for trial, moved for partial

summary judgment on many of AseraCare's defenses. (Doc. 237). For the reasons stated on the

record at the November 17, 2014 hearing, the court finds that the Government's motion should

be granted *only* as to AseraCare's statute of limitations and laches defenses. AseraCare agreed to

withdraw its statute of limitations and laches defenses if the Government agreed to stipulate that

the Government only seeks recovery for claims during the time period between January 1, 2007

and February 28, 2011. The Government agreed to this stipulation at the hearing.

The court finds that the remainder of the Government's arguments are without merit.

Further, attempts to limit AseraCare's defenses and other issues for trial are more properly

addressed at the pretrial conference.

Thus, the court **GRANTS** the Government's Motion for Partial Summary Judgment only

as to the statute of limitations and laches defenses, but **DENIES** the remainder of the motion.

## VII.    The Government's *Daubert* Motions

### A.    Ms. Leslie Norwalk

The Government moved to exclude the testimony of AseraCare expert witness Leslie

Norwalk. (Doc. 239). Ms. Norwalk, a former executive of CMS, is AseraCare's expert presenting

testimony that AseraCare's marketing practices complied with the guidance and practice of CMS.

As stated on the record at the November 17, 2014 hearing, the court finds that AseraCare met its burden of establishing that the testimony of Ms. Norwalk meets the basic requirements of qualification, reliability, and helpfulness and is admissible pursuant to Federal Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same). The Government's challenges go to the weight of Dr. Norwalk's testimony and can best be handled by "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof. . . ." *Daubert*, 509 U.S. at 596.

Thus, the court, in its discretion, **DENIES** the Government's Motion in Limine to Exclude at Trial Expert Opinions of Three of AseraCare's Seven Designated Expert Witnesses as to Ms. Norwalk.

### B.       Dr. Chester Palmer

The Government moved to exclude the testimony of AseraCare expert witness Dr. Chester Palmer. (Doc. 239). Dr. Palmer, a statistician, is AseraCare's expert presenting testimony regarding alleged flaws in how Dr. Miescke's incorporated Dr. Liao's findings into the Government's statistical evidence.

As discussed on the record at the November 17, 2014 hearing, the court, finds that AseraCare met its burden of establishing that the testimony of Dr. Palmer meets the basic requirements of qualification, reliability, and helpfulness and is admissible pursuant to Federal Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of

admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same). The

Government's challenges amount to a disagreement about Dr. Palmer's methodology and can

best be handled by "[v]igorous cross examination, presentation of contrary evidence, and careful

instruction on the burden of proof. . . ." *Daubert*, 509 U.S. at 596.

Thus, the court, in its discretion, **DENIES** the Government's Motion in Limine to

Exclude at Trial Expert Opinions of Three of AseraCare's Seven Designated Expert Witnesses as

to Dr. Palmer.

###### C.        **Dr. Bo Martin**

The Government also moved to exclude the testimony of AseraCare expert witness Dr.

Bo Martin. (Doc. 239). Dr. Martin, a statistician, is AseraCare's expert regarding the statistical

effect on the Government's case of other AseraCare patients and claims outside the

Government's universe of 2,181 claims.

For the reasons stated on the record at the November 17, 2014 hearing, the court finds

that AseraCare met its burden of establishing that the testimony of Dr. Martin meets the basic

requirements of qualification, reliability, and helpfulness and is admissible pursuant to Federal

Rule of Evidence 702. *See Daubert*, 579 U.S. at 589, 591-92 (stating the requirements of

admissibility of expert testimony); *City of Tuscaloosa*, 158 F.3d at 562 (same). The

Government's challenges go to the weight of Dr. Martin's testimony and can best be handled by

"[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the

burden of proof. . . ." *Daubert*, 509 U.S. at 596.

Thus, the court, in its discretion, **DENIES** the Government's Motion in Limine to

Exclude at Trial Expert Opinions of Three of AseraCare's Seven Designated Expert Witnesses as

to Dr. Martin.

**VIII.   Conclusion**

In summary, this case will proceed to trial because questions of material fact exist regarding whether AseraCare knowing submitted false claims for the Medicare Hospice Benefit to CMS. Further, all of AseraCare and the Government's experts' testimony is appropriate for trial, except for Dr. Perri's testimony.

For the reasons stated at the November 17, 2014 motion hearing and discussed above, the court **GRANTS** AseraCare's motion to exclude Dr. Perri, **GRANTS** AseraCare's motion to exclude Dr. Perri's supplemental report, **GRANTS** the Government's motion for partial summary judgment only as to AseraCare's statute of limitations and laches defenses, and **DENIES** all the other motions.

**DONE** and **ORDERED** this 4th day of December, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE