UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ex rel. DEBORA PARADIES, ) <br> LONDON LEWIS and ROBERTA ) <br> MANLEY and UNITED STATES ) <br> OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GGNSC ADMINISTRATIVE ) <br> SERVICES, LLC, et al., ) <br> ) <br> Defendants. ) | Civil Action No: <br><br> 2:12-cv-00245-KOB |

### DEFENDANTS' MOTION TO STRIKE CERTAIN TESTIMONY FROM THE GOVERNMENT'S PHYSICIAN EXPERT, DR. SOLOMON LIAO

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants ("AseraCare") hereby move to strike certain testimony from the government's physician expert, Dr. Solomon Liao. Specifically, AseraCare moves to strike Dr. Liao's testimony with respect to certain sample patients because that testimony was based on an inconsistent—and unreliable—methodology.[1] Furthermore, the Court should grant

---

[1] AseraCare maintains that the Court should strike Dr. Liao's testimony in its entirety as unreliable and files this motion without waiving that position. *See* 09/02/2015 Trial Tr. at 3546:4-7 (THE COURT:  "I have some serious concerns. I am not sure that [Dr. Liao's] testimony as a whole should be stricken. But maybe if the defense wants to look at some specifics, we can work on that"). AseraCare also incorporates by reference its arguments in support of its Motion To Exclude Testimony Of Solomon Liao, M.D., Docs. 233 & 234, its Bench Memorandum Regarding The Application Of Federal Rule Of Evidence 702 To Certain

AseraCare judgment as a matter of law in Phase One, *see, e.g.*, Doc. 419, for each patient, separately and severally, with respect to which the Court strikes Dr. Liao's testimony. In support of this motion, AseraCare states as follows:

1. **Dr. Liao testified that certain sample patients were not eligible for the Medicare hospice benefit only because they were not a "FAST 7"; he then testified that a patient need not be a FAST 7 in order to be eligible.**

On direct, Dr. Liao testified that the following sample patients were not eligible for the Medicare hospice benefit only because they were not a FAST 7:

- Thomas S. (#113): "So, the reason [why Thomas S. was not eligible] is because he was not a FAST 7 until February of 2009." 08/19/2015 Trial Tr. at 1722:3-4 (Ex. 1).[2]

- Faye A. (#36): "Well, I felt that she did not have eligibility for the entire time because she was never a FAST 7 throughout the entire time." 08/19/2015 Trial Tr. at 1673:14-17 (Ex. 2).

- Irene L. (#48): "Well, the reason [why Irene L. was not eligible] was she did not have a FAST 7 until June of 2008." 08/19/2015 Trial Tr. at 1714:7-8 (Ex. 3).

- Mary S. (#86): So, the reason she was not eligible for hospice during that time period was, similar to the other dementia patients we've talked about, she was not a FAST 7." 08/19/2015 Trial Tr. at 1723:18-21 (Ex. 4).

- Sue S. (#111): "So, during that time, she was not a FAST 7. And so she, therefore, did not meet criteria for eligibility under her dementia diagnosis." 08/19/2015 Trial Tr. at 1730:13-15 (Ex. 5).

- Patricia D. (#97): "I found that she was not eligible for hospice because her dementia was not at the most advanced stage, so she was not a FAST

---

Testimony From The Government's Physician Expert, Dr. Solomon Liao, Doc. 412, and all other arguments to exclude all or any part of Dr. Liao's testimony that AseraCare has made in these proceedings—whether orally (as reflected in the transcript) or in writing.

[2]   The trial transcript pages for each sample patient discussed herein are attached as Exhibits 1-28 hereto.

> 7." 08/25/2015 Trial Tr. at 2292:5-7 (Ex. 6).

- Ralph S. (#101): "My opinion was that he was not eligible for hospice during the entire time that he was on hospice, so from May 2007 to July 2009, because . . . . he was not a FAST seven. He was not at the final phase of his Alzheimer's disease." 08/18/2015 Trial Tr. at 1489:13-23 (Ex. 7).

However, with respect to sample patient Vera W. (#114), Dr. Liao later testified that "[w]e need to look at the entire context and picture. . . . So, applying a FAST at this point to her dementia would be inaccurate and inappropriate." 08/31/2015 Trial Tr. at 2937:3-12 (Ex. 8). Indeed, on cross, Dr. Liao then confirmed that a patient need not be a FAST 7 in order to be eligible:

> Q. But your view is that there are clinical benchmarks like the FAST scale that patients must meet in order to be eligible for the Medicare hospice benefit; isn't that correct?
>
> A. No, it is not.

09/01/2015 Trial Tr. at 3168:12-16 (Ex. 9).

In this respect, Dr. Liao's methodology was not only inconsistent, but also inappropriate as a matter of law. Dr. Liao testified that these sample patients were ineligible only because they did not meet a specific clinical benchmark (i.e., they were not a FAST 7); he then testified that this specific clinical benchmark was not mandatory. As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients. *See* Fed. R. Civ. P.

50(a).

**2.   Dr. Liao testified that certain sample patients were not eligible for the Medicare hospice benefit only because they were not a "NYHA Class IV"; he then testified that a patient need not be a NYHA Class IV in order to be eligible.**

On direct, Dr. Liao testified that the following sample patients were not eligible for the Medicare hospice benefit only because they were not a NYHA Class IV:

- Edward O. (#28): "I concluded that he was not eligible for hospice because he was not a New York Heart Association Class IV and, therefore, was not at the most advanced stage of heart failure." 08/20/2015 Trial Tr. at 1917:11-14 (Ex. 10).

- Argentina P. (#9): "The reason [why Argentina P. was not eligible] is because she was not a New York Heart Association Class IV, so she was not at the most advanced stage of her heart disease."  08/20/2015 Trial Tr. at 1922:1-3 (Ex. 11).

- Jennie S. (#53): "So, [Jennie S. was not eligible because] she was not a New York Heart Association Class IV."  08/20/2015 Trial Tr. at 1935:25-1936:1 (Ex. 12).

- Rubye Y. (#105): Rubye Y. was not eligible because, "[i]n May of 2008, her breathing improved to the point where [s]he only had shortness of breath with exertion, which made her a New York Heart Association Class III."  08/26/2015 Trial Tr. at 2721:3-6 (Ex. 13).

- Agnes B. (#1): "So, the major reason is that she was not a New York Heart Association Class IV."  08/19/2015 Trial Tr. at 1820:21-22 (Ex. 14) (Dr. Liao offered no other reason).

- John G. (#55): "Well, the major reason is that he did not have a New York Heart Association Class IV. In fact, his functional status never got worse than a Class III."  08/20/2015 Trial Tr. at 1877:10-12 (Ex. 15) (Dr. Liao offered no other reason).

On cross, Dr. Liao then testified that a patient need not be a NYHA Class IV in order to be eligible:

> Q. You have also testified that a patient who has heart disease must be a New York Heart Association Class IV in order to be eligible for the Medicare hospice benefit; isn't that correct?
>
> A. No.

09/01/2015 Trial Tr. at 3169:9-13 (Ex. 16).

In this respect, Dr. Liao's methodology was not only inconsistent, but also inappropriate as a matter of law. Dr. Liao testified that these sample patients were ineligible only because they did not meet a specific clinical benchmark (i.e., they were not a NYHA Class IV); he then testified that this specific clinical benchmark was not mandatory. As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients. *See* Fed. R. Civ. P. 50(a).

**3. Dr. Liao testified that certain sample patients were not a "FAST 7" only because they could speak more than 5 words a day; he then testified that evaluating a patient against the FAST scale requires more than counting words.**

On direct, Dr. Liao testified that the following sample patients were not a FAST 7 only because they could speak more than 5 words a day:

- Thomas S. (#113): "Well, he was not a FAST 7 because he was still capable of speaking multiple words and more than five words a day." 08/19/2015 Trial Tr. at 1722:8-10 (Ex. 1).

5

- Vina L. (#115): "Well, she was not a FAST 7 based upon her medical records because she was capable of speaking in full sentences, so she was saying more than five words." 08/25/2015 Trial Tr. at 2320:12-15 (Ex. 17).

- Ruth S. (#106): "So, for her dementia diagnosis, if she's capable of speaking multiple words a day, then she is not at the final stage of her Alzheimer's disease. . . . By final stage, I mean a FAST 7, as we've discussed before"; "she was capable of speaking more than five words a day and, therefore, was not at the final stage of her dementia." 08/25/2015 Trial Tr. at 2398:6-11, 2405:13-15 (Ex. 18).

However, with respect to sample patient Vera W. (#114), Dr. Liao later testified that evaluating a patient against the FAST scale requires more than counting words:

> Q. And when you're evaluating a patient like Ms. Vera against the FAST scale, are you just counting the number of words that they speak on a given day or a given setting?
>
> A. No. Again, the entire context and picture needs to be looked at. So, it's not just the number of words, but whether or not they're capable of putting those words together, and also what the rest of her brain status and overall neurological function is.

08/31/2015 Trial Tr. at 2937:13-21 (Ex. 8). As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients. *See* Fed. R. Civ. P. 50(a).

**4.      Dr. Liao assumed that sample patient Jean M. (#52) could speak more than 5 words a day only because there was evidence that she could speak four or less words a day.**

With respect to sample patient Jean M. (#52), Dr. Liao testified on direct that she could speak more than 5 words a day based only on evidence that she could speak four or less words a day: "So, how this document informs her prognosis is that she is capable of saying complete phrases, and since she's already said four words here, she is capable of speaking more than five words a day." 08/25/2015 Trial Tr. at 2344:12-15 (Ex. 19).

As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to this sample patient; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to this patient. *See* Fed. R. Civ. P. 50(a).

**5.      Dr. Liao first testified that garbled speech indicates that a patient is non-verbal and consequently a "FAST 7"; Dr. Liao then testified that garbled speech indicates a patient is capable of speaking and thus not a FAST 7.**

With respect to sample patient Phyllis P. (#100), Dr. Liao testified on direct that her garbled speech indicated that she was non-verbal and thus a FAST 7. Specifically, Dr. Liao read a medical record stating, "Non-verbal (speech garbled and nonsensical)." 08/18/2015 Trial Tr. at 1540:22 (Ex. 20). Dr. Liao testified that, "[b]ased upon this, she was non-verbal and she would have been a FAST seven." 08/18/2015 Trial Tr. at 1541:8-9 (*id.*).

7

However, with respect to sample patient Sarah C. (#108), Dr. Liao read a medical record stating, "Unable to communicate needs. She has a garbled speech." 08/26/2015 Trial Tr. at 2677:6-7 (Ex. 21). Dr. Liao then testified that, "looking at this, I interpret this to mean that she no longer is a FAST 7, if she's capable of speaking now, but it also demonstrates an improvement in her speech capabilities." 08/26/2015 Trial Tr. at 2677:9-12 (*id.*).

As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients. *See* Fed. R. Civ. P. 50(a).

**6. Dr. Liao contradicted himself in testifying about whether an Alzheimer's/dementia patient's PPS score is relevant to the Medicare hospice benefit eligibility assessment.**

On direct, Dr. Liao contradicted himself on whether an Alzheimer's/dementia patient's PPS score should be considered when assessing eligibility for the Medicare hospice benefit. With respect to sample patient Amelia G. (#5), Dr. Liao testified that a medical record demonstrated "her functional capability, she has a palliative performance score of 50 percent," and that "this is not consistent with somebody who has a prognosis of six months or less." 08/19/2015 Trial Tr. at 1705:6-14 (Ex. 22).

But, with respect to sample patient Oral D. (#95), Dr. Liao then testified that "PPS is not used or relevant for Alzheimer's eligibility assessment." 08/19/2015

8

Trial Tr. at 1741:20-21 (Ex. 23).  As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients.  *See* Fed. R. Civ. P. 50(a).

**7.     Dr. Liao testified that certain sample patients met the LCD criteria for malnutrition only because they had a BMI less than 22; but Dr. Liao also testified, with respect to other patients, that a BMI less than 22 did not necessarily meet the LCD criteria for malnutrition.**

Dr. Liao testified that the following sample patients met the LCD criteria for malnutrition only because they had a BMI less than 22:

- Caron K. (#19):  "So, this box tells me that her BMI is 17.2. . . . So she does meet LCD criteria for malnutrition . . . ."  08/31/2015 Trial Tr. at 2795:1-4 (Ex. 24).

- Mabel B. (#71):  "Well, I found her eligible for hospice because her admission BMI was documented to be 17 . . . .  So, based on that, she did have malnutrition . . . that qualified her for hospice."  08/26/2015 Trial Tr. at 2662:16-21 (Ex. 25).

On the other hand, Dr. Liao also testified, with respect to the following sample patients, that a BMI less than 22 did not necessarily meet the LCD criteria for malnutrition:

- Dorothy V. (#25):  "[S]he is not eligible for hospice because she's actually improving in her nutritional . . . capability.  But particularly with her nutritional improvement, she is not terminal because she is not declining but actually improving. . . . Well, her hospice eligibility here, the BMI indicates, again, consistent with her weight and improvement, so the LCDs reflect a general medical principle in terms of nutrition, that it's not just the absolute number but it's the trend or the direction that the

9

individual or the patient is going towards. So, in her case, though her BMI [of 19.3] is still low, she is nutritionally improving." 08/26/2015 Trial Tr. at 2590:3-2591:8 (Ex. 26).

- Naomi M. (#92): "BMI [of 17.4] indicates that her nutritional status was improving, so what it informs me is that she is not declining. She's actually improving. So she's not terminal at this point." 08/26/2015 Trial Tr. at 2643:6-23 (Ex. 27).

- Catherine F. (#20): "[T]his information informs me that she is not eligible for an adult failure to thrive terminal diagnosis because she is capable of gaining weight and improving her nutritional status. . . . Her BMI of 19.3 here is an improvement compared to her BMI of 17.2 at the time of admission. So the significance is, consistent with her weight gain, that her nutritional status is improving." 08/26/2015 Trial Tr. at 2657:7-18 (Ex. 28).

As a result, the Court should strike Dr. Liao's testimony as unreliable with respect to these sample patients; and a reasonable jury would not have a legally sufficient evidentiary basis to find for the Government on the issue of falsity, separately and severally, with respect to these patients. *See* Fed. R. Civ. P. 50(a).

\*   \*   \*

For the reasons stated above, the Court should strike Dr. Liao's testimony—in whole or in part—and grant AseraCare judgment as a matter of law in Phase One.

Respectfully submitted,

/s/ Matthew H. Lembke
Jack W. Selden (SEL005)
James S. Christie, Jr. (CHR011)
Matthew H. Lembke (LEM013)
Tiffany J. deGruy (DEG010)
**Bradley Arant Boult Cummings LLP**

10

1819 5th Avenue North
Birmingham, AL  35203
Telephone:  (205) 521-8000
Facsimile:  (205) 521-8800
jselden@babc.com
jchristie@babc.com
mlembke@babc.com
tdegruy@babc.com

Kimberly Bessiere Martin (BES002)
**Bradley Arant Boult Cummings LLP**
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
Telephone:   (256) 517-5100
Facsimile:    (256) 517-5200
kmartin@babc.com

Charles H. Bohl
Andrew A. Jones
**Whyte Hirschboeck Dudek SC**
555 East Wells Street, Suite 1900
Milwaukee, WI  53202
Telephone:  (414) 273-2100
Facsimile:  (414) 223-5000
cbohl@whdlaw.com
ajones@whdlaw.com

**Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2015, the foregoing was served by electronic mail on the following counsel:

Renee Brooker
Holly H. Snow
Carolyn B. Tapie
William Edward Olson
Eva U. Gunasekera
Jeffrey A. Wertkin
U.S. Dept. of Justice
Civil Division
P.O. Box 261 Ben Franklin Station
Washington, DC 20044
(202) 616-2879
Renee.Brooker@usdoj.gov
Holly.H.Snow@usdoj.gov
Carolyn.B.Tapie@usdoj.gov
William.E.Olson@usdoj.gov
Eva.Gunasekera@usdoj.gov
Jeffrey.A.Wertkin@usdoj.gov

Lane H. Woodke
Don B. Long III
U.S. Dept. of Justice (ND-AL)
Office of the U.S. Attorney
1801 4th Ave. North
Birmingham, AL  35203-2101
(205) 244-2001
Lane.Woodke@usdoj.gov
Don.Long@usdoj.gov

Stacy C. Gerber Ward
U.S. Dept. of Justice (ED-WI)
Office of the U.S. Attorney
517 E. Wisconsin Ave. – Rm. 530
Milwaukee, WI 53202
(414) 297-1700
Stacy.G.Ward@usdoj.gov

Henry I. Frohsin
James F. Barger, Jr.
Ronald R. Brunson
J. Elliott Walthall
Frohsin & Barger LLC
3430 Independence Drive, Suite 40
Birmingham, AL 35209
(205) 933-4006
henry@frohsinbarger.com
jim@frohsinbarger.com
ron@frohsinbarger.com
elliott@frohsinbarger.com

Nola J. Hitchcock Cross
Mary C. Flanner
Cross Law Firm SC
845 N. 11th St
Milwaukee, WI 53233
(414) 224-0000
njhcross@crosslawfirm.com
mflanner@crosslawfirm.com

/s/ Matthew H. Lembke
One of the Attorneys for Defendants