IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; ex rel., et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | CIVIL ACTION NO: 2:12-CV-245-KOB |
| ASERACARE INC, et al. ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION REGARDING PRETRIAL AND TRIAL EVIDENTIARY RULINGS**

Over the past month, the court has made numerous rulings on evidentiary matters submitted by the parties. Many of the those rulings came as requests in the twelve motions in limine filed by the parties, most of which raised multiple evidentiary issues. (*See* docs. 329, 331, 332, 333, 334, 335, 336, 337, 339, 340, 341, 342). Because of the press of time, many of the court's written rulings on those issues were cursory, referring back to the discussions on the Record. (*See* docs. 369, 375, 380, 382, 385, 386, 387, 388, 389, 390, 394, 397). Also, many of the preliminary discussions affected rulings during the course of the trial to date. However, the court has had little time or opportunity to fully develop on the Record the overarching evidentiary basis for many of its rulings. This Memorandum Opinion is designed to fill that gap and provide further explanation for the underpinning of those rulings, many of which stretch back to the early

1

days of this litigation.

Two of the key areas of evidence that have been at issue thus far in Phase One, which is limited to the falsity of the claims regarding the 123 patients identified by the Government as being ineligible for hospice, are the anecdotal accounts as to particular incidents, and the testimony regarding "general corporate practices," "patterns and practices" and "clinical practices." The Government proffers both types of evidence as relevant to whether the physicians' Certificates of Terminal Illness ("COTIs") for the 123 patients at issue are reliable. The reliability of COTIs plays a central role in determining whether any of the claims for the 123 patients were false when made—the only issue for the jury to decide in Phase One. In seeking to introduce this evidence, the Government relies exclusively on Federal Rule of Evidence 401.[1] So the question, as to the Government's relevance argument, is whether any of the Federal Rules of Evidence "provide[ ] otherwise" and would make the proffered evidence inadmissible under Federal Rule of Evidence 402.

The Government initially indicated that it intended to classify its "clinical practices" and "general corporate practices" evidence as "FRE 406 evidence." (*See* doc. 300 at 5 entered on May 25, 2015). Based on this indication, several things occurred that pre-dated the pretrial motions in limine. First, after the court bifurcated the trial so that the Government has to prove the falsity of the claims before introducing its "cast of horribles" evidence, the Government filed its request for clarification of the court's bifurcation order (doc. 300). In that motion, the Government referred to its evidence as "FRE 406 evidence," indicating its intent behind the

---

[1] *(See* doc. 351 at 47 & doc. 383 at 74, 78).

purpose of the evidence—for the jury to infer that, because AseraCare had these "clinical practices" or "general corporate practices," its agents or employees must have exercised those same practices regarding the 123 patients at issue in Phase One.

Based on that representation and in response to the request for clarification, the court attempted to set out some parameters for such Rule 406 evidence in Phase One. The court limited what the Government had represented would be "FRE 406 evidence" to evidence of "clinical practices" or "general corporate practices" that had a time and place nexus with the 123 allegedly ineligible patients at issue.[2] However, at the time of that ruling, the court relied on the Government's representation about its Rule 406 evidence and assumed—but did not address—that the Government could meet the Rule 406 standards.

Second, relying on the Government's prior representations about its "FRE 406 evidence," the defense, in its motion in limine, originally challenged the admissibility of "general corporate practices" evidence under Federal Rule of Evidence 406. (Doc. 329 at 11-14). However, the Government responded that it was *not* relying on Rule 406 to admit evidence of the "general

---

[2]After having heard for years the Government's proffer as to expected testimony from the relators and other former AseraCare employees, the court expected two things: (1) testimony about various practices at AseraCare offices around the country ranging from aggressive marketing, quotas, threats to employment, etc., to withholding from or providing incorrect information to the Medical Directors; and (2) testimony from clinicians about those patients of the 123 at issue who were under hospice care at the location and during the time the witness worked for AseraCare. Concern that the first category of testimony would divert the jury's attention from the key question of whether the claims were false caused the bifurcation. The court anticipated that the second category of testimony would be highly probative and admissible in Phase One; however, the Government never showed those former employees the medical records of patients who may have been in their care, instead relying totally on the testimony of Dr. Liao and the medical records to prove the claims were false. *See* 8/10/15 Hrg. Tr. at 300-303.

corporate practices," but was relying only on its relevance under Rule 401 for admission. (*See* doc. 351 at 47 & doc. 383 at 74, 78).

The defense then challenged the admissibility of the "clinical practices" as prohibited by Rule 404(b) as evidence of a "wrong" or "other act" offered to show propensity. (Doc. 377 at 3). The Government presented many reasons why it contended Rule 404(b) did not apply to its "clinical practices" evidence, then argued alternatively that, if it did apply, the Government was offering the evidence to show "causation" and "motive."[3] (Doc. 381). The court ruled that "motive" does not show the claims were objectively false, and thus is not relevant in Phase One. Likewise, "causation" does nothing to show any of these claims were false. Again, the Government argued the evidence is admissible because it is *relevant* to undermine the reliability of the COTIs.

Contrary to the Government's assertion, relevance to the issue of falsity does not mean that the "clinical practices," "patterns and practices," or "general corporate practices" evidence is automatically admissible. Counsel for the Government, on numerous occasions, has postulated that, because evidence is relevant, it should be admitted. (*See* docs. 351 at 5-6 & 381 at 4). Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The test for relevance, however, provides

---

[3] The Government did not claim the "other acts," "clinical practices," "general corporate practice," etc. evidence would be admissible under Rule 404(b) to show "knowledge" because the question of the Defendants' knowledge will be decided in Phase Two. Further, the court has repeatedly acknowledged that this evidence, however it is denominated, will probably be admissible in Phase Two as evidence of knowledge or other matters at issue in Phase Two.

4

merely a threshold determination. True, evidence must be relevant to be admissible, but evidence is not automatically admissible simply because it is relevant. *See United States v. Beechum*, 582 F.2d 898, 907 (5th Cir. 1978) ("Of course, this is not to say that all such relevant evidence is admissible, for the rules themselves embody policies that exclude evidence even though relevant. E. g., Fed. R. Evid. 403, 404(b).").

Rule 402 provides that "relevant evidence is admissible *unless* any of the following provides otherwise: the United States Constitution; a federal statute; *these rules*; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402 (emphasis added). The reference to "these rules" in Rule 402 includes all the Federal Rules of Evidence. Thus, if evidence is excluded by another rule in the Federal Rules of Evidence, the evidence may not be admitted, regardless of its relevance. The Advisory Committee Notes to Rule 402 acknowledge that "[n]ot all relevant evidence is admissible. The exclusion of relevant evidence occurs in a variety of situations and may be called for by these rules . . . ."

Rule 402 directs that Federal Rules of Evidence other than Rule 401 affect whether relevant information should be admitted. The purpose for which the Government seeks to offer the evidence plays a role in determining its admissibility: i.e., *why* does the Government assert the offered evidence is relevant to the issue of whether these specific claims made by AseraCare were false?

Regardless of the words employed, from the "clinical practices," "patterns and practices," or the "general corporate practices" of isolating doctors and not telling the doctors the good as well as the bad about patients' conditions, the Government wants the jury to infer that the COTIs

5

for the 123 patients at issue are not reliable based on that proffered testimony.  To jump from the evidence the Government proffered to the conclusion it wants the jury to reach, the jury would have to infer that other, different AseraCare nurses, physicians, and others who evaluated the 123 patients acted the same as the proffered staff, i.e., that AseraCare acted in conformity with that practice.

      The Federal Rules of Evidence address evidence offered to show that a party "acted in conformity," i.e., had a propensity to act as it did on a prior occasion.  Rule 404 provides that character evidence cannot be used to show "that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Similarly, Rule 404(b)(1) provides that "evidence of a crime, wrong, *or other act*" cannot be used "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (emphasis added).  That rule does recognize that this evidence may be admissible for another purpose, such as "proving motive . . . [or] knowledge . . . ." Fed. R. Evid. 404(b)(2).  As previously noted, those exceptions may come into play in Phase Two but not in Phase One.

      On the other hand, Federal Rule of Evidence 406 directly recognizes the relevancy of an organization's routine practices to show that conduct on a particular occasion was in conformity with that routine practice.  Rule 406 provides "Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion . . . the organization acted in accordance with the . . . routine practice. . . ."  To admit evidence of routine practices to show a party's propensity to act in a certain way, however, the proponent of that evidence must meet the standards established by Rule 406.

The Eleventh Circuit has elaborated on these principles for determining when conduct may be considered a routine practice. *See G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir. 1985) (explaining the standards that are "controlling considerations" as to whether evidence meets Rule 406). While the Court acknowledged that "[t]here is no precise formula for determining when a practice becomes so consistent as to rise to the level of routine," the key considerations are "adequacy of sampling and uniformity of response." *G.M. Brod & Co.*, 759 F.2d at 1533. The Court also explained, "It is only when examples offered to establish such pattern of conduct or habit are numerous enough to base an inference of *systematic conduct*, that examples are admissible." *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985) (emphasis added).

Apparently, recognizing the difficulty of that standard, the Government abandoned its reliance on Rule 406 as the basis for admission of its "general corporate practices" or "clinical practices" evidence. Thus, the court was left to decide the admissibility of "clinical practices" evidence under Federal Rules of Evidence 401 and 404. Under Rule 404—the only Rule other than Rule 406 that addresses propensity evidence—evidence that AseraCare, through its employees, acted in a certain way on other occasions cannot be used to show or infer that AseraCare acted the same way regarding the certification of the 123 patients whose eligibility for hospice the Government challenges.

To counter the applicability of Rule 404, the Government argued that it does not apply to corporations**.** (Doc. 381). Again, the Government is wrong. Federal Rule of Evidence 404 applies to corporations, such as AseraCare. Although the court can find no case in the Eleventh

Circuit specifically addressing this issue, other circuits have applied Rule 404 to corporate defendants. *See Becker v. ARCO Chemical Co.*, 207 F.3d 176, 194 (3d Cir. 2000) (holding that the district court erred in admitting 404(b)(1) evidence against the defendant corporation); *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 517 (7th Cir. 1997) (applying 404(b) to determine if corporate defendants' prior acts were admissible); *Bradbury v. Phillips Petroleum Corp.*, 815 F.2d 1356, 1364-66 (10th Cir. 1987) (employing 404(b) analysis to determine if defendant corporation's prior actions were admissible). Additionally, the court has uncovered no Eleventh Circuit case precluding it from applying Rule 404 to "other actions" of a corporation by its agents or employees.

Applying Rule 404(b)(1), the court ruled that it would not allow "any anecdotal evidence that would be indicative of an effort to show propensity" in Phase One. *See* 8/10/15 Hrg. Tr. at 370. As grounds for this exclusion, the court stated that "[s]pecific anecdotal examples . . . would fall more directly under 404(b) and be excludable because those specific acts would be designed to make it more likely that somebody made a false representation as to the 123." *See id*. at 355-356, 364. The court drew the line of admissibility at anecdotal evidence about a specific, but unidentified, patient or event that would be impossible for the Defense to rebut.

However, the court did allow the Government to present some general "context" evidence regarding the nature of hospice claims and how such claims were processed. For example, the court allowed the Government to proffer testimony from Mary Jane Schultz regarding the general nature of hospice claims and how Palmetto GBA processed those claims. *See* 8/17/15 Hrg. Tr. at 1160–1162. The court also denied AseraCare's motion in limine to exclude the testimony of

Katherine Lucas regarding the general hospice benefit, including Medicare statutes and regulations.  (*See* doc. 369).  Because this type of evidence is general "context" about hospice and does not specifically relate to documentation in patient's records or information that clinicians provided to AseraCare doctors, the court did not require such testimony to have a "nexus" connected to one of the 123 patients at issue.[4]

The court permitted the Government to present some "general corporate practice" evidence from the *clinicians* who worked at some of the AseraCare facilities at the time when one or more of the 123 patients at issue resided there. The court retained the time and place nexus for this admissible evidence because it related to the general instructions and practices concerning documentation in patients' records, the participation of the Medical Director, and information provided to AseraCare physicians.  *See* 8/10/15 Hrg. Tr. at 353-356, 370.  The court allowed such evidence under Rule 404(b)(2) for the purpose of establishing context regarding how AseraCare prepared, reviewed, and submitted hospice claims.  Although Rule 404(b)(2) does not specifically include "context" as an admissible purpose, the Eleventh Circuit has stated that "'[t]he list provided by [Rule 404(b)(2)] is not exhaustive and the range of relevancy outside the ban [of Rule 404(b)(1)] is almost infinite.'" *See United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008)).  Such "context" evidence affords the jury an opportunity to more fully understand the hospice

---

[4] In a recently-filed motion in limine, the Government displays its continued misunderstanding of the court's "time and place" nexus, which the court applied to the evidence from *clinicians*. The Government argued that the court should exclude the "context" testimony AseraCare wants to illicit from Dr. Martha Twaddle—because it would not have a time and place nexus to the 123 patients.  (Doc. 414).

process within AseraCare and results in less confusion regarding whether any of the 123 claims at issue are objectively false.

Even if the Government were correct that Federal Rule of Evidence 404 does not apply in this case, we would be back to the question of relevance, specifically whether any other of "these rules" preclude the relevant evidence. *See* Fed. R. Evid. 402. As an alternative ruling to its Rule 404 application, the court has also employed the balancing test of Federal Rule of Evidence 403. Under that rule, a court may exclude relevant evidence when its probative value is outweighed by undue prejudice. *See United States v. Troya*, 733 F.3d 1125, 1131-1132 (11th Cir. 2013) ("All admissible evidence . . . must be weighed against Rule 403 prejudice. . . . 'The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury.'"). As the Government states, any good evidence prejudices the opposing side. But Rule 403 focuses on "*unfair* prejudice."

Applying Rule 403, the court found that the probative value of allowing such "context" testimony or "general corporate practice" evidence limited to a time and place nexus outweighed any unfair prejudice to the Defendants. The court allowed such "context" testimony for the Government to paint a more complete picture for the jury, but limited such evidence so that the Defendants are not unfairly prejudiced in Phase One. Similarly, the court allowed the Defense to present some "context" evidence as well.

Both in response to pretrial issues and those raised during trial thus far, the court has tried to delicately balance the probative value of the Government's evidence—specifically, how much

value does the evidence have to actually show that any of the claims for the specific 123 patients at issue were objectively false—versus the unfair prejudice such evidence creates for AseraCare. For example, the further away in "time and place" from a specific patient, the less probative the evidence becomes. Even if Rule 404 did not apply to the Government's evidence, anecdotal evidence would be properly excluded under Rule 403.  The relevance of anecdotal evidence about another, unnamed patient may raise an inference that AseraCare acted the same with the 123 patients at issue, but the "unfair prejudice" created by AseraCare's inability to defend against such anecdotes outweighs its probative value as to whether any of the claims submitted for the 123 patients were false.

In making these evidentiary rulings, the court is mindful that much of the evidence excluded to prove "falsity" in Phase One most likely will be admissible in Phase Two if the Government lays the proper foundation and meets other admissibility requirements. One of the primary reasons the court bifurcated this case and precluded some of the Government's evidence in Phase One was to avoid jury confusion regarding the seminal issue in this case—whether any of the hospice claims for the 123 patients at issue were "false."  The court has done its best to balance the probative value of the evidence proffered for Phase One with the potential unfair prejudice that the evidence could have on AseraCare.

DONE and ORDERED this 15th day of September, 2015.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE