## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,
ex rel. DEBORA PARADIES, et al.,

           Plaintiff,

v.

GGNSC ADMINISTRATIVE
SERVICES, LLC, et al.,

           Defendants.

Civil Action No.

2:12-cv-00245-KOB

## MOTION FOR RECONSIDERATION OF
## ORDER TO GRANT A NEW TRIAL

On October 19, 2015, after eight weeks of trial and nine days of
deliberations, the jury completed its Phase One deliberations and identified
104 patients for whom AseraCare submitted false claims for hospice
services.  *See* ECF No. 465.  These findings were consistent with the facts
and governing law.

Nevertheless, on October 23, 2015, the Court *sua sponte* revisited the
instructions that were provided to the jury.  The Court announced: "I have
realized that I committed major reversible error in the jury instructions,
because I do not believe that I properly instructed the jury as to the legal
standard they had to apply in making that determination."  Trial Tr. 7304-05.

Defendants orally moved for a new trial, and the Court granted Defendants' motion on the ground that the Court failed to provide the jury with a "sufficient legal standard for evaluating the case."  Trial Tr. 7311.

The United States respectfully moves the Court to reconsider its decision to order a new trial on the grounds that the Court's jury instructions were correct as a matter of law.  Because the Court instructed the jury on the correct legal standard – the same legal standard that the Court applied at the summary judgment stage – the Court's decision to grant a new trial should be reconsidered to avoid clear and reversible error and to prevent manifest injustice.

In the twelve weeks since Phase One of the trial began on August 10, 2015, the United States and the Court have expended considerable taxpayer resources to try Phase One before a jury of 4 men and 7 women.  The jury was provided with instructions that this Court had previously and correctly determined were proper and legally sufficient.  It would be grossly inefficient and unprecedented at this stage to empanel a second jury and force the taxpayers to bear the expense of a second twelve-week trial in Phase One, especially because there is a great risk that the Court will commit reversible error in the second trial by instructing the jury in the manner that it now contends is required.  Reversible error in a second trial

would likely result in a remand for a third trial.  Rather than risk the possibility of three trials each spanning several months at taxpayer expense, the Court should proceed with the current verdict, which AseraCare may then appeal in due course should it elect to do so.

Because the court's proposed change in the jury instructions is contrary to the overwhelming weight of authority and would risk substantial waste of resources, the United States moves the Court to reconsider its Order for a new trial.

## I.    BACKGROUND

### A. Factual Background

The Medicare hospice benefit is a unique, critically important healthcare benefit for a very specific population of Medicare patients – those who are terminally ill with a life expectancy of only six months or less.  *See* 42 U.S.C. § 1395x.  When these terminally ill patients are admitted to hospice, they give up their rights to Medicare coverage for care intended to cure or rehabilitate, and instead receive hospice care designed to bring them comfort and dignity at the end of their lives.  *See* 42 C.F.R. § 418.24(d).

The United States contends that AseraCare put the hospice benefit at risk by defrauding the Medicare program.  Specifically, the United States alleges that AseraCare operated its for-profit hospice business without

regard to whether it complied with Medicare rules or provided the right care at the right time to Medicare beneficiaries.  *See* ECF No. 156 at ¶¶ 35-64 (Complaint in Intervention).  As a result, the United States alleges that AseraCare claimed and received tens of millions of dollars from Medicare that it was not entitled to receive because the patients were not terminally ill and did not need end-of-life hospice care.

Details of AseraCare's fraudulent scheme were initially brought to the United States' attention in three separate *qui tam* lawsuits that were filed independently by six former AseraCare employees.  The United States intervened in this False Claims Act ("FCA") lawsuit against AseraCare based on evidence that AseraCare marginalized and circumvented doctors, systematically pressured its own clinical staff to admit and keep ineligible patients, submitted false hospice claims for patients who were not terminally ill, and was put on notice from internal and external audits and employee complaints that this was occurring.  In short, the United States alleges that AseraCare committed fraud on the Medicare program, and the United States brought suit to recover taxpayer funds that AseraCare wrongfully appropriated as a result of its unlawful activity.

## B. Procedural Background

The United States filed its Complaint in Intervention against AseraCare on November 2, 2012.  After years of discovery, the Court heard cross-motions for summary judgment.  AseraCare moved for summary judgment challenging the United States' evidence regarding the falsity element of its FCA claims.  On December 4, 2014, the Court denied AseraCare's motion after finding that the testimony of the United States' medical expert "creates issues of material fact regarding whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim."  ECF No. 268 at 15 (Order on Summary Judgment).

On May 20, 2015, over the United States' continuing objection, the Court took the extraordinary and unprecedented step of bifurcating the trial by splitting elements of FCA liability so that the trial would proceed in two phases: the first phase would address the falsity element of the United States' FCA claim, and the second phase would address the other elements of the United States' FCA claim and all other claims.  ECF No. 298 at 4-5 (Order on Bifurcation).  The Court found that evidence that AseraCare actually *knew* it was submitting false claims could unduly prejudice AseraCare when a jury evaluated the question of whether the claims it

submitted were, in fact, false. *Id.* at 2-4. To avoid this "undue prejudice" to AseraCare, the Court adopted an approach that required the United States to prove the falsity of hospice claims while at the same time prevented the United States from presenting otherwise admissible evidence about how and why AseraCare carried out its fraudulent scheme. *Id.* at 3.

Phase One of the bifurcated trial began with jury selection on August 3, 2015. Over the course of several months, the United States introduced approximately 200 exhibits and presented the testimony of a medical expert as well as former AseraCare employees who testified about AseraCare's improper clinical practices, including its instructions to staff to admit ineligible patients to hospice.

The jury began Phase One deliberations on September 30, 2015. The jury was asked to determine whether AseraCare submitted false claims for any of the 121 patients discussed at trial and, if so, for what time period. After nine days of deliberations, the jury returned a verdict on October 15, 2015, concluding that AseraCare submitted false claims for 104 of the 121 patients listed in the Special Interrogatories. ECF No. 445.

On October 19, 2015, the Court asked the jury to clarify its interrogatory responses with regard to 6 patients. ECF No. 445. The same day, the jury deliberated and returned with only minor modifications to its

6

interrogatory responses concerning periods of ineligibility for those 6 patients.  ECF No. 465.

## II.    LEGAL ARGUMENT

### A. The Legal Standard Identified by the Court at Summary Judgment Was Correct as a Matter of Law.

At the summary judgment phase, the Court heard arguments on the legal standards that should apply in this case.  In its December 4, 2014, Order on summary judgment, the Court held that the testimony of the United States' medical expert "creates issues of material fact regarding whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim."  ECF No. 268 (Order at 15).  Thus, as the Court correctly ruled at summary judgment, a hospice claim is false when clinical information and other documentation in the medical record does not support a terminal prognosis.  *See United States ex rel. Walker v. R&F Props. of Lake Cnty, Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005); 42 C.F.R. § 418.22(b).

The Court's ruling on the legal standard was correct as a matter of law because it recognized that a physician's signed certification, standing alone, does not guarantee payment or immunize the hospice provider from liability under the False Claims Act.  *See United States ex rel. Fowler v. Evercare*

*Hospice, Inc.*, No. 11-cv-00642, 2015 WL 5568614, at *7 (D. Colo. Sept. 21, 2015) ("the requirement that physicians' certifications are accompanied by clinical information and other documentation that support a patient's prognosis is a condition of payment under applicable Medicare statutes and regulations").

In its Order on summary judgment, the Court specifically considered and rejected AseraCare's proposal on the appropriate legal standard.  As noted by the Court, AseraCare relied on *United States ex rel. Geschrey v. Generations Healthcare LLC*, 922 F. Supp. 2d 695 (N.D. Ill. 2012), for the proposition that, to establish false claims under the FCA, the United States must show that a "certifying physician did not or could not have believed, based on his clinical judgment that the patient was eligible."  ECF No. 268 at 15 (Order on Summary Judgment) (quoting *Geschrey,* 922 F. Supp. 2d at 703).[1]

The Court disclosed its preference for AseraCare's proposed legal standard, but correctly held that such a standard would be contrary to

---

[1] Notably, both AseraCare and the Court's Order on summary judgment misconstrued *Geschrey* and its applicability to the present case.  The problem with the relator's case in *Geschrey* was that it was premised on nothing more than alleged observations by hospice employees who were not physicians.  922 F. Supp. 2d at 702-03.  Consistent with other hospice FCA cases, however, the *Geschrey* court found that objective facts at odds with physician certifications of terminal illness were sufficient to allege a violation of the False Claims Act.  Unlike in *Geschrey*, the United States presented the testimony of its medical expert, Dr. Solomon Liao, M.D., who identified objective facts in AseraCare's medical records that did not support the medical prognosis.

applicable law: "[w]hile this court finds the standard in *Geschrey* appealing and logical, the standard has not yet been adopted by the Eleventh Circuit and the court is not persuaded that it should apply the *Geschrey* standard." ECF No. 268 at 15-16 (Order on Summary Judgment).

### B. The Court Sought Interlocutory Review of its Preferred Legal Standard, but the Eleventh Circuit Declined To Consider the Interlocutory Appeal.

Shortly after the Court issued its summary judgment Order, AseraCare filed a Motion for Certification Pursuant to 28 U.S.C. § 1292(b).  In discussing the motion, the Court again noted its preference for AseraCare's proposed legal standard, but reiterated that adopting that standard at summary judgment would have been improper under the law of the Eleventh Circuit:

> I think you all know how seriously I took the defendant's motions and struggled with them extensively.  I think the law in this case, whose name I can't yet pronounce [*Geschrey*], is a solid approach to the problem.  But for me, I didn't feel like I could go further than I had direction from the Eleventh Circuit to do.

12/11/14 Hr'g Tr. at 3.

On December 19, 2014, the Court granted AseraCare's Motion for Certification.  ECF No. 277.  In granting certification, the Court fleshed out the two competing legal standards in the following way:

> AseraCare argues that Dr. Liao [the United States'
> medical expert] is ***merely second guessing a
> subjective clinical judgment of the certifying
> physician*** and that this evidence is insufficient to
> satisfy the FCA's objective falsity requirement.
>
>        *     *     *
>
> The Government, in contrast, argues that the focus
> is not on the physician's certification, but on the
> information in the medical record."

ECF No. 277at 5 (Order on Interlocutory Appeal) (emphasis added).

Shortly after the Court granted certification, AseraCare filed with the

Eleventh Circuit a petition for permission to appeal the Court's summary

judgment Order.  The Eleventh Circuit denied the petition on April 14, 2015.

### C. Consistent with its Order on Summary Judgment, the Court Correctly Identified the Legal Standard in the Jury Instructions.

On September 28, 2015, the Court gave the parties the instructions

that it intended to give to the jury at the close of evidence in Phase One.

Counsel for AseraCare stated on the record that it "objects and takes

exception to the court's failure to give" Defendants' proposed jury charges,

including proposed charges 19, 20, and 35, which relate to objective

falsehood and differences of opinion.  Trial Tr. at 6365-66.  Consistent with

the controlling law of the Eleventh Circuit and the law of the case, the Court

overruled Defendants' objection.

Instead, the instructions provided to the jury on September 30, 2015, tracked the legal standard identified by the Court in its summary judgment Order and the applicable Medicare regulations.  Among other things, the Court explained to the jury that:

- "A claim is 'false' if it is an assertion that is untrue when made or used."  ECF No. 440 at 11 (Jury Instructions).

- "Claims to Medicare may be false if the provider seeks payment, or reimbursement, for health care that is not reimbursable."  *Id.*

- "For a hospice provider's claims to Medicare to be reimbursable, the patient must be eligible for the Medicare hospice benefit." *Id.*

- "For hospice, a patient is considered to be 'terminally ill' when the patient has a medical prognosis that the patient's life expectancy is 6 months or less if the illness runs its normal course." *Id.*

- "For a hospice provider to meet the disputed certification requirement, for the initial benefit period, the patient's attending physician, if the patient has one, and the hospice program's medical director each must certify that the patient is considered to be terminally ill based on the doctor's clinical judgment regarding the normal course of the patient's illness." *Id.* at 11-12 (Jury Instructions).

- "Clinical information and other documentation that support the medical prognosis must accompany each certification and must be filed in the medical record."  *Id.* at 12 (Jury Instructions).

- "Your only responsibility for Phase One is to answer a single question for the 121 patients about whom you have heard testimony and received other evidence: whether the United States has proven by a preponderance of the evidence that one or more of the claims for one or more of the 121 patients are

false claims, and if so, the time period of the false claims."
*Id.*at 14 (Jury Instructions).

These jury instructions are consistent with the Court's Order on summary judgment and correct as a matter of law.  They are legally sufficient because they explain the legal principles pertaining to the subject of falsity of hospice claims, make clear to the jury the issues they must decide, and point out what the United States must prove in order to prevail. *See Walker*, 433 F.3d at 1356; 42 U.S.C. § 1395y(a)(1)(C); 42 C.F.R. § 418.22(b); ECF No. 268 at 7 (Order on Summary Judgment);  *Evercare Hospice, Inc.*, 2015 WL 5568614, at *7; ; *United States ex rel. Kappenman v. Compassionate Care Hospice of the Midwest, LLC*, No. Civ. 09-4039-KES, 2012 WL 602315 at *5 (D.S.D. Feb. 23, 2012); *United States v. Vitas Hospice Services LLC, et al.*, No. 4:13-cv-00449, ECF No. 115 (W.D. Mo. Sept. 30, 2014).

### D. The Court Has Incorrectly Perceived Errors in its Own Instructions.

At the hearing on October 23, 2015, the Court identified two so-called errors in its jury instructions:

> One thing I did that I think was wrong was not
> instructing them about objective falsity or objective
> evidence of falsity or whatever, but the bigger error I
> think I made was in overruling the defendant's request
> for an instruction that said, something to the effect that,

12

> opinion is not enough or difference of opinion is not
> enough.

Trial Tr. 7305.  As discussed below, the Court did not commit error because
neither of these instructions were necessary or appropriate.

　　　The Court clearly instructed the jury that: (a) claims to Medicare may
be false if the claims are not reimbursable, (b) for hospice claims to be
reimbursable the patients must be properly certified as terminally ill, and (c)
that clinical information and other documentation that support the medical
prognosis must accompany each certification and must be filed in the
medical record.  ECF No. 440 at 11- 12 (Jury Instructions).  As the Court
has already held– at summary judgment and when discussing interlocutory
appeal – this legal standard is correct as a matter of law and AseraCare's
proposed legal standard would contravene Eleventh Circuit precedent.  Thus,
there is no basis for the Court's sudden determination that the jury was
improperly instructed as to the standard for falsity.

　　　　1.　The Court's Perceived Error Regarding "A Difference of
　　　　　　Opinion is Not Enough"

　　　With regard to its "bigger" error, the Court explained: "So, I think a
difference of opinion by physicians would often be the starting point to show
that there was a False Claims Act [sic], but I still think that, based upon the
law, the government would have to have more than just the difference of

opinions expressed by an expert who is, in essence, second-guessing the decision of the doctors at the time." Trial Tr. at 7307. Contrary to the Court's statements at the hearing, an instruction regarding "differences of opinion" would not be proper or necessary.

*First*, the Court's "error" was merely the choice to reject the same AseraCare legal standard that this Court previously rejected at summary judgment and that the Eleventh Circuit declined to review on interlocutory appeal. *Compare* Trial Tr. 7305-07 (describing what the Court now believes to be the appropriate legal standard: "[t]he government would have to have more than just the difference of opinions expressed by an expert who is, in essence, ***second-guessing*** the ***decision of the doctors*** at the time.") (emphasis added) *with* ECF No. 277 (Order on Certification) (describing what the Court previously rejected as the legal standard: "AseraCare argues that Dr. Liao is merely ***second guessing*** a subjective clinical ***judgment of the certifying physician*** and that this evidence is insufficient to satisfy the FCA's objective falsity requirement.") (emphasis added). In short, the Court previously considered and rejected the very issue that it now contends, after months of trial and a determination by the jury on falsity, requires that all of this be redone.

14

***Second***, an instruction regarding "differences of opinion" was not necessary because the jury was properly instructed that it had to find more than a difference of opinion.  Specifically, the jury was instructed that: (a) a claim is "false" if it is an assertion that is untrue when made or used, (b) claims to Medicare may be false if they are not reimbursable, (c) a hospice's medical director must certify and re-certify that the patient is considered to be terminally ill based on the doctor's clinical judgment regarding the normal course of the patient's illness, (d) clinical information and other documentation that support the prognosis must accompany each certification and must be filed in the medical record, and (e) it may consider whether AseraCare provided false information to or withheld relevant information from the certifying doctor.  *See* ECF No. 440 (Jury Instructions).  Thus, nothing in the Court's jury instructions required or even suggested that the jury could find claims to be false based on a mere difference of opinion.

***Third***, as an empirical matter, it is apparent that the jury did not operate under a theory that the mere difference of opinion is sufficient to establish a false claim. Had that been the case, the jury would have found false claims for all 121 patients.  Instead, by identifying 104 false claims of the 121, the jury necessarily considered not only the credibility of the

competing opinions, but also the sufficiency of documentation required to support certification.

The entire medical records for all 121 patients were admitted into evidence and the jury was presented with the testimony of the United States' medical expert in this case, Dr. Solomon Liao.  Additionally, the jury was shown excerpts from medical records from the 121 patients at issue in the Special Interrogatories.  The jury could have reasonably based a finding that documentation in the 104 patients' medical records did not support the terminal prognosis of the patients based on the evidence presented, and there is nothing to suggest that its ruling was based solely on the existence of a difference of scientific opinion.

*Finally*, adopting AseraCare's proposed legal standard would be contrary to the overwhelming weight of authority in hospice cases and medical necessity cases generally.  *See, e.g.*, *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004) (relator sufficiently alleged that defendants knowingly submitted false claims for medically unnecessary heart transplants); *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, No. 1:08-cv-251 (E.D. Tenn. Mar. 26, 2014) (Doc. 261-2) ("the Medicare requirement that a physician certify [rehabilitation] services does not insulate Defendant [skilled nursing facilities] from liability

resulting from noncompliance with Medicare regulations"); *United States v. Halifax Hosp. Med. Ctr.*, 2014 WL 68603, at *7-8 (M.D. Fla. Jan. 8, 2014) (holding that expert report was "sufficient evidence to establish the existence of a genuine issue of material fact as to the medical necessity of at least some of the admissions at issue," despite a physician having made a decision to admit the patients); *see also Evercare Hospice*, 2015 WL 5568614, at *6-8 (hospice claims can be false even when a physician has signed a certification of terminal illness); *Kappenman,* 2012 WL 602315 at *5 (same); *United States ex rel. Landis v. Hospice Care of Kan.*, No. 06-2455-CM, 2010 WL 5067614, at *4 (D. Kan. Dec. 7, 2010); *United States v. Vitas Hospice Servs. LLC, et al*., No. 4:13-cv-00449, ECF No. 115 (W.D. Mo. Sept. 30, 2014) (same).

     2.  <u>The Court's Perceived Error Regarding "Objective Falsity"</u>

Also at the October 23, 2015 hearing, the Court stated that its jury instructions should have "made reference to the standard that there's – a claim that turns on disputed legal question rather than objective falsehood is not false." The absence of such an instruction on objective falsehood was not an error of law.

***First***, the United States' claims in this case do not turn on a "disputed legal question" and so it was not error for the Court to decline to instruct the

jury on how they should consider disputed legal questions.  The question posed to the jury –whether AseraCare's claims were reimbursable – is an objective determination that required the jury to assess the relevant facts.  Because there was no disputed legal question in this case, the Court's jury instructions were sufficient as a matter of law.

**Second,** it would have been improper to instruct the jury on the concept of "objective falsehood" in Phase One.  This Court has repeatedly held that "[t]he FCA requires 'proof of an objective falsehood.'"  ECF No. 277 at 2 (Order granting interlocutory appeal) (quoting *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1339 (M.D. Ga. 2011); *see also* ECF No. 268 at 15 (quoting *Parato*).  But the *Parato* case repeatedly cited by this Court makes clear that the "objective falsehood" requirement in the FCA relates to AseraCare's ***knowledge*** of the false claims.  *See Parato*, 787 F. Supp. 2d at 1339.[2]  Because the Court bifurcated this trial, any instruction regarding objective falsity would only be appropriate in Phase Two.

---

[2] In *Parato*, the district court explained that the "objective falsehood" requirement under the FCA cannot be given meaning without implicating the knowledge element: "'[I]n practice courts have found it impossible to give meaning to the term [falsity] without also implicating the third element, the requirement that the defendant had 'knowledge' of the alleged falsity.'  Furthermore, '[t]he inseparability of the falsity element and the scienter element is consistent with the whole purpose behind the FCA, which is to combat fraud on the government, not scrutinize statements for facial inaccuracies.'  In that regard, innocent mistakes or negligence are not actionable, nor are imprecise statements arising from a disputed legal question."  787 F. Supp. 2d at 1339 (citations omitted).

The United States believes that the Court's Order on bifurcation was improper because, as the *Parato* opinion makes clear, the False Claims Act's elements of falsity and knowledge are inextricably linked.  However, because the Court bifurcated the trial and limited Phase One evidence to the narrow question of falsity (*i.e.*, whether the records support a certification of terminal illness), any instruction about "objective falsehood" would have been inappropriate in Phase One – and it would now be clear and reversible error for the Court to effectively ignore the consequences of its own bifurcation ruling.

### E. It Would be Manifestly Unjust and a Waste of Taxpayer Resources for the Court to Revisit the Jury Instructions

In the twelve weeks since this trial began on August 10, 2015, the United States and the Court have expended considerable taxpayer resources to try Phase One of this case before a jury of 4 men and 7 women.  The instructions provided to the jury at the end of Phase One were based on the legal standard that the Court identified as controlling on December 4, 2014 (Order on Summary Judgment), on December 11, 2014 (12/11/14 Hr'g Tr. at 3), and on September 28, 2015 (Trial Tr. at 6365-66).

After twelve weeks of trial, it would be grossly inefficient for the Court to empanel a second jury and force the taxpayers to bear the expense of a second twelve-week trial in Phase One.  This is especially true because

the Court seems poised to adopt a legal standard that is either unnecessary or was previously identified by this Court as inconsistent with Eleventh Circuit law.  Rather than risk the possibility of three separate twelve-week trials at taxpayer expense, the United States asks this Court to reconsider its decision to order a new trial.

## III.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court reconsider its Order for a new trial to avoid manifest injustice and undue expense to the taxpayers.


Dated: October 26, 2015

Respectfully submitted,

BENJAMIN C. MIZER
PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL

JOYCE WHITE VANCE
UNITED STATES ATTORNEY

LANE HINES WOODKE
DON B. LONG III
MARY LESTER
Assistant United States Attorneys
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2107
Lane.Woodke@usdoj.gov

/s/ Jeffrey A. Wertkin
MICHAEL D. GRANSTON
RENÉE BROOKER
JEFFREY A. WERTKIN
CAROLYN B. TAPIE
WILLIAM E. OLSON
EVA U. GUNASEKERA
HOLLY SNOW
CHRISTINA DAVIS
Attorneys, Civil Division
Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-3911
Jeffrey.A.Wertkin@usdoj.gov

*Counsel for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey A. Wertkin, Trial Attorney for the United States Department of Justice, hereby certify that on October 26, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for the relators and defendants.

/s Jeffrey A. Wertkin
Jeffrey A. Wertkin
Trial Attorney
U.S. Department of Justice