FILED

2015 Dec-04  PM 08:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., DEBORA PARADIES, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. |
| ASERACARE, INC., et al. | 2:12-cv-00245-KOB |
| Defendants. | |

## OPPOSITION TO THE COURT'S SUA SPONTE CONSIDERATION OF SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

STATEMENT OF DISPUTED FACTS ......................................... 6

DISCUSSION ................................................................................ 6

  I.   The Record Contains Ample Evidence that AseraCare Submitted False Claims. ................................................................................ 6

    A.   AseraCare's Claims Are False if They Did Not Meet a Condition of Payment. ............................................................. 6

    B.   Supporting Documentation in the Medical Record for the Terminal Prognosis is a Condition of Payment for a Hospice Claim. ................... 8

    C. The Evidentiary Record Precludes Summary Judgment. ................. 14

  II.   There is No Basis for the Court to Conclude that the United States' Case, or the Jury's Verdict, is Based on a Mere Difference of Opinion... 19

  III.   Summary Judgment Is Particularly Inappropriate Because the Court Precluded the Government From Introducing Relevant Evidence to the Jury in Phase One. ................................................................... 22

  IV.   The Court May Not Sua Sponte Reconsider Summary Judgment Yet Limit its Consideration to the Phase One Trial Record. .......................... 29

CONCLUSION ............................................................................ 30

## INTRODUCTION

Three months before the trial in this case was set to begin, over the United States' express objection, the Court took the novel step of bifurcating the trial and requiring the United States to separately try the various elements of its False Claims Act case against AseraCare.  The Court held that bifurcation was necessary to protect AseraCare from being unduly prejudiced by evidence of its own misconduct.  ECF No. 298 (Order at 3).  To shield AseraCare from having to face evidence of its knowing efforts to defraud the Medicare hospice program – the "parade of horribles" as the Court has repeatedly characterized it – the Court prohibited the United States from presenting any evidence in Phase One of AseraCare's nationwide fraud scheme or evidence that AseraCare knew that the claims it was submitting were false.[1]

Nevertheless, after nearly three months of painstaking consideration of the evidence regarding each of the sample patients at issue, the jury found

---

[1] *See* Trial Tr. 278 ("I thought I had set out some pretty restrictive ideas about phase one being focused on falsity, not on quotas, not on censuses, not on marketing, not on sales presentations, not on any of those other things that the government has been arguing about for years, not pressure on nurses to admit patients, all these cast of horribles that I have said repeatedly have no place in determining the objective falsity of the claims."); *id.* 693 ("I have instructed you repeatedly that we are not getting into the parade of horribles.").

that claims AseraCare submitted for 104 out of 121 patients were false.[2] The jury's findings of false claims for the 104 patients were grounded not only in the medical records and the testimony of the United States' medical expert, but also in other evidence confirming that it was AseraCare's practice to marginalize and circumvent physicians, admit and keep ineligible patients on hospice, and submit hospice claims for patients who were not terminally ill.

The Court's instructions to the jury were fully consistent with binding False Claims Act precedent in the Eleventh Circuit, and the jury's findings were well supported by the evidentiary record. Under these circumstances, there was no basis for the Court to second-guess the jury's findings based on speculation that the jury's conclusions rested upon a mere difference of opinions. The Court nonetheless took the extraordinary step of setting aside the jury's findings and ordering a new trial.

Even more inexplicably, the Court now indicates that it intends *sua sponte* to enter summary judgment against the United States unless the United States is able to "direct the court to admissible, objective evidence in

---

[2] Although the United States presented evidence in Phase One regarding 123 AseraCare patients, the jury was only permitted to consider 121 of these patients due to the Court's prior ruling granting judgment as a matter of law for two of the 123 patients. ECF No. 427 (Order at 1). The Court has since vacated its Order granting judgment as a matter of law as to these two patients. ECF No. 483 (Order at 1).

the Phase One record, other than Dr. Liao's testimony, that would prove falsity and show that the Government presented more admissible evidence than merely a difference of opinion to which reasonable minds could differ." ECF No. 483 (Order at 1).  Such action would be both unprecedented and unjustifiable given the voluminous evidentiary record presented by the United States that unquestionably creates a genuine dispute of fact.

The Court's proposed summary judgment ruling suffers from several fundamental defects.  First, it simply ignores the actual evidence in the record.  As the Court has recognized, the proper legal standard for falsity in this case is whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim.  ECF No. 268 (Mem. Op. at 15).  Consistent with that standard, the United States introduced the complete medical record for each of the sample patients at issue, and had its medical expert painstakingly explain why those records did not support each patient's terminal prognosis.  The United States also introduced other evidence demonstrating that the signed physician certifications in the records were unreliable, which both supported its contention that the required medical documentation did not exist and negated AseraCare's attempt to rely on the signed certifications.  This evidence was more than sufficient to

sustain the jury's findings and unquestionably presents at least a genuine dispute of fact that negates any basis for summary judgment.

Second, to the extent the Court intends to grant summary judgment on the ground that "[a]n expert's opinion disagreeing with the clinical judgments of the certifying physicians, without more, is not enough to prove falsity under the FCA," ECF No. 482 (Mem. Op. at 14), such a holding misconstrues the central issue in this case and mischaracterizes the evidence presented by the United States. This case is about the misconduct of the Defendant in this case – AseraCare hospice – and not about the conduct of certifying physicians. The United States' medical expert Dr. Solomon Liao did not offer an opinion on whether the certifying physicians properly exercised their clinical judgment, nor could he because he did not have information about what medical records AseraCare provided to the certifying physicians (if any). Rather, Dr. Liao offered opinions about whether AseraCare maintained medical records that supported the terminal prognoses of the patients at issue, which is determinative of whether the claims for those patients are reimbursable. The existence of a disagreement among medical experts or physician witnesses about whether a hospice claim is reimbursable – more specifically a disagreement about whether medical records support a terminal prognosis – does not preclude a finding

4

of "falsity" under the False Claims Act.  This type of disagreement, typical in medical necessity cases, creates a genuine issue of material fact for the jury and is not properly resolved by the Court at summary judgment.

Third, there is no support for the Court's position that the United States cannot prove the falsity element of a hospice claim by relying on the medical records and the testimony of a medical expert.  The Court's reliance on snippets of opinions pronouncing that "a difference of opinion is not enough" is misplaced because that issue properly goes to whether a defendant knowingly submitted false claims or had a good faith belief that its claims were reimbursable.  It is indefensible for the Court to grant summary judgment on the grounds that this case is just about a good faith disagreement between experts – and that the United States failed to present evidence that AseraCare knew or recklessly disregarded that its claims were false – when the Court bifurcated the trial and expressly excluded from Phase One any evidence of AseraCare's knowledge of falsity.

Finally, it is improper for the Court to *sua sponte* consider summary judgment yet limit its consideration of evidence to what was presented in Phase One of the trial.  Once evidence is presented at trial, any challenge to evidentiary sufficiency at summary judgment becomes moot.  The inverse is also true: a challenge to evidentiary sufficiency at summary judgment cannot

be based only on a record presented at trial.  Significant admissible evidence

exists that had not yet been presented at trial due to the Court's bifurcation

order.  Such evidence is properly before the Court on summary judgment

and should be afforded full consideration.

## STATEMENT OF DISPUTED FACTS

The United States has attached to this filing a statement of disputed

facts as Exhibit 1.  Every citation to a "Government Exhibit" or a

"Defendant Exhibit" in Exhibit 1 refers to an exhibit that the parties

provided to the Court at trial, admitted into evidence, and is part of the Phase

One trial record.

## DISCUSSION

**I.  THE RECORD CONTAINS AMPLE EVIDENCE THAT ASERACARE SUBMITTED FALSE CLAIMS.**

### A. AseraCare's Claims Are False if They Did Not Meet a Condition of Payment.

Under binding Eleventh Circuit precedent, AseraCare's claims are

false if they do not meet a pre-requisite for payment and are therefore not

reimbursable.  *See Walker v. R&F Props. of Lake Cnty, Inc.*, 433 F.3d 1349,

1356 (11th Cir. 2005) ("Medicare claims may be false if they claim

reimbursement for services or costs that either are not reimbursable or were

not rendered as claimed.").

The Eleventh Circuit's holding that claims may be false under the False Claims Act if they do not meet a condition of payment is consistent with the overwhelming weight of authority on this subject. *See, e.g.*, *United States v. Universal Health Servs., Inc.*, 780 F.3d 504, 513 (1st Cir. 2015) (a claim for reimbursement is false if it knowingly misrepresents compliance with a material precondition of payment); *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013) ("a facially truthful claim can be construed as false if the claimant 'violates its continuing duty to comply with the regulations on which payment is conditioned**.**'") (*quoting Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011)); *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) ("[A] claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment."); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 996 (9th Cir. 2010) (recognizing that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment); *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1261 (D.C. Cir. 2010) ("[R]equests for payment can be 'false or fraudulent' under the FCA when submitted by a contractor that has violated contractual

7

requirements material to the government's decision to pay regardless of whether the contract expressly designates those requirements as conditions of payment."); *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F. 3d 1211, 1271 (10th Cir. 2008) ("[I]n a claim based on an alleged legal falsehood, the relator must demonstrate that the defendant has certified compliance with a statute or regulation as a *condition* to government payment, yet knowingly failed to comply with such statute or regulation.") (internal quotations and citations omitted); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997) ("[W]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation.").

### B. Supporting Documentation in the Medical Record for the Terminal Prognosis is a Condition of Payment for a Hospice Claim.

A hospice company such as AseraCare must meet certain requirements to be entitled to payment from Medicare for hospice care provided to its patients.  These requirements include: (1) the hospice must obtain a certification of terminal illness ("COTI") for each patient that is signed by a physician; and (2) the hospice's medical record for the patient

must contain "clinical information and other documentation that support the medical prognosis" of a life expectancy of six months or less if the illness runs its normal course.  42 C.F.R. § 418.22(b).  Even if the hospice company has obtained a COTI signed by a physician, the claim is not reimbursable if the medical record does not contain clinical information and other documentation that support the medical prognosis.  *See* 42 U.S.C. § 1395y(a)(1)(C); 42 C.F.R. § 418.22(b); *see also* 70 Fed. Reg. 70532, 70534-35 (Nov. 22, 2005) ("A signed certification, absent a medically sound basis that supports the clinical judgment, is not sufficient for application of the hospice benefit under Medicare."); 74 Fed. Reg. 39384, 39398 (Aug. 6, 2009) ("The medical record must include documentation that supports the terminal prognosis"); *United States ex rel. Fowler v. Evercare Hospice, Inc.*, 2015 WL 5568614, at *7 (D. Colo. Sept. 21, 2015) (denial of a motion to dismiss based on a finding that "the requirement that physicians' certifications are accompanied by clinical information and other documentation that support a patient's prognosis is a condition of payment under applicable Medicare statutes and regulations").

Under this statutory and regulatory framework underpinning the Medicare hospice benefit, it is the hospice provider – not the Medicare beneficiary's treating physician or the hospice's certifying physician – that

submits claims for payment and receives payment from Medicare for

providing hospice services.  As the entity that submitted Medicare hospice

claims and received Medicare payments during the relevant time period,

AseraCare had an independent obligation to ensure that it met the conditions

of payment when it submitted claims, including ensuring the certifying

physicians' prognoses were documented in and supported by the written

medical records.  *See Evercare Hospice*, 2015 WL 5568614 at *7; *United

States ex rel. Kappenman v. Compassionate Care Hospice of the Midwest,

LLC*, 2012 WL 602315 at *5 (D.S.D. Feb. 23, 2012); *United States ex rel.

Landis v. Hospice Care of Kan.*, 2010 WL 5067614, at *4 (D. Kan. Dec. 7,

2010); *United States v. Vitas Hospice Servs. LLC, et al*., No. 4:13-cv-00449,

ECF No. 115 (W.D. Mo. Sept. 30, 2014).

Trial testimony from Katherine Lucas, a health insurance specialist at

the Centers for Medicare and Medicaid Services ("CMS"), confirmed that a

patient's medical records must meet the documentation requirement before a

hospice provider such as AseraCare is entitled to payment from Medicare for

hospice care.  Reading from an official CMS publication, Ms. Lucas

testified:

> A hospice needs to be certain that the physician's clinical
> judgment can be supported by clinical information and
> other documentation that provide a basis for the

10

> certification of six months or less if the illness runs its normal course.
>
> A signed certification, absent a medically sound basis that supports the clinical judgment, is not sufficient for application of the hospice. . . benefit under Medicare.

Trial Tr. 3523-24.

Mary Jane Schultz, the former director of the medical review unit of the Medicare contractor Palmetto G.B.A., further confirmed that AseraCare must meet certain documentation requirements to be entitled to payment from Medicare for hospice care provided to a patient.  Consistent with the applicable law, Ms. Schultz testified:

> Q.  Are you aware, Ms. Schultz, of what Medicare requires a hospice provider to do if that hospice provider does not possess sufficient documentation to support a patient's terminal prognosis?
>
> A.  Yes, the provider –
>
> Q.  How are you aware of that?
>
> A.  From my experience and also it is spelled out in the CMS manual.
>
> Q.  What does Medicare require hospices to do in that situation?
>
> A.  Hospices should not bill for services for which they don't have supporting documentation.
>
> Q.  Is it appropriate for a hospice to rely on a physician's determination of terminal illness when submitting claims to Medicare?
>
> A.  The hospice, as the entity that is billing those services to the Medicare program, has the responsibility to ensure that there is documentation to support that physician certification statement, so the fact that there was a

11

physician certification statement would not in and of itself be enough information for them to bill the services.

Trial Tr. 1211-12.

On cross-examination by AseraCare's counsel, Ms. Schultz confirmed that the documentation requirement was in effect during the time period relevant to this case:

> Q.  Ms. Schultz, you're aware that the documentation requirement came into effect at a particular point in time; correct?
>
> A.  Are you referring to the physician's narrative?
>
> Q.  *I'm referring to the documentation requirement – the requirement that clinical information be in the record, clinical information and other documentation be in the record and support the certification*, that requirement that you've talked about today.  You're aware that there was a particular point in time that that came into effect; correct?
>
> A.  I would have to go back and look at what the requirements were.
>
> Q.  Okay.  You're aware that it was in effect in 2007 to 2012; correct?
>
> A.  Yes.

Trial Tr. 1227 (emphasis added).

Finally, Angie Hollis-Sells, who serves as AseraCare's current President and served in various executive-level positions during the relevant time period, also confirmed at trial that AseraCare was required, as a condition of payment, to ensure that clinical information and other documentation supported the terminal prognosis:

12

> Q.  AseraCare has to follow Medicare regulations when it submits claims for payment for hospice services if they are provided to Medicare beneficiaries, correct?
>
> A.  That's correct.
>
> Q.  And for a claim for hospice services to be reimbursable by Medicare, clinical information and other documentation that support the medical prognosis must accompany the certification and be filed in the medical record with the written certification; correct?
>
> A.  That's correct.

Trial Tr. 4077-4078.

In short, the trial record confirms what the law makes clear: AseraCare was required to have adequate supporting documentation when it billed for hospice services for a patient and that the existence of a physician certification statement that the patient is terminally ill was not sufficient for AseraCare to bill Medicare for providing hospice services.  AseraCare, as the entity that is billing those services to the Medicare program, was responsible for ensuring that there was documentation accompanying a physician's COTI that supported the medical prognosis.  Thus, where AseraCare submitted claims for services that were not adequately supported by the medical records, AseraCare violated a condition of payment and submitted a false claim.

In its Order on summary judgment, the Court correctly held that AseraCare's False Claims Act liability turns on "whether clinical

information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim." ECF No. 268 (Mem. Op. at 15). Accordingly, summary judgment is inappropriate so long as there is evidence giving rise to a dispute of fact as to whether AseraCare submitted claims for patients whose medical records did not support a prognosis of terminal illness. The evidence presented in Phase One not only meets but exceeds that standard.

### C. The Evidentiary Record Precludes Summary Judgment.

In light of the applicable law and uncontroverted testimony that a hospice claim is not reimbursable if the medical record lacks documentation that supports the terminal prognosis, the evidentiary record clearly precludes summary judgment. The United States presented substantial evidence at trial that AseraCare submitted false claims for the patients at issue because AseraCare's medical records for these patients did not contain clinical information or other documentation to support the medical prognosis of six months or less if the illness ran its normal course. *See* Trial Tr. 385 – 6920; Exhibit 1 (Statement of Disputed Facts at ¶¶ 18-1064).

The entire medical records for all the patients at issue were admitted into evidence. To assist the jury in understanding the medical records, the jury was also presented with testimony from Dr. Liao, a leading expert on

hospice and palliative care who testified on behalf of the United States.  *See*

Trial Tr. 1343 – 3483.  Dr. Liao repeatedly and consistently testified that his

opinions were based upon the medical records of the patients.  *Id.*  Over

three weeks of testimony, Dr. Liao explained the basis for his opinions for

each of the patients at issue by referring to their medical records.  The

United States bolstered his testimony by showing excerpts from the medical

records to the jury.  Based on the objective facts contained in (or missing

from) the medical records, and with the assistance of Dr. Liao, the jury had

more than sufficient evidence to determine that AseraCare submitted false

claims for patients whose medical records did not support a terminal

prognosis.  Indeed, the jury determined that the medical records for 104

sample patients did not support a terminal prognosis – precisely the standard

that this Court has said in its Memorandum Opinion on summary judgment

is the appropriate legal standard.  *See* ECF Nos. 465, 268.

But the medical documentation for each patient, and the expert

testimony explaining that documentation, was not the only evidence

presented by the United States.  Although the Court limited its ability to do

so, the United States also presented evidence that rebutted the reliability of

the COTIs that were part of the medical records for the sample patients.

Specifically, the United States presented evidence – connected in time and

location to the patients at issue – demonstrating that AseraCare employees had a deliberate practice of not giving physicians the relevant, accurate, and complete information about patients when asking doctors to sign the COTIs, and that in practice AseraCare's management circumvented or marginalized physicians in order to admit or retain Medicare hospice patients who were not terminally ill.  Trial Tr. 450-1099.  This evidence included, but was not limited to, testimony from the following former AseraCare employees:

- Vicki Stutts, former Director of Clinical Services for AseraCare's agency in Decatur, Alabama, testified that when she declined to admit ineligible patients to hospice, she was instructed "to go back to the chart and just find whatever I needed to find to admit the patient." Trial Tr. 597:6-21.  When asked whether she would provide the AseraCare physician with any clinical information when bringing him COTIs to sign, Ms. Stutts responded: "No.  Typically we just gave him, usually, a stack of papers to sign, he just signed the papers." Trial Tr. 596:18-22.

- Marsha Farmer, former Executive Director for AseraCare's agency in Monroeville, Alabama, testified that the AseraCare physician would rely on the nurses when signing COTIs, but that the physician was not given accurate and complete information by the nurses.  Trial Tr. 838:21, 840:4.  If a nurse in her agency did not admit a patient into hospice, she was instructed to "dig deeper," "look further," "send another nurse out," and "look harder."  Trial Tr. 849:9-15, 851:3-6. Ms. Farmer explained that she understood the instruction to "dig deeper" and "look harder" to mean "get the patient on services" regardless of whether the patient was appropriate for admission to hospice or not.  Trial Tr. 850:10-20.

- Margie Greer, former Case Manager for AseraCare's agency in Evansville, Indiana, testified that if she did not admit a patient because she did not believe the patient was eligible, she was told to "go back and dig deeper and look harder" and "find a reason" to admit the patient.  Trial Tr. 1023:3-14.  Ms. Greer testified that she

understood these instructions to mean "create a reason because there is none there."  Trial Tr. 1023:15-17.

- Dawn Zaragoza, former Director of Clinical Services for AseraCare's agency in Foley, Alabama, testified that the physicians in Foley attended interdisciplinary team meetings only about fifty percent of the time, and, when they did attend, Ms. Zaragoza put little "sign here" sticky notes on the medical forms showing where the doctor should sign.  Trial Tr. 469:16-19; 471:5-10.  When asked how much time a physician spent reviewing each form before he signed it, Ms. Zaragoza testified it was "[j]ust enough to make his little signature." Trial Tr. 478:18-23.

- Roberta Manley, former Patient Care Coordinator for AseraCare's agency in Milwaukee, Wisconsin, testified that AseraCare's physician would sign COTIs without looking at medical records.  Trial Tr. 1130:21-23; 1132:14-24.  The physician would also pre-sign blank COTIs and leave them for the nurses to fill out.  Trial Tr. 1133:15-23.  Ms. Manley testified that it was part of her job to put "those little arrow sticky notepads" on the COTIs so the physician could sign the forms without reviewing them.  Trial Tr. 1117:16-19; 1131:23-1132:2.

- Sharon Perryman, former Executive Director for AseraCare's agency in Boston, Massachusetts, testified that when she arrived in Boston, the physician was not even being notified of admissions.  Trial Tr. 753: 13- 754:5.  Ms. Perryman testified that documentation was coming in late and incomplete, which meant that the clinicians had inadequate information when making eligibility determinations. Trial Tr. 745:8-18.

- Debora Paradies, former Admissions Nurse for AseraCare's agency in Milwaukee, Wisconsin, testified that she assigned hospice diagnoses and was instructed to always assign one of two diagnoses regardless of whether the patient had either terminal condition.  Trial Tr. 1068:10-17; 1070:1-19.  Ms. Paradies testified she did not have the discretion to decline to admit a patient even if she did not believe the patient was eligible.  Trial Tr. 1069:19-25; 1070:1-25; 1071:1-10.

- Sherry Adams, former Case Manager from AseraCare's agency in Evansville, Indiana, testified that when she found someone who was not eligible for hospice, she had to go back and discuss the patient at a stand-up meeting in the office.  Trial Tr. 1001:14-17.  She testified

that her supervisors would suggest a diagnosis to her – she said "adult failure to thrive, that is a big one.  It goes under a very general category."  Trial Tr. 1002:24-25.  And afterwards, Ms. Adams would go back and admit the patient that she had found ineligible even though she still did not think the patient was terminally ill.  Trial Tr. 1003:1-4.

Testimony from these witnesses allowed the jury to conclude that the COTIs procured by AseraCare were unreliable.  Based on this evidence, the jury was entitled to give the COTIs less weight or no weight, and instead to base their determination of eligibility on the remainder of the medical records and the explanation of those records by the United States' medical expert.

In short, the jury had evidence that the medical records of the patients at issue did not support a prognosis of terminal illness and that the physician certifications of such prognoses did not constitute reliable documentation of the patients' eligibility.  Accordingly, as this Court previously determined based on the same facts presented by the parties at summary judgment, there is sufficient evidence in the record to create at least a question of material fact as to whether the documentation for the sample patients supported a terminal prognosis.  Indeed, the evidence was sufficient to support the jury's finding that AseraCare submitted false claims for 104 of the 121 patients at issue.  There was simply no legitimate basis for the Court to disturb the

jury's verdict on falsity, much less to *sua sponte* reconsider summary

judgment.

## II. THERE IS NO BASIS FOR THE COURT TO CONCLUDE THAT THE UNITED STATES' CASE, OR THE JURY'S VERDICT, IS BASED ON A MERE DIFFERENCE OF OPINION.

To the extent the Court intends to grant summary judgment on the

grounds that "[a]n expert's opinion disagreeing with the clinical judgments

of the certifying physicians, without more, is not enough to prove falsity

under the FCA," such a holding misconstrues the central issue in this case

and mischaracterizes the evidence presented by the United States.  This

litigation is about the conduct of the Defendant AseraCare – not about the

conduct of physicians who may or may not be liable for causing the

submission of false claims.  The central question on "falsity" is whether

AseraCare – the hospice provider that submitted claims to Medicare and

received payment from the United States – met the conditions for payment

and only submitted a hospice claim for a patient when the patient's medical

records supported the patient's terminal prognosis.

All of the patients considered in Phase One had been on hospice for a

year or more (sometimes several years).  The United States presented the full

medical records for each of these patients, as well as expert testimony to

assist the trier of fact in understanding the medical records.  Importantly, the

United States' medical expert Dr. Liao did not offer an opinion about whether the certifying physicians properly exercised their clinical judgment, nor could he because he had no information about what medical records AseraCare provided to the certifying physicians (if any).  Rather, Dr. Liao offered an opinion about whether AseraCare's medical records supported the terminal prognoses of the patients, which is determinative of whether the claims were reimbursable or false.

Consistent with the applicable legal standard and the conditions for payment under the Medicare hospice program, Dr. Liao's opinions were appropriately grounded in the medical records rather than the opinions or judgments of certifying physicians.  The trial testimony of Mary Jane Schultz, the Palmetto G.B.A. representative, demonstrates that it is entirely proper for the United States to rely on the medical records of the patients at issue, as explained to the jury through the testimony of a medical expert, to demonstrate that AseraCare's claims were not reimbursable and were therefore false.  Ms. Schultz testified that when a hospice claim is selected for pre-payment review, nurses at Palmetto review the documents that the hospice submits to Palmetto for the dates of service of the claim to evaluate whether the clinical facts are sufficient to make the claim reimbursable. Trial Tr. 1189-1215, 1229-30.  Ms. Schultz's testimony demonstrates that

Palmetto's reviewers look only at the objective facts in the medical records that AseraCare provides and do not consider or have access to any other evidence when determining whether a claim is reimbursable.  Importantly, the Palmetto reviewers do not evaluate the sufficiency or accuracy of the information provided to the physician because the propriety of the physician's actions does not determine whether Palmetto pays the hospice's claim.  *Id.*

As a matter of law, AseraCare's hospice claims may be false if they are not reimbursable.  *See, e.g.*, *Walker*, 433 F.3d at 1356.  Because hospice claims are false when objective evidence in the medical record does not support eligibility, there is no legal or factual basis for the Court to require the United States to present additional evidence beyond the medical records in order to survive summary judgment on the question of falsity.  The existence of a disagreement among witnesses or medical experts about whether a hospice claim is reimbursable – more specifically a disagreement about whether the medical records for a patient support a terminal prognosis – does not preclude a finding of "falsity" by a jury.  In this case, like in most litigation involving experts, the disagreement creates a genuine of issue of material fact for the trier of fact and is not properly resolved by the Court at summary judgment.

After nine days of deliberations on the question of falsity for each patient at issue, it is apparent that the jury did not operate under a theory that the mere difference of opinion between Dr. Liao and the certifying physician was sufficient to establish a false claim. Had that been the case, the jury would have found false claims for either all 121 patients or no patients at all. Instead, by identifying 104 false claims of the 121, the jury necessarily considered the sufficiency of the voluminous medical records required to support certification, in light of the expert testimony that the United States presented to help the jury understand those medical records.

### III. SUMMARY JUDGMENT IS PARTICULARLY INAPPROPRIATE BECAUSE THE COURT PRECLUDED THE GOVERNMENT FROM INTRODUCING RELEVANT EVIDENCE TO THE JURY IN PHASE ONE.

The United States previously argued to the Court that bifurcating the elements of a single False Claims Act cause of action was inappropriate because "falsity" and "knowledge of falsity" cannot be considered separately in a False Claims Act case. ECF No. 295. Nevertheless, despite the United States' objections and request for reconsideration, the Court bifurcated the trial and limited the United States' Phase One evidence to the narrow question of falsity (*i.e.*, whether the objective facts in the medical records supported a terminal prognosis). The Court expressly excluded evidence in Phase One demonstrating that AseraCare orchestrated a nationwide fraud

scheme and *knew* that the claims it was submitted to Medicare were false. *See* Trial Tr. 334-35.[3]

Ironically, the Court's Memorandum and Opinion announcing *sua sponte* reconsideration of summary judgment relies heavily on cases that hold that falsity and scienter are related concepts that cannot be analyzed separately.  ECF No. 482 (Mem. Op. at 14) (citing *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 2015 WL 4528955 (S.D. Fla. July 10, 2015) ("the falsity analysis is intertwined with the scienter analysis")[4] *and United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004) (whether expressions of opinion are "erroneous" or "false" under the FCA can turn on whether the statement is known to be false).

---

[3] "THE COURT:  That's where we differ.  Because those kinds of things are the parade of horror that I have been talking about that we're not getting into in this case in phase one.  It comes in in phase two.  Phase one is, are the claims objectively false.  Why she admitted patients that were ineligible is not relevant to whether they were ineligible, that Ms. Brown yelled at her is not relevant to whether the claims are objectively false.  So I am making a ruling right now, and I want you to listen real carefully to it, we're not getting into why, we're not getting into pressure to admit, we're not getting into being yelled at, we're not getting into people were fired because she said she couldn't point to anyone who was fired, but that's not relevant to whether any of these claims are objectively false."  Trial Tr. 334-35.

[4] The *Lincare Holdings* opinion provides: "As a practical matter, the falsity analysis is intertwined with the scienter analysis.  *See United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ('[I]t is impossible to meaningfully discuss falsity without implicating the knowledge requirement.'); *United States ex rel. Morton v. A-Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005) ('[F]alsity and scienter requirements are inseparable.')."  2015 WL 4528955 at *25.

More significantly, these cases do not support the proposition for which they are cited.  Neither *Riley* nor *Lincare Holdings* supports the proposition that the United States cannot prove the falsity of a hospice claim (*i.e.*, that the claim was not reimbursable because the provider's medical records do not support the patient's terminal prognosis) based on the facts in the medical records and the testimony of a medical expert.  The dispute in *Lincare Holdings* had nothing to do with medical necessity or clinical judgment, but involved the marketing and distribution of diabetic testing supplies.  The *Lincare Holdings* opinion does include a quote from a Tenth Circuit case that "'[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.'"  2015 WL 4528955, at *25 (quoting *United States ex rel. Morton v. A-Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005)).[5]  However, the court in *Lincare Holdings* was clear that this principle relates to whether an interpretation is "erroneous" or "false" and requires a scienter analysis: "[a] reasonable, but erroneous interpretation of a complex statutory or regulatory scheme should not, ***without facts demonstrating reckless***

---

[5] Notably, the Tenth Circuit in *Morton* held that "we are not prepared to conclude that in all instances, merely because the verification of a fact relies on clinical medical judgments, or involves a decision of coverage under an ERISA plan, the fact cannot form the basis of an FCA claim."  139 F. Appx. at 983.

*disregard*, create False Claims Act liability." 2015 WL 4528955, at *25 (emphasis added).

Similarly, in *Riley*, the Fifth Circuit explained that although it agreed in principle with the lower court that expressions of opinion or scientific judgments about which reasonable minds may differ cannot be "false," it specifically noted that this principle requires a reviewing court to undertake a scienter analysis: "We agree in principle with the district court and accept that the FCA requires a statement ***known to be false,*** which means a lie is actionable but not an error." 355 F.3d at 376 (emphasis added). Most significantly, the Fifth Circuit held that "claims for medically unnecessary treatment ***are actionable*** under the FCA," (emphasis added) and ***reversed*** the district court's dismissal of relator's claims based upon a finding that "Riley's complaint does sufficiently allege that statements were known to be false, rather than just erroneous, because she asserts that Defendants ordered the services knowing they were unnecessary." 355 F.3d at 376. [6]

---

[6] In a different section of its Memorandum Opinion, the Court also cites to the holding of *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006). *Prabhu* is distinguishable because in that case the United States presented no medical expert opinion that the services at issue were unnecessary from a clinical standpoint, presented no evidence of violation of a controlling statute, rule, or regulation, and identified no objective standard for documenting medical necessity. *Id*. at 1021-22, 1032-33. The *Prabhu* opinion did not hold that the United States could not have established that the provider's certifications were false with appropriate medical opinion testimony that the services lacked medical necessity.

In short, both *Lincare Holdings* and *Riley* undermine this Court's contention that the issue of medical necessity in this case cannot be actionable if it involves issues of opinion.  Rather, these cases hold that even under such circumstances, liability will lie if the defendant is shown to have acted knowingly – the very evidence this Court excluded from Phase One and has refused to consider in its current summary judgment ruling.

Thus, to the extent that the Court intends to rely on *Riley* and *Lincare Holdings* and consider whether AseraCare's submission of ineligible hospice claims were merely "erroneous" or "false," the Court must necessarily consider the evidence it has characterized as a "parade of horribles" that it excluded in Phase One.[7]  For example, the Court must consider exhibits and

---

[7] The Court's statement that the United States "painted itself into a corner" appears to be based on the flawed premise that it failed to give AseraCare adequate notice of its contentions in discovery.  ECF No. 482 at 22.  To the contrary, in response to AseraCare's request to identify "[a]ny policies, programs, or procedures of Defendants that the Government contends caused or contributed to the submission of false claims," the United States contended, *inter alia,* that evidence of the following practices would be used to prove AseraCare knowingly submitted false claims: (1) "Medical directors were not adequately involved in admission and certification decisions." (2) "Medical directors did not consistently receive information about patients' conditions prior to initial certification of terminal illness." (3) "AseraCare physicians signed certifications and recertifications without seeing patients." (4) "AseraCare failed to obtain proper physician certification for patients who were admitted or recertified for hospice services." (5) "AseraCare offered bonuses and incentives to clinical employees based on EBITDA, revenue, admissions and census." (6) "AseraCare regularly pressured its employees to maintain and increase census." (7) "AseraCare pressured employees to admit patients to hospice by terminating or placing on action plans employees who did not meet admissions goals", and (8) "AseraCare management discouraged nurses from finding patients ineligible for the Medicare hospice benefit or voicing eligibility concerns."  ECF No. 295-3 (Resp. to Defendants' Dec. 6, 2013 Interrog. at 7-12).

testimony about the findings of AseraCare's outside auditor – The Corridor Group – that it previously (and erroneously) excluded.  *See, e.g.*, ECF No. 251-98 (Ex. 90).  The Corridor Group provided AseraCare's senior management with a report of "company-wide findings" stating, among other things, that:

- AseraCare's "[c]ertification and recertification processes are ineffective." *Id.* at ACDISC011769;
- AseraCare agency "Medical Directors are not adequately involved in making initial eligibility determination" of patient's terminal illness. *Id.*
- AseraCare agency "Medical Directors do not consistently receive medical information prior to initial [Certifications of Terminal Illness]." *Id.*

Similarly, the Court must consider exhibits and testimony about the findings by AseraCare's internal auditors finding that the medical records did not support the patients' eligibility for hospice at multiple agencies.  *See* Trial Tr. 1031-1054.  This evidence includes, but is not limited to:

- An April 2009 audit of AseraCare's Nashville agency with the notation: "[a]ppropriateness for hospice not seen at admission with documentation submitted.  Continued eligibility questionable appears more chronic than terminal with notes reviewed."  ECF No. 251-90 (Ex. 82 at AUDIT04932).
- An October 2009 audit of AseraCare's Smithville agency with the notation: "[t]erminal decline not seen in recert documentation submitted.  Recert info states of a 13 lb wt loss when documentation actually reflects a 2 lb weight gain.  Note from 8-25 reflects ambulation with walker in hallways."  ECF No. 251-91 (Ex. 83 at 8).

- An October 2009 audit of AseraCare's Boston agency with notations that "[d]ocumentation scanned reflects chronic patient vs end of life disease progression."  ECF No. 251-92 (Ex. 84 at AUDIT1656).

These internal and external audits not only show that AseraCare knew that it was billing for patients that were ineligible, but also confirms that the initial certifications by the physicians were unreliable, and bolsters the conclusion that the medical documentation, and the United States' expert's testimony about that evidence, are the best evidence of a patient's eligibility.

Similarly, the Court must also consider the following evidence it previously (and erroneously) excluded:

- Testimony from Dr. Joseph Micca, a former AseraCare physician, that AseraCare employees did not defer to his clinical judgment, certified and re-certified patients for hospice benefits over his objections, and fought his efforts to apply Medicare guidelines for initial certification of hospice benefits.  Trial Tr. 919 – 933.

- An email from AseraCare Director Susan Gerhart concluding: "The documentation simply was not there to support eligibility. . . . It truly would be wrong of us to expect the federal government to pay for these services."  *See* ECF No. 308-2.

- Testimony from Marsha Farmer that AseraCare representatives had a practice of trolling for patients by "getting in their vehicle and they ride through areas, especially more poor communities and you would look for wheelchair ramps and you would stop, knock on a door and ask them if they've ever heard of hospice . . . and do they know of anyone sick, that type of thing."  ECF No. 251-86 (Dep. at 110:6-15).

Given that the Court bifurcated the liability portion of the trial and prohibited the United States from presenting evidence that AseraCare knowingly submitted false claims in Phase One, the Court cannot dismiss

28

the United States' claims under Rule 56(f)(3) based on a finding that the

United States did not present sufficient evidence in Phase One that

AseraCare knowingly submitted false claims.  Put another way, it is

indefensible to grant summary judgment on the ground that the United States

failed to present sufficient evidence of knowing falsity when the Court

precluded the United States from admitting the very evidence the Court now

erroneously claims is missing.

## IV. THE COURT MAY NOT SUA SPONTE RECONSIDER SUMMARY JUDGMENT YET LIMIT ITS CONSIDERATION TO THE PHASE ONE TRIAL RECORD.

In seeking to enter *sua sponte* summary judgment pursuant to Federal

Rule of Civil Procedure 56(f)(3), the Court has instructed the parties to enter

briefing which "direct[s] the court to admissible, objective evidence ***in the***

***Phase One record*** . . . ."  ECF No. 483 (Order at 1) (emphasis added).  As a

matter of procedure, the Court's anticipated summary judgment Order is

fundamentally flawed.  It is improper for the Court to base a summary

judgment order based on evidence subsequently developed at trial.  *See*

*Chapman v. AI Transp.*, 229 F.3d 1012, 1027 (11th Cir. 2000) (affirming the

district court's refusal to reopen a summary judgment order based on

evidence that was subsequently presented at trial and holding that "any

evidence offered at trial is not relevant to our review of the ADEA summary judgment and we will not consider it").

This procedural defect is compounded by the Court's Order unnecessarily and improperly restricting the United States from presenting evidence that would otherwise be available at the summary judgment stage. Just as any challenge to evidentiary sufficiency at summary judgment becomes moot once evidence is presented at trial, *United States ex rel. Purcell v. MWI Corp.*, --- F.3d ---, 2015 WL 7597536, at *5 (D.C. Cir. Nov. 24, 2015), the inverse is true as well: a challenge to evidentiary sufficiency at summary judgment is not to be based on a record presented at trial. Significant admissible evidence exists that has not yet been presented at trial due to the Court's bifurcation order. Much of this evidence was presented to the Court in the United States' filings on summary judgment, which the United States hereby incorporates into this filing by reference. *See* ECF No. 251 (with attachments 251-1 through 251-116). Such evidence is properly before the Court on its post-trial *sua sponte* summary judgment and should be afforded full consideration.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court decline to re-visit its prior summary judgment Order.

Dated: December 4, 2015

Respectfully submitted,

BENJAMIN C. MIZER
PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL

JOYCE WHITE VANCE
UNITED STATES ATTORNEY

LANE HINES WOODKE
ERIN EVERITT
DON B. LONG III
Assistant United States Attorneys
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2107
Lane.Woodke@usdoj.gov

/s/ Jeffrey A. Wertkin
MICHAEL D. GRANSTON
RENÉE BROOKER
JEFFREY A. WERTKIN
CAROLYN B. TAPIE
WILLIAM E. OLSON
EVA U. GUNASEKERA
HOLLY SNOW
CHRISTINA DAVIS
Attorneys, Civil Division
Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-3911
Jeffrey.A.Wertkin@usdoj.gov

*Counsel for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey A. Wertkin, Trial Attorney for the United States Department of Justice, hereby certify that on December 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for the relators and defendants.

/s Jeffrey A. Wertkin
Jeffrey A. Wertkin
Trial Attorney
U.S. Department of Justice