IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; ex rel., et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | CIVIL ACTION NO: 2:12-CV-245-KOB |
| ASERACARE INC, et al., ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

"Contradiction is not a sign of falsity, nor the lack of contradiction the sign of truth."
~Blaise Pascal

This case has always been about whether AseraCare knowingly submitted *false* claims to Medicare by certifying patients as eligible for hospice who did not have a prognosis of "a life expectancy of 6 months or less *if* the terminal illness runs its normal course." *See* 42 C.F.R. § 418.22(b)(1) (emphasis added).  The Government claims that the medical records of the 123 patients at issue in this case do not contain "clinical information and other documentation that support [this] medical prognosis," and thus, AseraCare's claims for those patients were "false." (Doc. 493 at 11-16).  However, this case boils down to conflicting views of physicians about whether the medical records support AseraCare's certifications that the patients at issue were eligible for hospice care.  When hospice certifying physicians and medical experts look at the very *same* medical records and disagree about whether the medical records support hospice

eligibility, the opinion of one medical expert *alone* cannot prove falsity without further evidence of an objective falsehood.

In its November 3, 2015, Memorandum Opinion, the court set out the applicable law in this case regarding the falsity element of the False Claims Act. (Doc. 482).[1] In finding that it had incorrectly instructed the jury on the falsity element in Phase One of the trial, the court granted a new trial and concluded that, to prove falsity, the Government would have to provide more evidence than just the opinion of a medical expert who disagrees with the certifying physicians and other medical experts regarding whether the medical records support hospice eligibility. (*Id.*). A mere difference of opinion between physicians, *without more*, is not enough to show falsity. *See e.g., United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1360 (S.D. Fla. 2015) ("Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.").

As the Eleventh Circuit recently reconfirmed, "our case law is clear: the submission of a false claim is the *sine qua non* of a False Claims Act violation." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015) (citations and internal quotations omitted). "The FCA requires 'proof of an objective falsehood.'" *United States ex rel. Parato v. Unadilla Health Care Ctr. Inc.*, 787 F. Supp. 2d 1329, 1339 (M.D. Ga. 2011); *see also United States v. Aegis Therapies*, No. CV-210-072, 2015 WL 1541491, at *12 (S.D. Ga. Mar. 31, 2015). Further, "'[p]ractices that may be improper, standing alone, are insufficient to show falsity without proof that specific claims were in fact false when submitted to Medicare.'" *Urquilla-Diaz*, 780 F.3d at

---

[1] Because the court explained its reasoning for *sua sponte* consideration of summary judgment in its November 3, 2015 Memorandum Opinion (doc. 482), the court incorporates that document into this Memorandum Opinion by reference.

1045 (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)) ("Liability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal procedures.").

After applying this law and granting a new trial, the court gave notice that it would *sua sponte* consider summary judgment[2] and afforded the Government an opportunity "to direct the court to admissible, objective evidence in the Phase One record, other than Dr. Liao's testimony, that would prove falsity and show that the Government presented more evidence than merely a difference of opinion to which reasonable minds could differ." (Docs. 482 & 483). The Government filed its "Opposition to the Court's Sua Sponte Consideration of Summary Judgment" (doc. 493), and AseraCare filed "Defendants' Response in Support of the Court's Consideration of Summary Judgment" (doc. 494).

After careful review of all of these submissions and the Phase One record, the court finds that the Government has failed to point the court to any admissible evidence to prove falsity other than Dr. Liao's opinion that the medical records for the 123 patients at issue did not support the Certifications of Terminal Illness (COTIs). As such, for the following reasons, the Government's

---

[2] Contrary to the Government's assertion in its opposition, the court's granting of a new trial does not preclude the *sua sponte* consideration of summary judgment at this juncture in the case. *See Quinn v. Fresno Cnty. Sheriff*, No. 1:10-cv-01617, 2013 WL 898136, at *5 (E.D. Cal. Mar. 8, 2013) (*sua sponte* considering summary judgment after granting a motion for a new trial). The cases cited by the Government are inapplicable to a case involving the granting of a new trial. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1027 (11th Cir. 2000) (involves the district court's refusal to reopen a prior summary judgment order based on evidence presented at trial, not based on the court's granting of a new trial); *see also Purcell v. MWI Corp.*, 2015 WL 7597536, at *5 (D.C. Cir. Nov. 24, 2015) (stands for the proposition that the appellate court must look at what the district court had before it when deciding to deny summary judgment and not at the evidence presented at trial, but does not preclude a district court from *sua sponte* considering summary judgment under Fed. R. Civ. P. 56(f) *after the granting of a new trial*).

proof on the falsity element fails as a matter of law, and summary judgment in favor of AseraCare is due to be GRANTED for all remaining Counts in the Complaint.[3]

In its opposition to the court's *sua sponte* consideration of summary judgment (doc. 482), the Government did not mention Dr. Liao's testimony or report, but instead submitted an appendix containing 14 pages of information relating to the local coverage determinations (LCDs) and related hospice *guidelines* and 256 pages of its "disputed facts" that included only excerpts from each patient's medical records. Some of the "disputed facts" about each patient actually included the Government's *conclusions*, not facts, asserting that the medical records do not support the necessary medical prognosis for hospice certification. The other "disputed facts" were those parts of the medical record for the 123 patients at issue about which Dr. Liao testified to support his contradiction of the certifying physicians regarding the patients' eligibility for hospice during the relevant time periods.

Dr. Liao testified about why, in his opinion, the excerpts from the patients' medical records did not support the COTIs of the patients at issue. However, AseraCare's experts pointed to different pages from the patients' medical records that in their opinion showed that the patients were eligible for hospice. When two or more medical experts look at the same medical records and reach different conclusions about whether those medical records support the certifying physicians' COTIs, all that exists is a difference of opinion. This difference of opinion among experts regarding the patients' hospice eligibility *alone* is not enough to prove falsity, and the

---

[3] The Government does not specifically address or dispute that the court's granting of summary judgment based on a failure to prove "falsity" as a matter of law would apply to all remaining Counts, including the common law claims.

Government has failed to point the court to any *objective* evidence of falsity.

Interestingly, Dr. Liao even acknowledged that he changed his opinion concerning the eligibility of certain patients from his 2010 review of the medical records to his 2013 review; however, Dr. Liao testified that *both* his 2010 and 2013 conclusions were "accurate to a reasonable degree of certainty." *See* 9/1/15 Trial Tr. at 3151.  The reason for the change of opinion: "Well, I was not the same physician in 2013 as I was in 2010." *See id*. at 3132. Moreover, the Government's own witness, Mary Jane Schultz, from Palmetto GBA, testified that "two doctors using their clinical judgment could come to different conclusions about a patient's prognosis and neither be right or wrong." *See* 8/17/15 Trial Tr. at 1244.  If Dr. Liao can look at the same medical records of the same patient on two different occasions and come to different conclusions, yet not be wrong on either occasion, his contradiction of the certifying physician's clinical judgment *alone* cannot constitute sufficient evidence of falsity.

The court is concerned that allowing a mere difference of opinion among physicians alone to prove falsity would totally eradicate the clinical judgment required of the certifying physicians.  The guidance from the Centers for Medicare and Medicaid Services ("CMS") in the Federal Register emphasizes the importance of a doctor's *clinical judgment* in the hospice certification process. Hospice Care Amendments Final Rule, 70 Fed. Reg. 70532, 70534 (Nov. 22, 2005), Gov. Ex. 227. This rule further "recognizes the fact that making medical prognostications of life expectancy is not always exact." *Id.*; *see also* 75 Fed. Reg. 70372, 70448 (Nov. 17, 2010), Def. Ex. 752A ("Predicting life expectancy is not an exact science.").  If the court were to find that all the Government needed to prove falsity in a hospice provider case was one medical expert who reviewed the medical records and disagreed with the certifying

physician, hospice providers would be subject to potential FCA liability any time the Government could find a medical expert who disagreed with the certifying physician's clinical judgment. The court refuses to go down that road.

The Government does not challenge that each claim for each patient at issue had an accompanying COTI with the valid signature of the certifying physician. Nor does the Government point the court to any evidence that any of the documents in the patients' medical records were false; that any information on which the certifying physician relied was incorrect or false; or that the clinicians withheld information from the certifying physicians.[4] Moreover, the Government represented to the court that it did not intend to use the relators' and clinicians' testimony to prove falsity as to any of the identified patients. *See* 7/22/15 Hrg. Tr. at 184, 189. As the Government has repeatedly stated, the *only* evidence it offers to prove falsity of the claims for the patients at issue comes from the medical records of the 123 patients at issue and the testimony of Dr. Liao, who offered *his opinion*, *based on his clinical judgment* after a review of those medical records, about the hospice eligibility of those patients. *See* 7/22/15 Hrg. Tr. at 170, 180, 182, 184, 197, 224.[5]

So what remains as the Government's proof of falsity for the 123 patients at issue is Dr.

---

[4] In its November 3, 2015, Memorandum Opinion, the court thoroughly explained that a major obstacle in the Government's proof of falsity results from its own failures in its preparation for trial and its answers to contention interrogatories during discovery. (Doc. 482)

[5] Given the Government's position regarding only using Dr. Liao's testimony and the patients' medical records to prove falsity, its position that the court's bifurcation order prevented it from presenting all of its evidence on the falsity element of the FCA lacks merit. The Government alleges that "significant admissible evidence exists that [was not] presented at trial due to the Court's bifurcation order." (Doc. 493 at 8, 32). However, that alleged "admissible evidence" goes to the knowledge and other elements in question in Phase Two, not falsity.

Liao's opinion, based on his review of the medical records, that, in his opinion, the patients at issue were not eligible for hospice because the medical records did not support the certifying physicians' COTIs.  However, AseraCare's medical experts, as well as the certifying physicians, also reviewed the same medical records and found that they *did* support the COTIs of the patients at issue.  The court finds that contradiction based on clinical judgment or opinion alone cannot constitute falsity under the FCA as a matter of law. The Government backed itself into a corner regarding its proof of falsity, and as such, it cannot prove the falsity of the claims for the 123 patients at issue.

The Government has presented no evidence of an objective falsehood for any of the patients at issue.  Because a difference of opinion between physicians and medical experts about which reasonable minds could differ is all the Government has presented to prove falsity of the claims for the 123 patients at issue, the Government cannot prove the falsity element as a matter of law. Therefore, summary judgment in favor of AseraCare is due to be GRANTED pursuant to Fed. R. Civ. P. 56(f)(3) for the remaining Counts in the Complaint, specifically Counts One, Three, and Four.

The court will enter a separate Final Order.

DONE and ORDERED this 31st day of March, 2016.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE