1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ALABAMA
2                          SOUTHERN DIVISION

3

4

5   UNITED STATES OF AMERICA,
    EX REL., ET AL.,                  CV-12-KOB-245-S
6

7                    Plaintiffs,      September 16, 2013

8        vs.                          Birmingham, Alabama

9   ASERACARE, INC., ET AL.,

10                   Defendants.

11  * * * * * * * * * * * * * * * * * * * * * * * * *

12
                   REPORTER'S OFFICIAL TRANSCRIPT OF
13                        STATUS CONFERENCE

14

15            BEFORE THE HONORABLE KARON O. BOWDRE
                  UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23  COURT REPORTER:
    Teresa Roberson, RMR
    Julie Martin, RMR
24  Federal Official Court Reporter
    1729 Fifth Avenue North
25  Birmingham, Alabama  35203

1                    * * * * *

2              A P P E A R A N C E S

3                    * * * * *

4    FOR THE PLAINTIFF:

5    Holly Snow
     William Olson
6    U.S. Department of Justice
     Civil Division
7    P.O. Box 261 Ben Franklin Station
     Washington, DC  20044
8

9    Lane H. Woodke
     U.S. Attorney's Office
10   1801 4th Avenue South
     Birmingham, Alabama  35203
11

12   James F. Barger, Jr.
     FROSHIN & BARGER
13   3430 Independence Drive
     Birmingham, Alabama  35209
14

15

16   FOR THE DEFENDANT:

17   James Sturgeon Christie, Jr.
     BRADLEY, ARANT, BOULT & CUMMINGS
18   1819 Fifth Avenue North
     Birmingham, Alabama  35203
19

20

21

22

23

24

25

```
 1                    * * * * *

 2              P R O C E E D I N G S

 3                    * * * * *

 4          THE COURT:  I understand y'all have made

 5   some progress in working out some of the issues that

 6   we discussed a few weeks ago.  So I guess the real

 7   issue is, what do we really need to talk about today?

 8          MR. CHRISTIE:  I think that's accurate.

 9   There's one aspect that they have not provided yet

10   and they're still telling me they're planning to,

11   which is the replacement Palmetto information.  And

12   so --

13          MS. SNOW:  Which I can provide more

14   information about today.

15          So this is a spreadsheet that we talked

16   about last time identifying AseraCare Hospice claims

17   medically reviewed by Palmetto and we have been

18   working hard and have made a lot of progress since

19   our status conference in August.  We have a plan, and

20   I had very much hoped to have completed the first

21   part of the plan by today.  And I am not sure if

22   that's going to be sent out today.

23          But I'll explain our plan and where we

24   are.  So we plan to produce this week a revised

25   report that is generated from database information
```

1   that will be accompanied by a declaration from the

2   department at Palmetto that has prepared this report

3   explaining what it is and what criteria were used to

4   generate the report.

5        Then the second part of our production is

6   a supplemental spreadsheet that will list additional

7   claims that were not in the first  report generated

8   by the database and these are claims that we have

9   identified through a number of other sources based on

10  our double-checking and so this is information that

11  is being manually inserted by folks at Palmetto into

12  a second supplemental spreadsheet.

13       We are going to be producing that

14  supplemental spreadsheet along with a second

15  declaration again by a representatives at Palmetto

16  who are preparing that with an explanation for what

17  it is and how this information was gathered.

18       MR. CHRISTIE:  And the second spreadsheet

19  is going to be in an additional week or two weeks?

20       MS. SNOW:  Yes.  We expect to produce the

21  first part of this, the report generated by the

22  database query, this week with the declaration.  And

23  by next week, the second report because it's

24  requiring manual -- inserting information in the

25  spreadsheet and some of the information is still

1  being gathered, that is why I'm needing to say an

2  additional week to provide that.

3         So our plan is to have this project

4  completed by the end of September.

5         MR. CHRISTIE:  I am pretty confident that

6  we can have my expert's response to this information

7  by November 4th, which is the date that we earlier

8  discussed, if we have it by the end of September.

9         Obviously, there could be some problem in

10  terms of not understanding some of it or something,

11  but just barring something unforeseen, I don't think

12  that we would have to have a deposition, for example,

13  to figure out what this stuff is and so the November

14  4th date should work that we were discussing.

15         MS. SNOW:  We were by providing the

16  declarations that it will be able to explain what it

17  is so it will be understandable to your expert who

18  you are going to have looking at this.

19         MR. CHRISTIE:  All right.

20         THE COURT:  So that will be completed by

21  September 30th?

22         MS. SNOW:  Yes, that's our plan,

23  absolutely.

24         THE COURT:  Okay.  If it's not, then what

25  are we going to need to do?  That may impact the

```
1    November 1st deadline?
2              MR. CHRISTIE:  It could.  You know,
3    Judge, I'm not going to be wooden about it, but
4    if we get it on the next day --
5              THE COURT:  Yeah.
6              MR. CHRISTIE:  You know what I'm
7    saying.  So if they'll commit to getting it to us
8    by the end of September, and frankly, if you get
9    through with it, give it to us earlier --
10             MS. SNOW:  I certainly hope to get this
11   finished as soon as I possibly can.  It is quite
12   a project.  We will get it completed as soon as
13   possible.
14             THE COURT:  Okay.  And I anticipate if
15   there are issues that arise, I will hear about
16   them, either in timeliness or in the
17   understandability of the information that's
18   produced.
19             So we'll just keep that one rocketing
20   along then.  And I'm not sure if rocketing is the
21   right term.  We will keep it moving along and see
22   what, if anything, needs to be done on that.
23             What about the unredacted emails, has
24   that been worked out?
25             MR. CHRISTIE:  Yes, Your Honor.  We
```

1   have provided the emails that we discussed.  The

2   actual -- we had a small group that was

3   additional that we actually had reviewed this

4   morning and so that aspect of it, while -- the

5   status report indicates we were still working on

6   that, we have completed that now.

7              THE COURT:  So any of the other issues

8   that we discussed in August that needs to be

9   addressed today?

10             MS. SNOW:  I don't think so.

11             MR. CHRISTIE:  I don't think there is.

12             THE COURT:  Good.  I did note in your

13  joint status report that ominous phrase motions

14  practice may be necessary if the parties cannot

15  resolve these issues.  That always sounds ominous

16  to me when I see something like that.

17             So where are we in terms of the

18  30(b)(6) deposition issues?

19             MS. SNOW:  We had been engaged in

20  discussions about 30(b)(6) issues before the

21  motions were filed and we've been primarily

22  focused, I think, on expert discovery issues for

23  the last month and a half, but prior to that, we

24  had spent a good deal of time discussing 30(b)(6)

25  testimony that each side had provided or not yet

1   provided, and so from the government's

2   perspective, we expect there will be additional

3   30(b)(6) depositions.

4          We had prepared the Palmetto medical

5   director to provide 30(b)(6) testimony on two

6   topics in July and that deposition was not taken

7   at that time, so we expect that that will be

8   taken.

9          We had also taken some 30(b)(6)

10  deposition testimony from AseraCare, but

11  AseraCare had not designated witness for seven

12  topics, most of which or all of which are

13  important to the government's case, you know,

14  topics including AseraCare's marketing and

15  promotion, its admissions and census goals and

16  incentives to meet those goals, adverse

17  employment actions when employees didn't meet

18  those goals, so there were a number of topics

19  that AseraCare has not designated a witness for

20  that we would expect AseraCare would provide that

21  testimony.

22          And then there were some additional

23  topics that we had discussed on -- that we had

24  objected to providing testimony on those

25  particular topics and had, I think, last

```
1   discussed a compromise on one of those topics and
2   then one topic on which AseraCare had identified
3   a witness but who was not able to provide
4   information that the government believed was
5   within the scope of that topic.
6           So there have been quite a bit of
7   discussion and I think we need to resume those
8   discussions but really had been focused on these
9   expert discovery issues in the last month and a
10  half.
11          THE COURT:  So y'all haven't resumed
12  discussion of that; is that basically where we
13  are?
14          MS. SNOW:  We have not discussed that
15  in the last month and a half.
16          MR. CHRISTIE:  And I will say that
17  their 30(b)(6) depositions were not ones that I
18  was attending and so her description of the
19  remaining issues sound broader than my
20  impression, but I have to say, because I wasn't
21  handling that, I really can't respond.
22          THE COURT:  That's just something y'all
23  need to get back talking about but you have been
24  working on the expert stuff first.
25          And then the other issue highlighted in
```

```
 1    your status report was that AseraCare anticipates

 2    it may need additional deposition time from

 3    Dr. Liao and I think we had talked about that in

 4    August.

 5              So where are we on that?  Says that the

 6    U.S. expects to agree, so I anticipate that's not

 7    really an issue?

 8              MS. SNOW:  I think that's right.  We

 9    haven't discussed a particular date on which this

10    additional deposition would occur.  But we had

11    indicated that we were willing to agree to

12    additional time.

13              We have set the depositions of the

14    assistants to Dr. Liao, that is occurring

15    September 24th into the 26th, if needed.

16              There are, I counted, fifteen

17    depositions scheduled or planned between now and

18    October 30th, so we have quite a full schedule

19    over the next month and a half and I was

20    anticipating an additional Dr. Liao deposition

21    would occur after October.

22              MR. CHRISTIE:  That is correct.

23    There's a bigger issue in terms of the overall

24    scheduling.  And AseraCare's position is we need

25    to have a Daubert hearing.  So there is a bigger
```

```
 1    issue and, frankly, to some extent taking

 2    Dr. Liao's deposition another day may figure into

 3    what we do with that.

 4              In other words, it may be after the

 5    Daubert hearing we would want to do that.

 6    There's some issues with Dr. Liao's testimony

 7    that the Court will want to address.

 8              I can go into specifics, if you want

 9    to.

10              THE COURT:  No.  I am just trying to

11    decide whether it may be best to get all of the

12    discovery of all of the experts in before having

13    any Daubert hearings on any of the experts and

14    doing them all at one time.

15              I know that it may save AseraCare the

16    expense of one more deposition but, frankly, what

17    is that in the grand scheme of what's being spent

18    here anyway.

19              And I don't mean to be cavalier with

20    your client's money, but just in terms of looking

21    at it from a standpoint of keeping everything

22    flowing in a time efficient manner for everybody

23    involved.

24              Or does the government have any issues

25    with the qualifications of the defense experts?
```

1          MS. SNOW:  Well, Your Honor, we have

2     not deposed any of the defendant's experts yet.

3          THE COURT:  So you don't know.

4          MS. SNOW:  There may very well be

5     issues that we also want to brief.  But none of

6     those depositions have been taken yet.

7          We are planning to take those in

8     October.  And then, of course, we would have the

9     additional experts that AseraCare we expect will

10    be disclosing or expert reports on November 4th

11    and those folks would also need to be deposed and

12    that may raise additional Daubert-related issues.

13          MR. CHRISTIE:  And the question is not

14    Dr. Liao's qualifications.  The statute requires

15    someone to be a physician, so any physician is

16    qualified to have an opinion on whether or not

17    somebody is eligible for hospice.

18          THE COURT:  You're talking about

19    methodology?

20          MR. CHRISTIE:  It's partly that, but

21    really he just answered the wrong question.  His

22    opinion is that people are not eligible for

23    hospice.  He was asked whether or not the

24    physician who certified or whether Dr. Cooney who

25    had earlier given an expert opinion that these

1    people were eligible were wrong, and he is not

2    going to say the other physician is wrong.

3             So part of the question is has he

4    answered the right question.

5             Another part of the question really is

6    has he applied the right approach, methodology.

7    And so he has, for example --

8             THE COURT:  We don't need to get into

9    the substance of that.

10             MR. CHRISTIE:  There are some definite

11    substantive issues that will need to be

12    addressed.

13             THE COURT:  Well, I anticipate we will

14    probably be having another conference before too

15    terribly long, but just be aware that my knee

16    jerk reaction, without having a whole lot of

17    information in front of me, is that my preference

18    would generally be to handle all Daubert motions

19    at the same time after we get all the discovery

20    done, if possible.

21             If there is some really good reason why

22    you think it would be beneficial to make that

23    determination before you take this additional

24    deposition, then file a motion and explain it to

25    me.

1          MR. CHRISTIE:  All right.

2          THE COURT:  I think one of the things

3  that we were suppose to talk about, and I may be

4  jumping ahead of us, was what, if any,

5  adjustments we need to make at this time to the

6  remaining dates.

7          I think we have already basically said,

8  okay, the defendant's disclosure of experts would

9  be November the 1st or 4th or whatever.

10          Any other changes that we see?  The

11  current date for completion of discovery is

12  December 17th.

13          MR. CHRISTIE:  That might be optimistic

14  but it seems doable from this perspective.  One

15  of the -- there's this underlying issue about who

16  Dr. Liao is talking about.  And so in his

17  deposition, we only actually asked him questions

18  as to eight patients.  And we earlier had

19  discussions about a bellwether trial and those

20  kind of things.

21          And so he actually gives different

22  opinions on some of the patients during

23  depositions than the ones that are in his report

24  and so this all goes to the same issue that we

25  were discussing a second ago.  One of the

```
 1    problems from our perspective, AseraCare,

 2    defendant's perspective, is that when Dr. Liao

 3    talks about a patient and changes during the

 4    deposition why he says the person is not

 5    eligible, that then creates problems for us.

 6              Perhaps these issues can be addressed

 7    by the government identifying who he's going to

 8    talk about before we take his next deposition but

 9    that's the problem.  I mean, the eight that we

10    already have specifically asked him questions

11    about, three of those he gave opinions that are

12    different than what is in his report.

13              And I don't mean the result is

14    different, but the basis for it is different.

15              And if you want, I can show him on the

16    Ann K.  On Ann K. he completely changed why he

17    thought she was ineligible.

18              There is a woman -- I am going into

19    specifics.  There is a woman who the medical

20    records show had to be lifted from the bed to the

21    wheelchair by a Hoyer Lift and he said she was

22    ineligible in his original report but he didn't

23    mention anything about her being able to get up

24    and walk to the bathroom as the reason why she

25    was not eligible.
```

1            But there's this form where somebody

2      didn't check the box that says dependent on

3      ambulation to bathroom.  And the problem with

4      that is that some people reading that would

5      think, well, she can't walk at all, so she's not

6      dependent on ambulating to the bathroom, she

7      doesn't walk to the bathroom at all and leave it

8      blank, or you could check it to show that that is

9      a disability that she has.

10           Well, he read that medical record,

11     because that box wasn't checked, as saying -- at

12     his deposition but not in his report, as saying

13     because this woman can get up and walk to the

14     bathroom, she doesn't have the physical condition

15     that this indicates in the medical records.

16           Now, that was a new opinion that he

17     gave during his deposition that is not reflected

18     anywhere in his report.  And from our

19     perspective, it's going to be easy to have nurses

20     or someone else come and testify that, look, this

21     woman couldn't get out of bed, the reason why she

22     had to be lifted out of bed -- from the bed to

23     the Geri chair is because she couldn't walk at

24     all.

25           And so that's the kind of thing that we

1    have got several patients already who have

2    similar issues out of the eight.

3              So that's part of what I'm talking

4    about in a Daubert hearing.  But that's also part

5    of why when we hear -- when we see those type of

6    things and how Liao adds to, if you want to put

7    it that way, or changes the basis for his opinion

8    that people are ineligible, that makes it

9    difficult for AseraCare to respond if all we know

10   is he is going to get up and start testifying at

11   trial as to why these people are ineligible.

12             I have got his deposition here.  And I

13   can show you the pages I am talking about.

14             THE COURT:  Is the issue tying the

15   government down to the specific patients about

16   whom he will testify?

17             MR. CHRISTIE:  Unless we are going to

18   have a bellwether trial, I think that is going to

19   be an important issue.  There's 233 patients, 124

20   of whom Dr. Liao has said are totally ineligible

21   or partially ineligible, about half and half.

22             And it takes a long time to go through

23   one patient.  And so I don't imagine the

24   government's planning on having Dr. Liao go

25   through all 124 patients, if we do, we are going

1    to have a trial that goes on for months.

2          If he is going to talk about specific

3    patients, if we don't know who those patients are

4    beforehand, it makes it difficult for AseraCare

5    to defend themself.

6          In addition, if we don't know who those

7    patients are beforehand and having been allowed

8    to depose him on those specific patients, it

9    becomes very difficult for AseraCare to defend

10   themselves on those patients.

11         MS. SNOW:  Well, first, we're happy to

12   engage in this conversation.  This is not

13   happening yet.  This is the first I have heard of

14   a request for some identification of which or

15   what our approach will be at trial to presenting

16   the expert opinion of Dr. Liao.

17         I don't have the transcripts in front

18   of me, but based on my recollection of his

19   deposition, I disagree with your interpretation

20   of it.

21         THE COURT:  I would expect you to.

22         MS. SNOW:  You were showing him

23   selected records and asking him to give an

24   opinion about a particular page out of a thousand

25   page record.  You didn't provide him the whole

1   record, you were selecting particular pages.  And

2   I think he was providing the answers that he

3   could to your particular questions you chose to

4   ask him about the particular patients you chose

5   to ask him.

6           THE COURT:  We're not going to get into

7   the pros and cons of the doctor's testimony at

8   this point.

9           But I do think there has got to be a

10  determination at some point of how the government

11  is going to present its case and a disclosure of

12  that to AseraCare so that it can properly defend.

13          I recall a conversation quite a while

14  ago on this issue --

15          MS. SNOW:  That's right.

16          THE COURT:  -- how are we going to know

17  what patients will be hauled out in front of the

18  jury for a determination.

19          So that has been whirling around in

20  there, I don't know if it's been in the specific

21  context of Dr. Liao's testimony.

22          But, by this point, I would anticipate

23  that there would have been some discussion about

24  that.  We need to have a serious talk about that,

25  are we going to parade out the medical records of

1   every single patient that the government says was

2   improperly classified or improperly provided

3   hospice care.

4            So we're getting pretty close to that

5   time to fish or cut bait in terms of how this

6   case is going to be presented.

7            MS. SNOW:  Yes, Your Honor.  And we

8   plan a very efficient trial, and I believe you're

9   referring to the briefing related to this issue

10  when AseraCare raised the bellwether trial

11  proposal back in the fall and we filed a

12  responsive brief that laid out how we intended to

13  meet our burden of proof.

14           We're happy to engage in this specific

15  conversation.  I don't think we had discussed

16  this since last fall.

17           MR. CHRISTIE:  We have not gone into

18  specifics of this.  And we haven't served

19  anything.  I assume if we ask the government

20  which specific patient you are going to identify

21  at trial, they would have objected and not

22  answered that.  Maybe I'm mistaken.  I'm assuming

23  they haven't decided that yet.

24           MS. SNOW:  We can certainly have a

25  conversation about preparation for trial about

1    these issues, we will assist the parties in

2    moving forward.

3         THE COURT:  I think that is certainly

4    reasonable.  I think that the defendant is

5    entitled to know specifically what Dr. Liao's

6    opinion is as to the specific patients that will

7    be presented at trial.  And I don't think the

8    government should be allowed to change its list

9    of patients.  I mean, you may not end up going

10   with every single one, but shouldn't be able to

11   say, oh, well, I don't like his testimony on

12   Mrs. K., that is the name that was mentioned, so

13   we're going to substitute Mrs. Jones and we never

14   disclosed Mrs. Jones as being the one that we

15   were going to rely on.

16        So there's got to be some kind of

17   disclosure at some point somehow some way so that

18   we are looking at the same apples and not

19   comparing apples and oranges when we get to

20   trial.

21        MS. SNOW:  We're happy to have this

22   discussion.

23        THE COURT:  All right.  Let's have this

24   discussion sooner rather than later.

25        MR. CHRISTIE:  We can discuss it this

1   morning.

2           THE COURT:  So that when we get to

3   December the 17th, we know whether we have

4   discovered the opinions of the right patients.

5   Right?  Wouldn't that be important?  Or am I

6   chasing a rabbit now?

7           MR. CHRISTIE:  I think Your Honor has

8   identified the issue.  From AseraCare's

9   perspective, we have got forty thousand patients

10  in the time frame that is talked about and they

11  have narrowed that down to 233 that they took,

12  they have asked for medical records, and then 124

13  of those are the ones that are partially or

14  totally ineligible according to Dr. Liao and now

15  we're talking about taking a subset of that but

16  at least if we have them identified, it gives us

17  a better chance of being able to have the jury

18  understand a more complete picture than if

19  they're selecting them and we don't know.

20          I think part of what you're saying I

21  agree with.  That is sort of an alternative to

22  the bellwether trial which in some ways has some

23  disadvantages and some advantages.  Because the

24  bellwether trial suggests that you are going to

25  have more trials and that is a disadvantage.  But

1    at least with the bellwether trial you know which

2    patients the jury is thinking about.

3              MS. SNOW:  We provided Dr. Liao's

4    opinion on the 233 patients which are much

5    smaller set than the whole that we might have

6    looked into.

7              His opinion is that there are a number

8    of patterns in the medical records and in his

9    review, which are laid out in his expert report.

10   We appreciate what you're asking and I think

11   we're happy to engage in a conversation about how

12   to efficiently prepare for trial.  That's been

13   our intention from the beginning.

14             Sitting here today, this is the, you

15   know, we haven't -- I haven't prepared to discuss

16   this today.

17             I'm happy to engage in discussion, but

18   this is a significant question you're raising and

19   one that needs to be considered, I think.

20             THE COURT:  How many patients overall?

21             MS. SNOW:  There are 233 in the sample.

22             THE COURT:  Over how many AseraCare

23   patients?

24             MS. SNOW:  In the entire universe?

25   Several thousand.  I'm not sure of the --

1          MR. CHRISTIE:  Well, there's forty

2     thousand patients that were treated during the

3     time frame that we're talking about.  There's

4     2,181 patients that -- the government selected

5     the patients with more than 365 days, and so

6     we're not starting with a random sample of

7     AseraCare patients in the first place.  They're

8     picking the ones that would likely have problems,

9     if there were problems.

10          THE COURT:  In terms of being eligible

11     for --

12          MR. CHRISTIE:  Of the 2,181, they had a

13     sample that was 236 patients but three of those

14     patients were not AseraCare patients, and so

15     that's why Dr. Liao reviewed 233 patients.

16          THE COURT:  I don't know, I haven't

17     kept up with all of the experts that are out

18     there, is there any kind of statistical experts

19     that anybody --

20          MS. SNOW:  We have one medical expert,

21     Dr. Liao, one statistical expert, Dr. Miescke,

22     and then we have one health care marketing

23     expert.  The government has three experts.  And

24     again, in our intention to be efficient, we have

25     not duplicated experts.  We have these three.

1          MR. CHRISTIE:  In contrast, rather than

2    having reviewing physicians and one testifying

3    physician, AseraCare has three physicians who

4    divided up and each looked at -- with some slight

5    overlap, looked at the medical records.

6          We have a statistician who really one

7    of them is just providing descriptive statistics

8    talking about how many locations and how many

9    patients and where the patients came from.

10          And then we also have a responding

11    statistician to the government's statistician who

12    is Dr. Palmer who is also the one that is doing

13    to analysis of the Palmetto results and how that

14    contrasts with Dr. Liao's opinions and he is also

15    the one that is doing the analysis of how the

16    reviewing physician's opinions are different from

17    Dr. Liao's opinions.

18          MS. SNOW:  And none of those have been

19    deposed by the government.

20          MR. CHRISTIE:  Right.

21          THE COURT:  It gets more interesting

22    all the time.

23          So as of right now, we think December

24    17th may still be doable?

25          MS. SNOW:  I think it will be a

1    challenge, given what needs to be accomplished

2    between November 4th and December 17th, given the

3    additional 30(b)(6) depositions that we think

4    should still occur, the deposition of AseraCare's

5    experts to be disclosed on November 4th.  There

6    are at least two other fact depositions that have

7    been discussed and not yet scheduled.  And I

8    think there are about forty-three days between

9    November 4th and December 17th.

10             So there's quite a lot to accomplish,

11   but as I said, I think there are fifteen

12   depositions between now and October 30th, we are

13   working very hard to move this to completion.

14             THE COURT:  And how does the

15   conversation over the government's planned

16   presentation of patients, disputed patients, play

17   into that?

18             Would that not extend the need for some

19   discovery?

20             MR. CHRISTIE:  It could.

21             MS. SNOW:  I would have to say I wasn't

22   prepared to have that conversation today and

23   would need to talk to my team about our response

24   to that.

25             THE COURT:  Just seems to me that to

```
1    get this done it's going to take more time than a
2    little bit more than a month after the disclosure
3    of the defendant's experts.
4            I just don't see any way that that can
5    be done, particularly when we do recognize that
6    there are a couple of days for at least
7    Thanksgiving tucked in there.
8            MS. SNOW:  I think the holidays are,
9    potentially, with scheduling folks for
10   depositions, that is ripe to consider the
11   availability.
12           MR. CHRISTIE:  Once you get to December
13   17th, you are not doing --
14           THE COURT:  It's not going to help much
15   for an extension there.  January 17th, it's
16   basically only going to give you seventeen days.
17           What if we move it to the end of
18   February, but I'm not taking the foot off the
19   accelerator.  I just am recognizing there is a
20   lot that's got to be done.
21           Do we have another status conference
22   scheduled in this?
23           THE CLERK:  I don't think so.
24           THE COURT:  Y'all have got a bunch of
25   depositions set between now and the end of
```

1   October, right?

2             MS. SNOW:  Yes.

3             THE COURT:  Why don't we see if we can

4   find some time in November for another status

5   conference.  That will give you time and it will

6   be after November 4th, after the defendant's

7   disclosure, at least a week after that, give you

8   some time to see what you've got and I will let

9   Frankie find one later, I'm not going to pull it

10  out of the hat right now, but that will give you

11  some time to really assess where you are, what is

12  going to need to be done, for y'all to have some

13  serious conversation about how we're going to get

14  this case ready for trial and how we're going to

15  try it, not just what experts we're going to use,

16  but how are we really going to try this case.

17             So when we meet in November, there will

18  be a joint status report and as part of that, I

19  want y'all to tell me what you'll have discussed

20  and decided on what we need to do to get it

21  ready.

22             And any other issues with the

23  discovery?  I mean, the experts and stuff like

24  that.

25             Anything else we need to talk about?

1        MR. BARGER:  Your Honor, seems to me

2    that if we've got -- if we're extending discovery

3    to February and keeping the accelerator going and

4    we're talking about how we're going to try this

5    case, I think it would be nice if we put it on a

6    trial schedule some time next year and that would

7    hold everybody's feet to the fire when we are

8    going to try this case.

9        THE COURT:  We have got to know what

10   kind of motions we're going to be filing, when

11   they're going to be filed, and I don't know that

12   until y'all tell me.

13       I have heard that there is going to be

14   at least one Daubert challenge.  Y'all have got

15   to tell me those kind of things.

16       I don't know what kind of motions y'all

17   are anticipating filing.  Until I have some idea

18   about that --

19       MR. CHRISTIE:  Your Honor, there is

20   going to be a serious motion for summary

21   judgment.  There's two reported cases that were

22   cited in the last motion to compel we filed and

23   if those cases are controlling law, AseraCare is

24   going to be entitled to summary judgment.

25       The government's position is those are

```
 1    not the law, but we are going to have legal

 2    argument over what the law is in the area.

 3              The Daubert hearing is another reason

 4    why my client may be entitled to summary

 5    judgment.

 6              MR. BARGER:  I would throw out one

 7    little clarification in the Wall case, I'm lead

 8    trial counsel in that case as well, and the

 9    motion for summary judgment in the Wall case --

10    the motion to dismiss was denied, and I think

11    that -- we'll brief that, but the law in the Wall

12    case is in our favor.

13              MS. SNOW:  I think Chris was correct

14    that we disagree on this legal issue.

15              THE COURT:  I would expect so,

16    otherwise, you shouldn't be still prosecuting

17    this case, right?

18              MS. SNOW:  Right.

19              THE COURT:  And we're getting into all

20    kinds of issues if you were prosecuting the case

21    and you agreed with Chris that the case should go

22    out, right?  I'm not surprised to hear you

23    disagree.

24              I'll need to do some finagling, I had

25    hoped to have more in terms of proposals, and
```

1   there were none in the joint status report to

2   give me to work with.  So I'm going to have to

3   work on that.  I can't just pull them out of the

4   top of my headed today.

5              I will try to put pencil to paper and

6   see what I can come up with, realizing that we're

7   going to have a ton of motions to get through.  I

8   will try to do that.  But I can't do it off the

9   top of my head right now.

10              Anything else?  And I also realize that

11  this will probably be a situation where the

12  regular, what, three weeks for a response

13  probably won't quite fit either to briefing

14  schedule, so I will take that into account when

15  I'm looking at timing.

16              All right.  Always great to see y'all.

17                 (COURT ADJOURNED.)

18

19

20

21

22

23

24

25

```
 1

 2

 3                 C E R T I F I C A T E

 4

 5           I hereby certify that the foregoing is

 6    a correct transcript from the record of

 7    proceedings in the above-referenced matter.

 8

 9

10    Teresa Roberson, RPR, RMR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```